**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NICOLE VILLANUEVA, | : | |
| | : | CA No. 04-258-JJF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTIANA CARE HEALTH SERVICES, INC. | : | |
| | : | |
| Defendant. | : | |

---

**OPENING BRIEF IN SUPPORT OF DEFENDANT CHRISTIANA CARE
HEALTH SERVICES INC.'S MOTION FOR SUMMARY JUDGMENT**

---

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
MORRIS, JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Ave., 10th Floor
P.O. Box 2306
Wilmington, DE  19899
302.888.6900/5849

Michael J. Ossip (admitted pro hac vice)
Thomas S. Bloom (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5543

Attorneys for Defendant Christiana Care
Health Services, Inc.

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDING..................................................1

II.     SUMMARY OF ARGUMENT .............................................................................1

III.    STATEMENT OF UNDISPUTED FACTS ...........................................................2

        A.      Plaintiff's Employment As A Patient Care Technician II ...........................2

        B.      On April 9, 2003, Plaintiff Informs Christiana Care That She Is
                Medically Restricted To Sedentary Duty And Insists That
                Christiana Care Is "Legally Required To Follow [Her] Doctor's
                Orders."................................................................................................4

        C.      On April 10, 2003, Plaintiff Obtains A New Note From Dr.
                Goldenberg Contradicting His April 8, 2003 Note....................................10

        D.      On April 24, 2003, Ms. McCloud Removes Plaintiff From Payroll
                Because She Had Been Absent For Fourteen Days And Was Not
                Eligible For A Leave Of Absence.............................................................12

IV.     ARGUMENT..................................................................................................14

        A.      Standard Of Review.................................................................................14

        B.      Plaintiff Cannot Establish A Prima Facie Case Of Pregnancy
                Discrimination..........................................................................................15

                1.      There Is No Evidence That Ms. McCloud Treated Plaintiff
                        Differently Than Similarly Situated Non-Pregnant
                        Employees.................................................................................15

                2.      Plaintiff Was Not Qualified To Work As A Unit Clerk In
                        April 2003. ...............................................................................19

        C.      There Is No Evidence That Ms. McCloud's Stated Reasons For
                Her Decision Are Pretextual ....................................................................21

V.      CONCLUSION...............................................................................................24

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)......................................................14

In re Carnegie Center Assocs., 129 F.3d 290 (3d Cir. 1997)..............................................15

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...................................................................14

Charlton v. Paramus Bd. of Educ., 25 F.3d 194 (3d Cir. 1994) .........................................14

Coney v. Dallas Housing Auth'y, No. Civ. A. 3-01-cv-2337, 2003 WL 292167
(N.D. Tex. Feb. 7, 2003) ............................................................................................16, 19

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) ...........................................................15, 21

Ilhardt v. Sara Lee Corp., 118 F.3d 1151 (7th Cir. 1997)...................................................17

Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625 (S.D.N.Y. 1996)........................................7

Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61 (3d Cir. 1996) ...............................14

Leeker v. Gill Studios, Inc., 21 F. Supp. 2d 1267 (D. Kan. 1998) .....................................19

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) .................................................15

McQueen v. Airtran Airways, Inc., No. 3:04-cv-00180, 2005 WL 3591100
(N.D. Fla. Dec. 30, 2005)....................................................................................................19

Schoch v. First Fidelity Bancorp., 912 F.2d 654 (3d Cir. 1990) ........................................14

Sermons v. Fleetwood Homes of Ga., 227 F. Supp. 2d 1368 (S.D. Ga. 2002) .................16

Spivey v. Beverly Enter., Inc., 196 F.3d 1309 (11th Cir. 1999).........................................19

Weaver v. U.P.S., Inc., No. Civ. A. 02-1401, 2004 WL 395881
(D. Del. Jan. 30, 2004)........................................................................................................16

### FEDERAL STATUTES

Pregnancy Discrimination Act, 42 U.S.C. § 2000e-1 et seq....................................... passim

## I.   NATURE AND STAGE OF THE PROCEEDING

On April 21, 2004, Plaintiff Nicole Villanueva ("Plaintiff") filed the instant Complaint against Defendant Christiana Care Health Services, Inc. ("Christiana Care"), asserting a claim of pregnancy discrimination arising out of the termination of her employment under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e-1 et seq. ("Title VII") ("PDA"). Discovery is closed.  Christiana Care now moves for summary judgment because there are no genuine issues of material fact and Christiana Care is entitled to judgment as a matter of law.

## II.   SUMMARY OF ARGUMENT

1.   In April 2003, Plaintiff's doctor restricted her from performing her normal job duties due to a pregnancy-induced heart problem.  Plaintiff was not eligible for a Family Medical Leave Act ("FMLA") or other leave of absence and there was no alternative work available in her department that Plaintiff could perform consistent with her sedentary duty restrictions.  Shortly thereafter, Christiana Care removed Plaintiff from payroll pursuant to its written policy that employees absent for 14 days must be placed on a leave of absence or removed from payroll.

2.   Plaintiff's single-count Complaint alleges that Christiana Care should have transferred her to a different unspecified position in a different unspecified department within the hospital in order to "accommodate" her restrictions, and that Christiana Care's failure to do so constitutes discrimination under PDA.  However, the issue in this case is not whether Plaintiff was entitled to a "reasonable accommodation" under the Americans with Disabilities Act ("ADA"); Plaintiff has not (and could not have) asserted such a claim, as pregnancy is not a disability under the ADA.  Rather, the issue is whether there

is record evidence that the decision-makers with respect to Plaintiff's employment were motivated by anti-pregnancy animus. There is no such evidence and Plaintiff's claim fails as a matter of law.

      3.      Plaintiff cannot satisfy two of the elements of a *prima facie* case under the PDA. First, there is no evidence that Plaintiff was treated differently than similarly situated non-pregnant employees. Specifically, there is no evidence that Christiana Care ever transferred an employee to a different department to accommodate a medical restriction. Plaintiff's suggestion that other restricted employees had been permitted to work in alternative positions that were available within their department misses the mark. The undisputed evidence is that, unlike Plaintiff's purported comparators, there were no alternative positions available in her department in April 2003. In addition, Plaintiff cannot show that she was qualified for a unit clerk position (there was no such position available in her department) because the undisputed evidence is that the unit clerk position is not sedentary.

      4.      Even if Plaintiff could establish the *prima facie* elements of a PDA claim, which she cannot, there is no evidence that Christiana Care's stated reason for its decision is pretextual or that the decision-maker, nurse manager Karen McCloud, was motivated by anti-pregnancy animus. Thus, there is simply no record evidence of pregnancy discrimination and the Court should grant summary judgment.

## III.    STATEMENT OF UNDISPUTED FACTS

### A.    Plaintiff's Employment As A Patient Care Technician II.

From December 2002 until April 24, 2003, Plaintiff was employed by Christiana Care as a Patient Care Technician II ("PCT-II") in the hospital's Transitional Surgical Unit ("TSU"). A PCT-II is a "split position" that combines the job functions of a patient

2

care technician and a unit clerk. (Villanueva Dep. 24:14 – 25:21 at A-8[1]; Dye Dep. 6:1-14 at A-54.)[2]

As Plaintiff acknowledged in her deposition, the PCT-II position is physically demanding and required, among other things, Plaintiff to "change the [patients'] position, roll them every two hours, reposition them; feed them if they needed help to be fed; assist the nurses if they needed help with dressing changes, you know, anything they needed help with; bathing." (Villanueva Dep. 26:1-5 at A-9.) The PCT-II job description and physical demands checklist further corroborate that Plaintiff's job required frequent lifting, carrying, pushing, pulling, reaching and twisting, as well as walking/standing for six-to-eight hours per day and stooping/bending for one-to-two hours per day. (PCT-II Job Description at A-104.) As a PCT-II in the TSU, Plaintiff's direct supervisor was Carole Dye, the TSU Patient Care Coordinator. (Dye Dep. 3:19 – 4:9 at A-53.) Karen McCloud was Ms. Dye's supervisor and the nurse manager of both the TSU and 5D units. (McCloud Dep. 3:10-19 at A-39.)

According to Plaintiff, she informed Ms. Dye during the interview process that she would need time off in connection with an *in vitro* fertilization procedure. (Villanueva Dep. 55:6-21 at A-16.) Thus, Plaintiff was hired after providing Christiana Care with information that she would likely be pregnant in the very near future, evidencing a lack of pregnancy-related discrimination. In mid-December 2002, while

---

[1]    The Appendix, referred to as "A-__", is being filed with this brief.

[2]    As Plaintiff testified in her deposition, she had initially applied for a Unit Clerk position in the TSU, but she learned during the interview process that the TSU does not employ any Unit Clerks "because they did not need . . . a unit clerk to sit there because there was [sic] only six patients on the floor." (Villanueva Dep. 24:18 – 25:12 at A-8; Dye Dep. 48:2-5 at A-64 ("[T]here's not a straight unit clerk position at TSU. There's not enough work.").)

3

Plaintiff was still in training, she presented Ms. Dye with a note from her physician

restricting her from "heavy lifting and prolonged time on her feet" to allow her to recover

from the *in vitro* procedure. (Dec. 12, 2002 Note at A-86; Villanueva Dep. 55:6-21 at A-

16.) Pursuant to Christiana Care policy, Ms. Dye advised Plaintiff that she could not

work until her restrictions were lifted because the patient care training program required

heavy lifting and prolonged time on her feet. (Villanueva Dep. 55:6 – 58:24 at A-16 – A-

17.) Plaintiff returned to work several days later, completed the training program, and

thereafter began work as a PCT-II without incident. It is undisputed that Ms. Dye and

Ms. McCloud knew within the first two weeks of Plaintiff's employment that she was

pregnant. (Dye Dep. 23:13 – 24:3 at A-58; McCloud Dep. 10:13-24 at A-41). There is

no allegation that Ms. Dye, Ms. McCloud, or anyone else at Christiana Care took any

adverse employment action against Plaintiff until she was removed from payroll in April

2003 because she was medically restricted from performing her job and was ineligible for

a leave of absence.

> **B.      On April 9, 2003, Plaintiff Informs Christiana Care That She Is
>         Medically Restricted To Sedentary Duty And Insists That Christiana
>         Care Is "Legally Required To Follow [Her] Doctor's Orders."**

On April 8, 2003, Plaintiff left work early for an appointment with her

cardiologist (and former employer) Dr. Edward Goldenberg because, according to

Plaintiff, "I had heart problems, pregnancy related heart problems that I had had with a

previous pregnancy." (Villanueva Dep. 3:24 – 4:2 at A-3.) Plaintiff testified that this

condition, which she also experienced in connection with her previous pregnancy, caused

shortness of breath, increased heart-rate, and made her feel "heavy – like almost

palpitations." (Villanueva Dep. 18:5-13, 21:20-21 at A-7.) Dr. Goldenberg's

contemporaneous medical records from Plaintiff's April 8, 2003 appointment state:

4

> I saw Nicole during her last pregnancy at which time she
> seemed to have inappropriate sinus tachycardia. . . .
>
> She is now 4 ½ months into her pregnancy and about two
> weeks ago she again noted the onset of resting tachycardia
> and *with physical activities she develops dyspnea, tightness
> in her chest up into her neck and at times down her left
> arm. Similar symptoms are precipitated by lying down.*

(Apr. 8, 2003 Medical Records at A-87 – A-88 (emphasis added); Goldenberg Dep. 32:18

– 33:14 at A-76.) Dyspnea means shortness of breath. (Goldenberg Dep. 34:11-16 at A-

77.) Dr. Goldenberg testified that Plaintiff had "inappropriate sinus tachycardia" because

her "heart rate's fast for no reason sitting around doing nothing" and that "[i]t occurs with

exercise and also occurs when she's not exercising." (Goldenberg Dep. 36:4 – 37:10 at

A-77.) Dr. Goldenberg's reference to "exercise" means "walk[ing] up and down the

hallway." (Goldenberg Dep. 16:17-20 at A-72.) Dr. Goldenberg prescribed the drug

Propranolol, "hopefully to improve her functional exercise capacity." (Apr. 8, 2003

Medical Records at A-87 – A-88.) Dr. Goldenberg also wrote the following note for

Plaintiff to present to Christiana Care in order to limit Plaintiff to "sedentary" work for an

unspecified period of time:

> Nicole Villanueva has pregnancy induced cardiac
> arrhythmia. Physical activities precipitate her arrhythmia.
> At this time I have suggested a sedentary position.

(Apr. 8, 2003 Goldenberg Note at A-89; Goldenberg Dep. 41:7-15 at A-78.) In his

deposition, Dr. Goldenberg testified that he wrote the foregoing note because Plaintiff

"was not capable of doing what she was doing" in her position as a PCT-II. (Goldenberg

Dep. 43:22 – 44:12 at A-79.) Significantly, Dr. Goldenberg further testified that

Plaintiff's condition and complaints of symptoms in April 2003 were more serious than

they had been during her previous pregnancy. (Goldenberg Dep. 37:11 – 38:16 at A-77 –

5

A-78.) During the previous pregnancy, Dr. Goldenberg did not prescribe any medication, but he recommended that Plaintiff restrict her activities. (Goldenberg Dep. 18:2-18 at A-73.)

On April 9, 2003, Plaintiff returned to work and presented Dr. Goldenberg's April 8 note to her supervisor, Ms. Dye. In accordance with Christiana Care's standard practice, Ms. Dye referred Plaintiff to the Employee Health Services department ("EHS") to determine whether she could be cleared to return to work. (Dye Dep. 27:2-16 at A-59; Employee Handbook at A-120.) Based on Plaintiff's self-reported symptoms and Dr. Goldenberg's note, EHS nurse Rebecca Goldstein confirmed that Plaintiff was restricted to "sedentary duty" and directed Plaintiff to report back to her unit manager to determine whether there was available work in the TSU unit that Plaintiff could perform consistent with her sedentary duty restriction. (Apr. 9, 2003 EHS Referral at A-90; Collins Dep. 7:3-13, 13:12 – 14:8 at A-29, A-30 – A-31.) It is undisputed that Plaintiff's PCT-II position was physically demanding and not remotely sedentary. Nevertheless, in an effort to accommodate Plaintiff's restrictions, Ms. Dye conferred with the nurse manager, Ms. McCloud, to determine whether there was any available sedentary work that Plaintiff could perform within the unit. (Dye Dep. 29:2-3 at A-59.) Unfortunately, Plaintiff's unit did not have an existing need for sedentary work. (McCloud Dep. 38:12 – 39:13 at A-48.)[3] Ms. Dye informed Plaintiff that the unit could not accommodate her sedentary duty

---

[3]     Typically, Christiana Care provides alternative work for a restricted employee only if such work is available within the employee's unit. (Collins Dep. 12:16 – 15:16 at A-30 – A-31.) (See also McCloud Dep. 16:15-21, 36:22 – 37:2 at A-42, A-47.) In this case, however, Ms. McCloud managed two different units (TSU and 5D) and she considered the needs of both units before determining that she could not accommodate Plaintiff's sedentary duty restriction. (See McCloud Dep. 3:10-11, 43:7-10 at A-39, A-49.) Plaintiff thus received greater consideration than other employees in her circumstance would have received.

6

restriction because, except in workers' compensation cases involving occupational injuries, Christiana Care does not create light duty work to accommodate an employee's restrictions. (Dye Dep. 28:4 – 30:16 at A-59 – A-60; McCloud Dep. 11:17 – 15:1-6 at A-41 – A-42.)

As the Director of EHS, Christine Collins testified that a Christiana Care manager can accommodate an employee's medical restrictions with alternative work "[o]nly if there's work available on that unit and it's within their job descriptions." (Collins Dep. 13:15-16 at A-30.) If the employee's restrictions are incompatible with the employee's job responsibilities or if the unit lacks alternative work that is consistent with the restrictions, the employee must take a medical leave of absence or apply for another available position within Christiana Care. (Collins Dep. 12:16 – 15:16 at A-30 – A-31.) It is undisputed in this case that there was no clerical or sedentary work available within Plaintiff's unit and that Plaintiff was not eligible for an FMLA or other leave of absence because she had not been employed by Christiana Care for six months. (Villanueva Dep. 29:21 – 30:2 at A-9 – A-10; Collins Dep. 15:20 – 16:3 at A-31; McCloud Dep. 38:12 – 39:13 at A-48; Employee Handbook at A-118 – A-119.)

Plaintiff apparently believed that Christiana Care was required to transfer her to a unit clerk position in a different part of the hospital. (Villanueva Dep. 29:21 – 30:2 at A-9 – A-10 ("[T]here never was a full-time unit clerk position [in my unit], but I am sure

---

Of course, Christiana Care also provides reasonable accommodations as may be required by the Americans with Disabilities Act. However, this case does not involve a request for accommodation under the ADA and Plaintiff's Complaint does not, and could not, assert any claim under the ADA, as pregnancy is not a disability under the ADA. See e.g., Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625, 627 (S.D.N.Y. 1996) (stating that neither plaintiff's pregnancy nor its resultant complications constitute disability under the ADA) (collecting cases).

7

there was [sic] unit clerk positions in the hospital.").) Plaintiff concedes that Ms. Dye
told her that this was not Christiana Care's procedure and that "if they did it for me, they
would have to do it for everyone else." (Villanueva Dep. 29:8-9 at A-9.) By her own
admission, Plaintiff became agitated and insisted (incorrectly) that Christiana Care was
legally required to comply with Dr. Goldenberg's sedentary duty restriction by
transferring her to a different position in a different unit or by creating sedentary work for
her to perform:

> She couldn't put me in a light-duty position. That's when I
> kind of got a little irritated. I said, "Wait a minute. This is
> a note from my doctor. Aren't you legally obligated to
> follow doctor's orders?"

(Villanueva Dep. 29:11-15 at A-9.)

Plaintiff and Ms. Dye went to the human resources department to discuss the
matter with Kerry Delgado, Senior Employee Relations Representative. (Villanueva
Dep. 4:21-23 at A-3.) Ms. Delgado explained to Plaintiff that Christiana Care does not
provide alternative work to accommodate an employee's medical restrictions unless there
is a need for such work within the employee's unit. (Dye Dep. 38:20 – 40:17 at A-62.)

Unfortunately, Plaintiff was not eligible for a medical leave of absence because
she had not been employed at Christiana Care for six month, a fact she concedes.
(Employee Handbook at A-118 – A-119; Villanueva Dep. 5:1 at A-3 ("I wasn't eligible
for FMLA.").) Accordingly, Ms. Delgado recommended that Plaintiff contact the
recruiting department in order to identify and apply for a different position within
Christiana Care. (Dye Dep. 38:20 – 40:17 at A-62; see McCloud Dep. 15:1 – 16:3 at A-
42.) Ms. Dye specifically suggested that Plaintiff contact Kealey Barnes, a Christiana
Care recruiter, to inquire about other positions at Christiana Care that might be

8

compatible with her restrictions. (Dye Dep. 39:8-17 at A-69; Villanueva Dep. 8:7-9 at A-4.) However, Plaintiff was warned that, pursuant to company policy, she would be removed from payroll in 14 days unless she applied for a new position or was cleared to return to her PCT-II position. (Dye Dep. 38:20 – 40:17 at A-62; Employee Relations Practices at A-128.)

Inexplicably, Plaintiff never made any attempt to apply for a different position at Christiana Care even though she believed there were available positions that she could perform consistent with her restrictions. (Villanueva Dep. 9:1 – 10:5 at A-4 – A-5.) According to documents produced during discovery, there were nine unit clerk positions available within the hospital system, which is the position to which Plaintiff now claims she could have been transferred. (Unit Clerk Chart at A-147.)[4] Plaintiff did not apply for any of these positions. Instead, Plaintiff told Ms. Delgado that she would simply ask her cardiologist (who was also her former employer) to write a new note lifting the restrictions he had just imposed the previous day:

> So I said, "Well, I'll go back to the doctor, have him write me my note to come back full-duty." She said, "Well, wouldn't that be lying?" I said, "Well, you are kind of putting me in a position. You know the note is written for light-duty for a month, but you are telling me if I don't return in 12 days, I am going to be terminated anyway. So Catch-22."

(Villanueva Dep. 5:4-11, 39:15-17 at A-3, A-12.)[5]

---

[4]    None of the nine unit clerk positions were within Plaintiff's unit and her supervisors had no ability to transfer Plaintiff to any of those positions. (McCloud Dep. 38:20 – 39:13 at A-48.) In any event, as shown infra, Plaintiff was not qualified to work as a unit clerk because it is not a sedentary position.

[5]    Contrary to Plaintiff's assertion, Dr. Goldenberg's April 8 note was not limited to "a month." On its face, the note restricted Plaintiff to sedentary duty for an unspecified

9

**C.    On April 10, 2003, Plaintiff Obtains A New Note From Dr. Goldenberg Contradicting His April 8, 2003 Note.**

On April 9, 2003, Plaintiff called Dr. Goldenberg's office to request a new note

contradicting the April 8 note restricting Plaintiff to "a sedentary position."  A secretary

relayed the message to Dr. Goldenberg as follows:

> She was seen yesterday and you gave her a note for work
> saying she had restrictions.  When she gave it to them they
> sent her home and told her she would have to find another
> job so she needs to know if she can have another note
> saying she can return to work with no restrictions?

(Apr. 9, 2003 Message at A-91.)  On April 10, 2003, Dr. Goldenberg wrote a new note

flatly contradicting his April 8, 2003 note.  The April 10 note stated:  "Nicole has been

under my care and from a cardiac standpoint may return to work with no restrictions.

Please contact my office if you should have any questions."  (Apr. 10, 2003 Goldenberg

Note at A-92.)  It is undisputed that Dr. Goldenberg neither examined Plaintiff nor spoke

with her before issuing his April 10 note purporting to clear Plaintiff to return to work as

a PCT-II.  (Goldenberg Dep. 49:19-22 at A-80.)  Moreover, Dr. Goldenberg specifically

testified that nothing had changed between April 8 and April 10, and that he wrote the

new note simply because "[s]he wanted to work."  (Goldenberg Dep. 48:14-17, 51:20 –

52:8 at A-80, A-81.)

Plaintiff brought the new note to Nurse Goldstein in EHS.  According to Ms.

Goldstein's contemporaneous records, Plaintiff "state[d] she was forced against <u>medical</u>

<u>advice</u> to RTW /s [return to work without] restrictions because she would lose her job."

(Apr. 15, 2003 EHS Referral at A-93.) (emphasis added.)  Ms. Goldstein was

---

period of time, presumably for the duration of her pregnancy.  (Apr. 8, 2003 Goldenberg
Note at A-89.)

understandably reluctant to clear Plaintiff to return to work full-duty without restrictions

because Plaintiff's condition had not changed between April 8 and April 10 and Plaintiff

told her that returning to work was "against medical advice." In response to Plaintiff's

protests, Nurse Goldstein called Ms. Collins to confirm that her decision was appropriate:

> And [Ms. Goldstein] had called me and was concerned that
> her status had not changed – nothing had changed between
> the day before and the day that she came in with the new
> note. And she was uncomfortable clearing her without
> restrictions. And I supported her in her assessment and
> decision that, you know, that she should continue to have
> restrictions.

(Collins Dep. 9:18-24 at A-29.)

Plaintiff returned home and called Ms. Collins. During their conversation,

Plaintiff told Ms. Collins that she "limited her activity at home, she would only go up and

down the stairs once a day to avoid exertion that would trigger these heart rates, and that

she had had a similar problem with her previous pregnancy and had worked in a light

duty or in a sedentary capacity during that pregnancy." (Collins Dep. 19:16 – 20:3 at A-

32.) Ms. Collins responded that she did not feel comfortable clearing Plaintiff to return

to work without any restrictions "given the history of tachycardia," "her own admission

that she limited her activity at home," and the fact "that she had had a similar problem

with her previous pregnancy and had worked in a light duty or in a sedentary capacity

during that pregnancy." (Id.) Plaintiff asked Ms. Collins to speak with her cardiologist,

Dr. Goldenberg.

To ensure that EHS's assessment was sound, Ms. Collins contacted both Dr.

Goldenberg and Dr. Garrett Colmorgen, Christiana Hospital's director of Maternal/Fetal

Medicine and High-Risk Pregnancy. (Collins Dep. 20:17 – 21:8 at A-32.) Ms. Collins

explained to Dr. Colmorgen Plaintiff's history of inappropriate sinus tachycardia and her

11

current condition, and Dr. Colmorgen stated that he agreed with EHS's decision to

continue Plaintiff's sedentary work restriction. (Collins Dep. 20:22 – 21:1 at A-32.) Ms.

Collins also spoke with Dr. Goldenberg. Ms. Collins testified in her deposition that Dr.

Goldenberg did not disagree with EHS's decision not to clear Plaintiff to return to work

as a PCT-II:

> When I expressed my concerns to him about clearing her
> without restrictions based, one, on the note from the day
> before, and two, based on Nicole's own comment that she
> was going against medical advice, and when I spoke to him
> he told me that he thought that she might be able to pace
> herself at work. And he understood my concerns and did
> not offer any objections to my concerns.
>
> I indicated to him that unfortunately in a hospital
> environment, you cannot pace yourself. The climate in the
> hospital paces your activity and the notion that somebody
> can sit down and rest is not a realistic one. These are very
> physically demanding jobs.

(Collins Dep. 31:7-19 at A-35; June 24, 2003 Collins Memo at A-97.) Dr. Goldenberg

testified that, other than the fact that he spoke with Ms. Collins, he has no recollection of

the substance of their conversation. (Goldenberg Dep. 53:4-6, 54:1-4 at A-81, A-82.)

Ms. Collins' testimony regarding that conversation is therefore undisputed.[6]

### D.    On April 24, 2003, Ms. McCloud Removes Plaintiff From Payroll Because She Had Been Absent For Fourteen Days And Was Not Eligible For A Leave Of Absence.

Plaintiff was not medically cleared by EHS to return to work as a PCT-II and she

did not apply for a new position at Christiana Care. The manager of Plaintiff's unit, Ms.

McCloud, did not have any available sedentary work that Plaintiff could perform.

---

[6]    Notably, Plaintiff's medical condition continued to deteriorate even after she had stopped
working. According to Dr. Goldenberg, Plaintiff called him on April 22, 2003
complaining of "stabbing chest pains," which prompted Dr. Goldenberg to increase her
medication. (Apr. 22, 2003 and Apr. 23, 2003 Messages at A-94 – A-95; Goldenberg
Dep. 54:14-24, 56:20 – 57:7 at A-82.)

(McCloud Dep. 38:12-19 at A-48.)  Accordingly, Ms. McCloud removed Plaintiff from

Christiana Care's payroll on April 24, 2003, pursuant to the hospital's policy because she

was ineligible for a leave of absence:

> At the point that an employee is absent from work for 14
> days (two weeks), they must either return to work or be
> placed on a FMLA qualifying Leave of Absence.  If the
> [employee] has not been employed for 6 months, they
> would be removed from payroll and coded as 'ineligible for
> LOA.'

(Employee Relations Practices at A-128; Apr. 24, 2003 Termination Letter at A-96.)  In

her deposition, Ms. McCloud testified that she was the decision-maker with respect to

Plaintiff's termination and that she based the decision on the foregoing policy:

> Nicole had been out of work for a period of time that
> indicated she would have needed to be placed on a leave to
> continue to be out of work.  However, she was not eligible
> for a leave of absence because she had not been employed
> for six months.  So consistent with policy, the decision was
> made to terminate her employment.

(McCloud Dep. 32:10-21 at A-46.)  (See also McCloud Dep. 35:15-21 at A-47 ("The

decision to terminate her was because she was – she was not cleared by Employee Health

to return to work, and she was out – extending her time out would have needed to be a

leave of absence which she was not eligible for."); Employee Relations Practices at A-

128; Leaves of Absence Policy at A-139 – A-145.)  Significantly, Plaintiff concedes that

Ms. McCloud called her and stated that she was "more than welcome to come back" to

her job as a PCT-II as soon as she was able to do so.  (Villanueva Dep. 54:12 – 55:5 at A-

16.)  Plaintiff admitted that she never followed up regarding Ms. McCloud's offer of

reemployment or made any effort to return to Christiana Care "[b]ecause I was pretty

bitter by the time I left.  I felt that, you know, I wasn't treated the way I should have been

treated, and . . . I don't know. I was very bitter about the whole thing." (Villanueva Dep. 23:10-17, 54:24 – 55:5 at A-8, A-16) (ellipses in original).

## IV.    ARGUMENT

### A.    Standard Of Review

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to offer admissible evidence sufficient to prevail on the merits of his or her claim at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 327 (1986). Although a defendant bears the initial responsibility of asserting the basis for its motion, the defendant is not required to negate the plaintiff's claim. Rather, the defendant need only point out that there is no evidence to support the plaintiff's case or, alternatively, offer affirmative evidence which demonstrates that the plaintiff cannot prove his case. See Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 69 (3d Cir. 1996).

After the defendant meets its initial burden, the plaintiff must present competent evidence which shows a genuine issue for trial. Celotex, 477 U.S. at 324. Although the court is to view all evidence in a light favorable to the plaintiff, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Rather, the requirement is that there is no genuine issue of *material* fact. Id.; Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994). To survive a summary judgment motion, therefore, the nonmovant must come forward with specific, admissible, and credible evidence supporting each element essential to that party's case; mere conclusory allegations or denials are not enough. Schoch v. First Fidelity Bancorp., 912 F.2d 654, 657 (3d Cir. 1990).

14

**B.     Plaintiff Cannot Establish A Prima Facie Case Of Pregnancy Discrimination.[7]**

Plaintiff's claim appears to be that Ms. McCloud's decision to terminate her employment pursuant to Christiana Care's written policies was discriminatory because, according to Plaintiff, Ms. McCloud should have transferred her to a unit clerk position in a different hospital department in order to accommodate her sedentary work restriction. However, to establish a *prima facie* case, Plaintiff must adduce admissible evidence establishing, among other things:  (1) that Ms. McCloud treated Plaintiff differently than other similarly situated non-pregnant employees; and (2) that Plaintiff was qualified to work as a unit clerk.  The uncontroverted record evidence shows that Plaintiff cannot satisfy either of these *prima facie* requirements.

**1.     There Is No Evidence That Ms. McCloud Treated Plaintiff Differently Than Similarly Situated Non-Pregnant Employees.**

It is settled law that a *prima facie* case of discrimination requires admissible evidence that the plaintiff was treated differently than similarly situated employees outside her protected class, which in this case is the class of pregnant women.  In re Carnegie Center Assocs., 129 F.3d 290, 297 (3d Cir. 1997) (holding that employer may terminate employee for absences regardless of whether absences are related to pregnancy because "PDA merely requires that an employer treat a pregnant woman in the same fashion as any other temporarily disabled employee").

Plaintiff has identified three individuals whom she believes were treated more favorably than her because they were able to work as unit clerks during periods when

---

[7]     Claims of pregnancy discrimination claim are governed by the standards articulated in Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994), and the familiar burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See In re Carnegie Center Assocs., 129 F.3d 290, 294-95 (3d Cir. 1997).

they were medically restricted from performing their regular jobs. However, the record evidence is unequivocal that the purported comparators – Kathryn Ross, Laura Crosby, and Diana Stewart – were not similarly situated because their medical restrictions, unlike Plaintiff's, occurred during periods when Ms. McCloud had specific unit clerk positions or needs that they could fill *within the same unit*. In addition, none of these three employees was restricted to sedentary duty. Weaver v. U.P.S., Inc., No. Civ. A. 02-1401, 2004 WL 395881, at *4 (D. Del. Jan. 30, 2004) ("For an alleged comparator to be considered similarly situated, a plaintiff must present evidence that the individuals with whom he or she wishes to be compared are similarly situated in all material respects.").[8]

Kathryn Ross worked as a patient care technician ("PCT") in the 5D unit, which was one of the two units Ms. McCloud managed. (McCloud Dep. 18:6-9, 20:23 – 21:5 at A-43.) Following a motor vehicle accident and a six-month medical leave of absence, Ms. Ross was cleared to return to work subject to a "no patient care" restriction. (McCloud Dep. 19:8-9 at A-43.) Ms. Ross contacted Christiana Care's recruiter and successfully applied for a vacant unit clerk position that was available in the same unit. (McCloud Dep. 18:3 – 22:2 at A-43 – A-44.)

Laura Crosby had medical restrictions as a result of a work-related injury that prevented her from performing her job functions as a PCT in the 5D unit. At that time, Ms. McCloud had a vacant unit clerk position in 5D. (McCloud Dep. 16:15-23 at A-42.)

---

[8]   See also Coney v. Dallas Housing Auth'y, No. Civ. A. 3-01-CV-2337, 2003 WL 292167, at *6 (N.D. Tex. Feb 7, 2003) (granting summary judgment on PDA claim because plaintiff's alleged comparators were not similarly situated); Sermons v. Fleetwood Homes of Ga., 227 F. Supp. 2d 1368, 1377-80 (S.D. Ga. 2002) (granting summary judgment on PDA claim where employer had policy requiring restricted employees to be able to "perform their jobs, seek a different available job of which they were capable, or take a medical leave").

16

Ms. Crosby applied for the vacant unit clerk position through the internal recruiting process and was awarded the position. (Id.) As Ms. McCloud testified, "I had an open unit clerk position available. She contacted Kealey Barnes, our recruiter, and bid for the position that way." (Id.)

Diana Stewart was a student nurse extern in the 5D unit and, as such, she was considered a "casual employee." As a casual employee, Ms. Stewart worked on an as-needed basis. (McCloud Dep. 37:3-10 at A-47 ("[S]he has no committed hours and I have no commitment to give her a certain number of hours . . . if I have a need that I can match up her availability with, I have her work.").) Following a motor vehicle accident, Ms. Stewart was medically restricted to "no patient care for a week." (McCloud Dep. 41:6 at A-48.) Ms. McCloud testified that she could not "recall if [Stewart] worked during that week." (McCloud Dep. 42:23 – 43:2 at A-49.) "If she worked during that week at all, and I'm not sure that she did, she would have worked as a unit clerk on 5D." (McCloud Dep. 27:19-21 at A-45.) As Ms. McCloud testified, the reason Ms. Stewart could have worked as a unit clerk during that week was because there were two vacant unit clerk positions on 5D at that time and Ms. McCloud therefore had a specific need for someone to fill-in as a unit clerk:

> I had a need at that time because I had two full-time unit
> clerks out on surgical leave of absence, out or going out on
> a surgical leave of absence. I had holes in my schedule.
> Since Diana was trained as a unit clerk, I could use her to
> fill in those holes.

(McCloud Dep. 36:22 – 37:2 at A-47.) (See also McCloud Dep. 37:11-13 at A-47 ("Q: Did you create any unit clerk work for Miss Stewart to do?  A:  No.")); Ilhardt v. Sara Lee Corp., 118 F.3d 1151, 1155 (7th Cir. 1997) ("[F]ull time employees are simply not

17

similarly situated to part-time employees. There are too many differences between them.").

Plaintiff was not similarly situated with Ms. Ross, Ms. Crosby, or Ms. Stewart in at least two material respects. First, Plaintiff was restricted to "sedentary" duty which, as shown infra, is not compatible with a unit clerk position. Second – unlike Ms. Ross, Ms. Crosby, and Ms. Stewart – Plaintiff's medical restrictions occurred during a period when Ms. McCloud did not have a vacant unit clerk position or needs in the department that Plaintiff could fill:

> Q:    In April 2003, did you have an open unit clerk
>       position within your authority that Miss Villanueva
>       could   have been transferred to or bid for?
>
> A:    No, I did not.
>
> Q:    Apart from an open position, did you have any unit
>       clerk work needs that were going unfilled that
>       Miss Villanueva could fill?
>
> A:    No.

(McCloud Dep. 38:12-19 at A-48.) (See also McCloud Dep. 43:7-10 at A-49 ("Q: Ms. McCloud, if you had had any need for unit clerk work during April 2003, would you have permitted Miss Villanueva to do that work? A: Yes, I would have.")).

Although Ms. McCloud did not have any available unit clerk work during the period of Plaintiff's restrictions in April 2003, Christiana Care produced during discovery a list of every unit clerk position that was available in other parts of the hospital at that time. (Unit Clerk Chart at A-147.) Ms. McCloud testified that she had no authority to hire or transfer an employee to any of those positions because they were outside her department, and that an interested employee would need to apply for those positions through the internal bidding process. (McCloud Dep. 38:20 – 39:13 at A-48.) Moreover,

18

it is undisputed that none of Plaintiff's purported comparators was transferred to a position outside the department, which is what Plaintiff claims should have been done for her. For whatever reason, Plaintiff never applied for any of the positions that were available in other departments, despite the fact that she was specifically advised to do so.

In short, the undisputed record evidence is that the circumstances that existed at the time of Plaintiff's restrictions were entirely different from the circumstances that existed when Ms. Ross, Ms. Crosby, and Ms. Stewart had restrictions. Ms. Ross, Ms. Crosby, and Ms. Stewart – unlike Plaintiff – had restrictions during times when Ms. McCloud had available unit clerk positions or shifts that needed to be filled. Accordingly, Plaintiff cannot show that she was similarly situated with Ms. Ross, Ms. Crosby, or Ms. Stewart, and therefore she cannot make out a *prima facie* case of discrimination.

## 2. Plaintiff Was Not Qualified To Work As A Unit Clerk In April 2003.

An employee whose medical restrictions prevent her from performing the functions of her job is not qualified for that job within the meaning of the PDA. Spivey v. Beverly Enter., Inc., 196 F.3d 1309, 1312-13 (11th Cir. 1999) (affirming summary judgment on PDA claim because plaintiff's lifting restriction rendered her unqualified to work as nursing assistant).[9]

---

[9]   See also McQueen v. Airtran Airways, Inc., No. 3:04-cv-00180, 2005 WL 3591100, at *4-5 (N.D. Fla. Dec. 30, 2005) (granting summary judgment because plaintiff was not qualified for job under PDA where pregnancy-related lifting restrictions prevented her from performing her job functions); Coney, 2003 WL 292167, at *5-6 (granting summary judgment because plaintiff was not qualified for position under PDA where pregnancy-related restrictions prevented her from performing essential functions of her job); Leeker v. Gill Studios, Inc., 21 F. Supp. 2d 1267, 1271-73 (D. Kan. 1998) (same).

19

In this case, Plaintiff was medically restricted to "sedentary duty" (unlike Ms.

Ross, Ms. Crosby and Ms. Stewart, who were merely restricted to "no patient care").

(Apr. 9, 2003 EHS Referral at A-90; Apr. 8, 2003 Goldenberg Note at A-89.) The

undisputed record evidence is that unit clerk positions are not remotely sedentary. As

Ms. Dye testified in response to questions by Plaintiff's counsel:

> Q:    Why is it that a unit clerk position is not a sedentary
>       position on the nursing floor?
>
> A:    You need to get up and go retrieve the charts, bring
>       the charts over, deliver them back to the units. You
>       need to be able to break down medical records and
>       put them over in the area to get them picked up, be
>       able to go to the mailroom, pick up mail, bring it
>       back.
>
> Q:    Okay.
>
> A:    There's a degree of bending, lifting, sitting. [. . .]
>
> Q:    Would there be times where they would sit most of
>       the day versus walking around?
>
> A:    No.
>
> Q:    No?
>
> A:    It's – you're constantly up and down the units just
>       to get  the charts.
>
> Q:    Is this a light duty position?
>
> A:    No. [. . .]
>
> Q:    So then is it fair to say in your opinion that the unit
>       clerk job is a physically demanding job?
>
> A:    Yes.

(Dye Dep. 7:8 – 9:14 at A-54.) Ms. McCloud testified similarly:

> Q:    What percentage of [a unit clerk's] time is sitting
>       versus  doing other things?

20

A:    I would estimate about half and half.

Q:    Half and half?

A:    Yes.

(McCloud Dep. 7:9-13 at A-40.)  (See also Unit Clerk Job Description at A-98 – A-101
(listing physical demands of unit clerk position).)

In short, there is no record evidence that the unit clerk position is sedentary.
Given that Plaintiff was medically restricted to sedentary duty, she cannot show that she
was qualified for such a position.  Accordingly, Plaintiff cannot make out a *prima facie*
case of discrimination.

### C.    There Is No Evidence That Ms. McCloud's Stated Reasons For Her Decision Are Pretextual.

Even if Plaintiff could establish a *prima facie* case (she cannot), there is no
evidence that Ms. McCloud's stated reasons for her decision are pretextual or that she
was otherwise motivated by anti-pregnancy animus.

Plaintiff cannot create a triable issue of pretext merely by showing show that the
"employer's decision was wrong or mistaken, since the factual dispute at issue is whether
discriminatory animus motivated the employer, not whether the employer is wise,
shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).
Rather, Plaintiff must adduce admissible evidence demonstrating such "weaknesses,
implausibilities, inconsistencies, incoherencies, or contradictions in the employer's
proffered legitimate reasons for its action that a reasonable fact finder could rationally
find them 'unworthy of credence.'" Id. In this case, there is not a shred of evidence that
Ms. McCloud's stated reasons for her decisions are pretextual.

21

Ms. McCloud testified that she terminated Plaintiff's employment because she was not medically cleared to return to work in her position within fourteen days, and she was not eligible for a medical leave of absence. (McCloud Dep. 32:10-21, 35:15-21 at A-46, A-47.) Christiana Care's policy in such circumstances could not be more clear: "At the point that an employee is absent from work for 14 days (two weeks), they must either return to work or be placed on a FMLA qualifying Leave of Absence. If the [employee] has not been employed for 6 months, they would be removed from payroll and coded as 'ineligible for LOA.'" (Employee Relations Practices at A-128.) Ms. McCloud also testified that she could not move Plaintiff to a unit clerk position because she did not have any available unit clerk work in her department and she had no ability to appoint Plaintiff to a position in a different department. (McCloud Dep. 38:12 – 39:13 at A-48.)

There is nothing weak, implausible, incoherent, or contradictory about Ms. McCloud's stated reasons for her decision. Moreover, it is undisputed that Ms. McCloud hired Plaintiff after Plaintiff informed her that she would shortly be undergoing an *in vitro* fertilization procedure, and that although Ms. McCloud and Ms. Dye were aware that Plaintiff was pregnant within the first few weeks of her employment, Plaintiff does not and cannot allege that anyone at Christiana Care took any adverse employment action against her until she was removed from payroll in April 2003 because of her medical restrictions and ineligibility for a leave of absence. (Villanueva Dep. 55:6-21 at A-16; Dye Dep. 23:13 – 24:3 at A-58; McCloud Dep. 10:13-24 at A-41.) There is also no evidence that Ms. McCloud treated any non-pregnant employees more favorably than Plaintiff under similar circumstances. Furthermore, even though Plaintiff believed that there were jobs at Christiana Care that she was qualified for, she admits that she did not

22

attempt to bid for another job at Christiana Care even after Ms. Dye and Ms. Delgado

encouraged her to contact Christiana Care's recruiting department. (Villanueva Dep. 9:1

– 10:5 at A-4 – A-5.) Plaintiff also failed to follow-up on Ms. McCloud's offer of

reemployment, or to make any effort to return to Christiana Care, simply because she was

"bitter." (Villanueva Dep. 23:10-17 at A-8.) In sum, Plaintiff cannot adduce evidence

sufficient to demonstrate that Ms. McCloud was motivated by an anti-pregnancy animus

when she removed Plaintiff from payroll. Plaintiff may subjectively believe that Ms.

McCloud's decision was wrong or unfair, but that is irrelevant in a discrimination case

and legally insufficient to defeat Defendant's motion for summary judgment.[10]

---

[10]    Defendant's understanding is that Plaintiff does not contend that EHS's underlying
decision regarding her medical restriction was motivated by pregnancy discrimination. If
Plaintiff were to so argue, however, the undisputed record evidence is that Nurse
Goldstein made the decision not to clear Plaintiff for full duty based on the fact that Dr.
Goldenberg issued contradictory notes two days apart (without any explanation or change
in Plaintiff's condition), and based on Plaintiff's statement that she was being forced to
go against her doctor's orders. When Plaintiff protested, Nurse Goldstein asked Ms.
Collins for guidance. Ms. Collins, in turn, spoke with Plaintiff, Dr. Colmorgen and Dr.
Goldenberg, all of whom (except Plaintiff) agreed with the decision to maintain
Plaintiff's restrictions. See supra, at Section III C. There is no evidence that this
decision was pretextual or otherwise motivated by discrimination.

23

## V.    CONCLUSION

For the reasons set forth above, there are no genuine disputes of material fact and

the Court should summary judgment.

Respectfully submitted,

David H. Williams (#616)
dwilliams@morrisjames.com
James H. McMackin, III (#4284)
jmcmackin@morrisjames.com
MORRIS, JAMES, HITCHENS & WILLIAMS
LLP
222 Delaware Ave., 10th Floor
Wilmington, DE  19899
302.888.6900/5849

Michael J. Ossip (admitted pro hac vice)
Thomas S. Bloom (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5543

Dated:  May 31, 2006          Attorneys for Defendant Christiana Care
                              Health Services, Inc.

24

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NICOLE VILLANUEVA,                          :
                                            :
                    Plaintiff,              :
                                            :
          v.                                :        C.A. No. 04-258-JJF
                                            :
CHRISTIANA CARE HEALTH SERVICES, INC. :
                                            :
                    Defendant.              :

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on May 31, 2006, I electronically filed the attached

**OPENING BRIEF IN SUPPORT OF DEFENDANT CHRISTIANA CARE
HEALTH SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT** with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the

following:

> Jeffrey K. Martin, Esquire
> Lori A. Brewington, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE  19806

> David H. Williams (#616)
> dwilliams@morrisjames.com
> James H. McMackin, III (#4284)
> jmcmackin@morrisjames.com
> MORRIS, JAMES, HITCHENS & WILLIAMS, LLP
> 222 Delaware Avenue
> P.O. Box 2306
> Wilmington, DE 19899
> (302) 888-6900/5849

Michael J. Ossip (admitted *pro hac vice*)
Thomas S. Bloom (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
(215) 963-5543

Attorneys for Defendant
Dated:  May 31, 2006          Christiana Care Health Services, Inc.