Villanueva  
Edward M. Goldenberg, M.D.

v.  
C.A. # 04-258 JJF

Christiana Care Health Services, Inc.  
May 4, 2006

**Page 50**

1  "EMG/Imm."
2      A.  I assume Imm is my secretary. So she must have
3  put "Action: Ok."
4      Q.  What do the initials Imm stand for?
5      A.  Linda Murray. I don't know what the two M's
6  are.
7      Q.  Murray is the last name?
8      A.  Last name. Maybe her middle name is Mary or
9  something. It's interesting she capitalizes mine but
10  does lower case hers.
11      Q.  Maybe that lets you know where you stand.
12      A.  Maybe I ought to let her know where she stands.
13  She deserves capital letters.
14      Q.  Dr. Goldenberg, I'm going to put in front of
15  you what has previously been marked as Goldenberg 16.
16      A.  Can I ask you how you number these things?
17  They're not logical.
18      Q.  When I numbered them, they were logical.
19          This is the new note that we were just
20  talking about?
21      A.  Correct.
22      Q.  Which is dated April 10th, 2003?
23      A.  Correct.
24      Q.  Your note says, quote, Nicole has been under my

**Page 51**

1  care and from a cardiac standpoint may return to work
2  with no restrictions, close quote. Did I read that
3  right?
4      A.  Correct.
5      Q.  Was there any other relevant standpoint from
6  your perspective other than a cardiac standpoint which
7  you referred to there?
8      A.  You mean did I consider other parts of her
9  body?
10      Q.  I'm just asking if that's —
11      A.  I was asked to, I guess, testify to the
12  capability of her heart to withstand whatever her job was
13  at the time. So I was saying that her heart itself would
14  tolerate the work.
15      Q.  I think before you were describing how patients
16  have different reactions to conditions. Some people are
17  malingerers, some people sort of suck it up and work
18  anyway. Did I get the gist of that right?
19      A.  Correct.
20      Q.  Is it true that you wrote this April 10th,
21  2003, note clearing Ms. Villanueva to return to work
22  because she's a person who wanted to suck it up and
23  return to work?
24      A.  Correct.

**Page 52**

1      Q.  I take it, then, the note you had written two
2  days before regarding sedentary work, you weren't
3  changing your opinion that that was a medically justified
4  thing to do, also.
5      A.  I was just trying to make things easier on
6  Nicole.
7      Q.  Because she really wanted to go back to work?
8      A.  She wanted to work.
9      Q.  You can put that aside, Doctor. Thank you.
10          I'm going to show you what's previously
11  been marked as Goldenberg 6, and this is another note or
12  exchange of notes in your internal messaging system from
13  April 16th, 2003, right?
14      A.  Yes.
15      Q.  Why don't you read the practice-generated call.
16      A.  "Chris Collins needs to talk to you about
17          Nicole. She said she cannot clear her to work
18          with no restrictions and is confused since one
19          day you gave her a letter saying she had
20          restrictions at work and the next day she had
21          another letter saying she did not have any
22          restrictions. She spoke to Nicole and her heart
23          rate at rest is 110 and she gets short of
24          breath. Please call her.

**Page 53**

1          "I called Chris. Tell Nicole that she
2          should check into unemployment, she probably
3          would be eligible. Notified Nicole."
4      Q.  As you sit here today, do you remember anything
5  about your conversation with Chris Collins?
6      A.  No, I don't.
7      Q.  Did you know who Chris Collins was before
8  April 16th, 2003?
9      A.  Chris and I have worked together, but I can't
10  tell you when we started working together. So I don't
11  know — on April 16th, I can't tell you where in our
12  relationship we interacted on situations other than with
13  Nicole.
14          So did I know that she was the head of
15  Employee Health? No, I can't tell you that I knew or
16  didn't know.
17      Q.  I just want to make sure I understand this
18  right. Are you also saying that you don't know whether
19  or not you knew who Chris Collins was at all at that
20  point, that perhaps you hadn't ever met or spoken with
21  her before April 2003?
22      A.  Correct. I might not have ever spoken to her.
23  It does say, "Employee Health Nurse for Christiana." So
24  I knew who I was talking to.

**A-81**

Villanueva
Edward M. Goldenberg, M.D.                    v.
                                   C.A. # 04-258 JJF

Christiana Care Health Services, Inc.
May 4, 2006

Page 54

1    Q.   You don't remember anything about your
2    conversation with Chris Collins?
3    A.   If I said I did, I would be making the story
4    up.
5    Q.   Lastly, there's a reference in here saying that
6    Chris Collins, quote, spoke to Nicole and her heart rate
7    at rest is 110 and she get shortness of breath, close
8    quote.
9    A.   Correct.
10   Q.   Is that consistent with what you had observed
11   and the symptoms that Ms. Villanueva had reported to you?
12   A.   Correct.
13   Q.   You can put that aside.
14        I'm showing you what's previously been
15   marked as Goldenberg 4. This is another note from your
16   internal messaging system dated April 22nd, 2003, right?
17   A.   Uh-huh.
18   Q.   This is a patient-generated call from
19   Ms. Villanueva, correct?
20   A.   Correct.
21   Q.   Can you tell me what the patient-generated call
22   was?
23   A.   "Nicole is having stabbing chest pain and is
24   not sure what she should do??? She is at home."

Page 55

1    Q.   What's the action?
2    A.   I called her. Well, it says I will call her.
3    Q.   Do you know whether you did or did not call
4    her?
5    A.   It's been two years. I can't tell. I assume
6    that I did call her. I would have hoped that I called
7    her.
8    Q.   I take it that you don't remember anything
9    about the conversation you had with Ms. Villanueva after
10   this April 22nd note?
11   A.   Correct.
12   Q.   Is that concerning to you, that Ms. Villanueva
13   was having stabbing chest pains?
14   A.   Stabbing chest pains are not cardiac chest
15   pains.
16   Q.   Can you elaborate on that for me?
17   A.   What is a stabbing chest pain? Or why it's not
18   cardiac?
19   Q.   Why it's not cardiac.
20   A.   There are certain types of pain that
21   characterize cardiac pain and certain types of pains that
22   don't characterize cardiac pain.
23   Q.   Are you saying that the stabbing chest pains
24   are totally unrelated to the tachycardia and the

Page 56

1    arrhythmia that you had been treating her for?
2    A.   I would assume it was, yes.
3    Q.   You can put that aside.
4        I'm going to give you a document that's
5    been marked as Goldenberg 3, and this is a note written
6    the very next day also from your internal messaging
7    system?
8    A.   I'm glad you've indicated that I did call.
9    Q.   This note was written on April 23rd, 2003, the
10   very next day, right?
11   A.   Correct.
12   Q.   Can you read what the practice-generated call
13   was?
14   A.   "EMG called her and increased her propranolol
15   to 30 milligrams twice a day."
16   Q.   Other than what's just written on this note, do
17   you remember anything about this conversation that you
18   had with Ms. Villanueva?
19   A.   I can't.
20   Q.   In response to her message the day before
21   regarding stabbing chest pains, your response to her was
22   to increase her dosage of medication?
23   A.   Correct.
24   Q.   That's the medication that you had been

Page 57

1    prescribing for her arrhythmia and tachycardia?
2    A.   Correct. And her symptoms. And her symptoms.
3    Q.   So it was your hope, I take it, that, by
4    increasing her medication she had already been taking,
5    that would also hopefully address the stabbing chest
6    pains that she complained of the day before.
7    A.   Correct.
8    Q.   At this point on April 23rd, 2003, you increase
9    it to 30 milligrams twice a day?
10   A.   Correct.
11   Q.   Is there a point of the dosage that gets
12   inappropriately high?
13   A.   You can usually increase the dose as long as
14   the patient has no adverse reaction to the medicines.
15   But you can use 200 milligrams a day of Propranolol.
16   Q.   In your experience, is there a level of
17   Propranolol that becomes risky for somebody who's
18   pregnant?
19   A.   It will be the same thing. As long as the
20   blood pressure was fine and her heart rate was fine, you
21   could increase it. Again, some people can take one
22   aspirin — some people can take five milligrams of
23   codeine, which is a narcotic, and they go to sleep for a
24   week. Some people take 100 milligrams of codeine and

A-82

Villanueva
Edward M. Goldenberg, M.D.

C.A. # 04-258 JJF

v.

Christiana Care Health Services, Inc.
May 4, 2006

Page 58

1  they're still having pain.
2      Q.   You can put that document aside.
3      A.   I don't want to cut you short, but this phone
4  call is in relationship to my wife. Do you have any
5  idea --
6          MR. BLOOM:  Less than 15 minutes.
7          THE WITNESS:  Can I call her?
8          (A recess was taken.)
9  BY MR. BLOOM:
10     Q.   I'm going to put in front of you a document
11  that's been marked as Goldenberg 2, and if you can tell
12  from looking at this document, what is the date this
13  document was created?
14     A.   4/8/03.
15     Q.   What is this document?
16     A.   It's just a list of her medicines and the
17  adverse reactions she's had from the medicines.
18  Actually, I don't know the date because, first of all, it
19  says "Page 2 of 2" and then it says an appointment date
20  of 5/13/03. So I'm not sure when the document was
21  generated.
22     Q.   So probably or likely this is the second page
23  of a letter that contains other information from a visit?
24     A.   Probably.

Page 59

1      Q.   Do you know --
2      A.   Did I see her on 5/13/03?
3      Q.   I don't know. That's what I'm trying to figure
4  out.
5      A.   So there's no office note from 5/13/03.
6      Q.   This is what I got. What I want to know is at
7  least based on your experience and the formats of the
8  forms and letters that you use in your practice, are you
9  able to tell me when it says in the upper right-hand
10  corner "Appointment Date:" May 13th, 2003, whether that
11  would refer to an appointment date in the future or
12  perhaps the date that you're actually writing about --
13     A.   Can we walk into another room and I'll turn on
14  a computer and find out whether it was the second page to
15  a first page you never got?
16         MR. BLOOM:  Sure. Why don't we go off and
17  you can check that.
18         (Discussion off the record.)
19         THE WITNESS:  I would assume that I did not
20  see her on May 13th. There's no bill that was generated
21  for May 13th, there's no office note that was generated
22  for May 13th, and there's a letter dated September 2003
23  that basically says we're interested in your care but you
24  haven't made any follow-up appointments.

Page 60

1  BY MR. BLOOM:
2      Q.   I see. So what we're talking about,
3  Goldenberg 2, there is a first page to this?
4      A.   I have got no idea. No. It says up here
5  "Appointment Date:  5-13-03." There was no appointment
6  on 5/13/03.
7      Q.   My next question is:  Based on what you just
8  went back in your office and looked at, were you able to
9  tell whether there was a page 1 to this document that
10  says 2 of 2?
11     A.   There is no document page -- there was no entry
12  on May 13th 2003. I have no idea how that was generated
13  or why.
14     Q.   I'm moving as quickly as I can. I'm going to
15  put in front of you what's been marked as Goldenberg 1.
16  This is a three-page document of office notes prepared by
17  you on October 19th, 2004.
18     A.   Right. Correct.
19     Q.   Do you recall what were the circumstances that
20  led you to have this visit with Ms. Villanueva in
21  October 2004?
22     A.   I probably looked at her cholesterol one day
23  and I told her she needed to see me.
24     Q.   Am I correct that, at this time in October

Page 61

1  2004, Ms. Villanueva's arrhythmic symptoms had subsided?
2      A.   Correct.
3      Q.   Was it your judgment that her tachycardia and
4  arrhythmic symptoms occurred during her pregnancies?
5      A.   Correct. Only.
6      Q.   During her pregnancies only?
7      A.   Yes.
8      Q.   Do you have an understanding as to why a
9  person's pregnancy could lead to those symptoms?
10     A.   There's a lot of hormones that are imbalanced.
11  They're balanced for the pregnancy, but that doesn't mean
12  they're balanced for the other organs in the body.
13     Q.   You can put that document aside.
14         I'm going to show you a page that's been
15  marked Goldenberg 10. This is our grand finale when we
16  get to your handwriting. This is all your handwriting I
17  take it?
18     A.   I'm not going to testify one way or the
19  other -- yes, it's all my handwriting. Can I ask what
20  year this was?
21     Q.   I was going to ask you. I take it you don't
22  know?
23     A.   Oh, this is, I think, the first -- my very
24  first evaluation of her. 2000. Looks like the letter of

A-83

16 (Pages 58 to 61)

Villanueva
Edward M. Goldenberg, M.D.

v.

C.A. # 04-258 JJF

Christiana Care Health Services, Inc.
May 4, 2006

Page 62

1  2000 because it says she's 25, she had bedrest for the
2  first 12 weeks, intermittently bleeding and placenta
3  separation which is what was written in my first letter.
4  Q.  This is when you were taking a history?
5  A.  My scratch pad.
6  Q.  For the sake of completeness, would you please,
7  starting in the upper left-hand corner, just read all of
8  your notes from the left going down and the center column
9  and then the third column/?
10  A.  I can't read my handwriting.
11  Q.  Please try.
12  A.  It will get me out earlier?
13      Asymptomatic, bedrest for first 12 weeks,
14  intermittently bleeding and placenta separation. Middle
15  of last week tachycardia with activity. Take breath
16  away. And I can't read the next word. Something "done."
17  Review of systems, great deal of indigestion, three
18  months before was on prednisone for positive ANA DSNA,
19  stands for double-stranded DNA. Dr. Elroy, who was the
20  doctor that gives her the medicines. Pregnant four and a
21  half. I guess she was four and a half months pregnant.
22      The next goes over her family history. Her
23  father had an infarct heart attack at 42. Her mom has
24  mitral valve prolapse. She has a brother 30 who is alive

Page 63

1  and well. She has no allergies.
2      The next lists her operations and past
3  medical history. Includes knee surgery in 1989, cat
4  scratch in 1991, a laparotomy in '93 for pelvic pain, she
5  had laparotomies in '95 and '99, and it says
6  endometriosis and tubal disease.
7  Q.  At the very top in the center looks like -- is
8  that a "VH" with an underline underneath it? Right here.
9  A.  Social history. She's married, rare alcohol,
10  and occasional Pepsis.
11  Q.  So the initials at the top, that's "SH," social
12  history?
13  A.  Right.
14      MR. BLOOM:  Thank you very much for your
15  time today, Dr. Goldenberg. I have no further questions.
16  BY MS. BREWINGTON:
17  Q.  I do have a few questions. I promise I'll keep
18  it short. I'm Lori Brewington, and I represent
19  Ms. Villanueva in this action.
20      Doctor, do you think at the time that you
21  wrote the note for sedentary duty, the suggestion for
22  sedentary duty, that you would have had a discussion with
23  Ms. Villanueva concerning her job duties?
24  A.  I would hope I would have.

Page 64

1  Q.  Is that something that you normally do with
2  your patients?
3  A.  Yes.
4  Q.  When you released her to return to regular
5  duty —
6  A.  My second letter.
7  Q.  Let me show that to you. Goldenberg 16. Is it
8  your opinion that you would have considered those same
9  duties?
10  A.  Correct. One letter — those letters were
11  written in relationship to Nicole as an entire person,
12  her ability to function, severity of her heart disease
13  which wasn't, her necessity to earn a living and be a mom
14  and do all the other things that people do. It was
15  taking the whole person into play.
16  Q.  Is it fair to say that, when you released her
17  to regular duty, it was your opinion that she could do
18  the regular duties of her job?
19  A.  I did. You have to remember that I'm legally
20  responsible for that decision.
21  Q.  Doctor, tell me the difference between
22  suggesting a sedentary position and restricting
23  Ms. Villanueva to a sedentary job.
24  A.  Well, suggesting means it would be probably

Page 65

1  better for Nicole. Restricting would mean that she
2  couldn't work unless she had a sedentary job.
3  Q.  Is it fair to say that, when you issued your
4  note of April 8, 2003, you were suggesting sedentary
5  duty?
6  A.  That's what it says.
7  Q.  Doctor, earlier you mentioned self-regulation.
8  Am I correct?
9  A.  Correct.
10  Q.  What exactly do you mean by self-regulation?
11  A.  Well, if your foot hurts and you walk a block
12  and it hurts really bad, then you stop walking. So
13  you're self-regulating your physical activities.
14  Q.  Earlier, and please correct me if I'm wrong,
15  you said that you would have expected Christiana Care to
16  make some sort of accommodation for Ms. Villanueva?
17  A.  Correct.
18  Q.  Knowing Christiana Care, is that correct?
19  A.  Correct.
20  Q.  Why do you say that?
21  A.  I think they're a good employer. They
22  appreciate good employees and they go out of their way to
23  do what they can to maintain good employees. As
24  Dr. Leskowski says, it's a great place to work.

A-84

17 (Pages 62 to 65)

Villanueva                                          v.              Christiana Care Health Services, Inc.
Edward M. Goldenberg, M.D.         C.A. # 04-258 JJF                                        May 4, 2006

Page 66

1    Q.   Has it been your experience that they have made
2   accommodations in the past that you're aware of?
3    A.   I have no idea.
4    Q.   When you returned her to work, and I believe
5   that's dated April 10th, 2003, was it your opinion that
6   Ms. Villanueva or her child would be at risk if she
7   returned to regular duty?
8    A.   I wouldn't have written that letter if I
9   thought she was at risk.
10          MS. BREWINGTON:  Thank you.  I have nothing
11   further.
12          MR. BLOOM:  We're done.  One last thing.
13   When there's a deposition, the witness has an option of
14   what's called reading and signing.
15          THE WITNESS:  I don't want to read it.
16          (Deposition concluded at 7:30 p.m.)
17          - - - - -
18
19
20
21
22
23
24

Page 68

CERTIFICATE OF REPORTER

STATE OF DELAWARE:
                          :
NEW CASTLE COUNTY:

        I, Kimberly A. Hurley, Registered Merit
Reporter and Notary Public, do hereby certify that there
came before me on the 4th day of May, 2006, the deponent
herein, EDWARD M. GOLDENBERG, M.D., who was duly sworn by
me and thereafter examined by counsel for the respective
parties; that the questions asked of said deponent and
the answers given were taken down by me in Stenotype
notes and thereafter transcribed by use of computer-aided
transcription and computer printer under my direction.

        I further certify that the foregoing is a
true and correct transcript of the testimony given at
said examination of said witness.

        I further certify that reading and signing
of the deposition were waived by the deponent and
counsel.

        I further certify that I am not counsel,
attorney, or relative of either party, or otherwise
interested in the event of this suit.

        Kimberly A. Hurley, RMR
        Certification No. 126-RPR
        (Expires January 31, 2008)

DATED:

Page 67

1        T E S T I M O N Y
2
3   DEPONENT:  EDWARD M. GOLDENBERG, M.D.      PAGE
4
5   BY MR. BLOOM.................................. 2
6   BY MS. BREWINGTON............................. 63
7
8   CERTIFICATE OF REPORTER        PAGE 68
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**A-85**

*2 /2 02*

Date

To Whom It May Concern:

*Nicole Villanueva* Has been under my care from 10/99
to *present* and may return to work/school on
*12·13·02*

DX: _____

Limitations / Restrictions: *No heavy lifting a*
*prolonged standing for long*

If you have any questions or require additional information, please feel
free to call our office at 610-447-2727.

Sincerely,

*Emily Maccomy RN*

Albert El-Roeiy, M.D., M.B.A.

Nursing:work ltr:revised 03/01

A-86

D0350



**CARDIOLOGY CONSULTANTS P.A.**
www.CardioConsultants.net

April 8, 2003

Gordon Ostrum, MD
Medical Arts Pavilion
Suite 106
Newark, DE  19713

RE:  NICOLE VILLANUEVA          DOB: 07/31/1974
158010

Dear Dr. Ostrum:

I saw Nicole during her last pregnancy at which time she seemed to have inappropriate sinus tachycardia. She had no pregnancy. She went through a successful delivery. She had no underlying organic heart disease.

She is now 4 1/2 months into her pregnancy and about two weeks ago she again noted the onset of resting tachycardia and with physical activities she develops dyspnea, tightness in her chest up into her neck and at times down her left arm. Similar symptoms are precipitated by lying down.

She has been evaluated by Dr. Micky Ostrum. She is not anemic and her TSH level is normal.

## PHYSICAL EXAMINATION:

| | |
|---|---|
| Weight: | 145 pounds. |
| Blood pressure: | 118/72. |
| General: | Reveals the patient to be well developed, well nourished and in no acute distress and to be oriented to person, place and time. |
| HEENT: | Reveals no scleral icterus and/or xanthelasma. |
| Neck: | Neck veins flat. Carotids are of normal upstroke without bruits. Trachea is midline. There is no thyroid enlargement. |
| Lungs: | Clear to auscultation and percussion. |
| Heart: | Reveals a regular rhythm. I think there may be a gallop present. |
| Abdomen: | Reveals no hepatosplenomegaly. |
| Extremities: | Reveal intact pedal pulses. There is no edema. |

Nicole Villanueva
Page 2
April 8, 2003

## MEDICATIONS:

Aspirin 81 mg one every day.
Folic acid 400 mcg one every day.
Prenatal formula oral tablet one every day.

## ALLERGIES:

Amoxicillin.

## ELECTROCARDIOGRAM:

Sinus tachycardia but is otherwise within normal limits.

## ASSESSMENT:

1. Intrauterine pregnancy.
2. Inappropriate sinus tachycardia.
3. Exercise induced symptomatology sounds anginal in nature.

## PLAN:

1. I have started her on propranolol 10 mg bid and subsequently 20 mg bid, hopefully to improve her functional exercise capacity by limiting the rapid acceleration of her heart rate.

2. Stress echocardiogram.

3. She will be seen in follow-up in one month and will give me a call next week to let me know how she is doing.

Sincerely,

Edward M. Goldenberg, M.D., F.A.C.C.
EMG/jgg
cc: Alan Levy, DO

D0127

www.CardioConsul   net

### EDWARD M. GOLDENBERG, M.D., F.A.C.C.

MEDICAL ARTS PAVILION I, SUITE 220
4745 OGLETOWN-STANTON ROAD
NEWARK, DE 19713
(302) 366-1929

4/8/03.

Nicolo Villanueva has.

Pregnancy induced cardiac

arry thermia. Physical excercises.

Precipitate his arry thermia.

At this time I have suggested

a sedentary position

Ed Goldenberg

CHRISTIANA CARE
HEALTH SERVICES

**EMPLOYEE HEALTH
SERVICE REFERRAL**

SECTION I - TO BE COMPLETED FOR ALL REFERRALS BY DEPARTMENT HEAD OR SUPERVISOR (INSTRUCTIONS ON BACK)

| NAME(LAST) Villanueva | (FIRST) Nicole | (M.I.) | DATE 4/9/03 | (TO BE COMPLETED BY THE TREATING FACILITY) |
| --- | --- | --- | --- | --- |

| FACILITY CHR | DEPT/UNIT T5u | SOCIAL SECURITY NUMBER 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 | JOB TITLE Unit Clerk/Pct | DATE OF BIRTH 7/31/74 | TIME IN | TIME OUT 0852 | HOME PHONE 266-1261 |

**MEDICAL AUTHORIZATION:**
I understand that Christiana Care maintains information in paper and electronic form.
I authorize EHS to access Christiana Care's information pertinent to my care

EMPLOYEE SIGNATURE

SYMPTOM OR PROBLEM:

1. ☐ OCCUPATIONAL INJURY/ILLNESS - COMPLETE BELOW
2. ☐ NON OCCUPATIONAL INJURY ILLNESS

AUTHORIZE SIGNATURE/SUPERVISOR OR MANAGER:

| 4. ACCIDENT OCCURRED | HOSPITAL/SITE | DEPT / UNIT | DATE OF INJURY | HOUR OF DAY | MACHINE, TOOL OR OBJECT CAUSING INJURY / ILLNESS |
| --- | --- | --- | --- | --- | --- |
| THIS SECTION IS REQUIRED FOR OCCUPATIONAL INJURIES | LOCATION WHERE INJURY OCCURRED | | DATE SUPERVISOR NOTIFIED | SUPERVISOR'S NAME Carol Dey | PHONE: |

3. FULL DESCRIPTION OF INJURY (DESCRIBE EXACTLY WHAT HAPPENED IN ORDER OF EVENTS AND WHY IT HAPPENED. INDICATE APPARENT INJURY AND CONDITION OF EQUIPMENT OR APPAREL WHERE SIGNIFICANT)

WITNESS:

SECTION II - TO BE COMPLETED BY PHYSICIAN AND/OR NURSE

DIAGNOSIS OR SPECIAL INSTRUCTIONS (CHIEF COMPLAINT)

0: Worst Pain

No Pain

MEDICATION: Lopressor

ALLERGIES

LMP:

TETANUS:

| TEMP | PULSE | RESP. | BP | VISUAL ACUITY: ___ OD ___ OS |

PMH:
☐ DM  ☐ HPTN
☐ PUD  ☐ CAD/CHF
☐ Asthma/COPD
☐ OTHER

5 months pregnant

Saw Dr. Goldenberg 4/8 and he wants
to place her on sedentary duty c̄
cardiac arrythmia

D0204

| POSITION: | 2. STATUS |
| --- | --- |
| ☐ CLEARED FOR WORK  ☒ RESTRICTIONS: Sedentary duty | ☐ OCCUPATIONAL INJURY/ ILLNESS  ☒ NON-OCCUPATIONAL INJURY/ILLNESS |
| ☐ SEND HOME | |
| ☐ REMAIN ON DUTY | ☐ REVIEW: (Reason) |
| ☐ TO: | APPT: | PROVIDER K. Thees ARNP |

87680)(0501)

A-90

RTW DATE

## Cardiology Consultants, PA

PatientID: 158010
Patient Name: NICOLE VILLANUEVA
Date of Birth: 07/31/1974
DOS: 4-09-2003

**PATIENT'S HOME PHONE:** (302) 266-7261
**PATIENT GENERATED CALL:** She was seen yesterday and you gave her a note for work saying she had restrictions.
When she gave it to them they sent her home and told her she would have to find another job so she needs to know if she
can have another note saying she can return to work with no restrictions?
EMG
**ACTION:** Ok.
EMG/lmm

# Cardiology Consultants, PA

PatientID: 158010
Patient Name: NICOLE VILLANUEVA
Date of Birth: 07/31/1974
DOS: 4-10-2003

RE: Nicole Villanueva

To Whom It May Concern:

Nicole has been under my care and from a cardiac standpoint may return to work with no restrictions.
Please contact my office if you should have any questions 302-366-1929.

Sincerely,

*Edward Goldenberg MD*

Edward M. Goldenberg M.D.,F.A.C.C.
EMG/lmm

**CHRISTIANA CARE**
HEALTH SERVICES

**EMPLOYEE HEALTH**
**SERVICE REFERRA**

### SECTION I - TO BE COMPLETED FOR ALL REFERRALS BY DEPARTMENT HEAD OR SUPERVISOR (INSTRUCTIONS ON BACK)

NAME (LAST) V.lla...iela    (FIRST) Nicole    (M.I.)    DATE 4/15/03    (TO BE COMPLETED BY THE TREATING FACILITY)
TIME IN ___    TIME OUT 1110

FACILITY CHR    DEPT/UNIT TSu    SOCIAL SECURITY NUMBER 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    JOB TITLE Unitclerk/PCT    DATE OF BIRTH 7/31/74    HOME PHONE: 211-7261

**MEDICAL AUTHORIZATION:**
I understand that Christiana Care maintains information in paper and electronic form.
I authorize EHS to access Christiana Care's information pertinent to my care

**SYMPTOM OR PROBLEM:**                                            EMPLOYEE SIGNATURE

1.☐ OCCUPATIONAL INJURY/ILLNESS - COMPLETE BELOW    AUTHORIZE SIGNATURE/SUPERVISOR OR MANAGER:
2.☐ NON OCCUPATIONAL INJURY ILLNESS

| A. ACCIDENT OCCURRED | HOSPITAL/SITE | DEPT / UNIT | DATE OF INJURY | HOUR OF DAY | MACHINE, TOOL OR OBJECT CAUSING INJURY / ILLNES |
|---|---|---|---|---|---|

THIS SECTION IS REQUIRED FOR OCCUPATIONAL INJURIES | LOCATION WHERE INJURY OCCURRED | DATE SUPERVISOR NOTIFIED | SUPERVISOR'S NAME | PHONE:

B. FULL DESCRIPTION OF INJURY (DESCRIBE EXACTLY WHAT HAPPENED IN ORDER OF EVENTS AND WHY IT HAPPENED. INDICATE APPARENT INJURY AND CONDITION OF EQUIPMENT OR APPAREL WHERE SIGNIFICANT) | WITNESS:

### SECTION II - TO BE COMPLETED BY PHYSICIAN AND/OR NURSE

DIAGNOSIS OR SPECIAL INSTRUCTIONS (CHIEF COMPLAINT)

10: Worst Pain
9
8
7
6
5
4
3
2
1
0: No Pain

MEDICATION: ___    ALLERGIES ___    PMH:
___    ___    ☐ DM  ☐ HPTN
___    LMP: ___    ☐ PUD ☐ CAD/CH
___    ___    ☐ Asthma/COPD
TETANUS: ___    ☐ OTHER ___

| TEMP | PULSE | RESP. | BP | VISUAL ACUITY: ___ OD ___ OS |
|---|---|---|---|---|

EE given note to RTW.
States she was forced against medical advice
to RTW c̄ restrictions because she would
lose her job.
EE stated she was going to get an attorney.
because she was being discriminated against.
Young child present c̄ EE.

D0208

---

**1. DISPOSITION:**
☐ CLEARED FOR WORK    ☐ RESTRICTIONS: ___    A-93
☐ SEND HOME
☐ REMAIN ON DUTY

**2. STATUS**
☐ OCCUPATIONAL INJURY/ILLNESS    ☐ NON-OCCUPATIONAL INJURY/ILLNESS
☐ REVIEW: (Reason) ___

REFERRED TO: ___    APPT: ___    PROVIDER: R. Thaos f ARNP    RETURN VISIT DATE ___    RTW DATE ___

15001 S/87680(/0501)

# Cardiology Consultants, PA

PatientID: 158010
Patient Name: NICOLE VILLANUEVA
Date of Birth: 07/31/1974
DOS: 4-22-2003


PATIENT'S HOME PHONE: (302) 266-7261
PATIENT GENERATED CALL: Nicole is having stabbing CP and is not sure what she should do??? She is at home.
EMG
ACTION: EMG will call her.
EMG/lmm

## Cardiology Consultants, PA

PatientID: 158010
Patient Name: NICOLE VILLANUEVA
Date of Birth: 07/31/1974
DOS: 4-23-2003

PRACTICE GENERATED CALL: EMG called her and increased her propranolol to30mg bid.
EMG/lmm

*copy - sent on letterhead via certified & regular mail*
*4/24/03*

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nicole Villaneuva
9 Van Buren Circle
Newark, DE
          19702

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
_____   4/30

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

APR 3 0 2003

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7002 2030 0003 7557 5396

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-

April 24, 2003

Nicole Villaneuva
9 Van Buren Circle
Newark, DE 19702

Dear Nicole:

Our records indicate the last day that you worked was April 9, 2003. Your absence requires that you be placed on a Leave of Absence. Christiana Care policy requires that employees must be employed with the organization for at least six months to be eligible for Leave of Absence consideration.

Since you have not met the eligibility requirements for a leave, this letter is to inform you that you have been removed from payroll effective April 24, 2003.

You may contact me at (302) 733-5013 if you have any questions about this letter. If you have questions regarding Christiana Care's Leave of Absence Policy, please contact the Employee Relations department at (302) 733-1120.

Sincerely,

Karen McCloud, RN
Nurse Manager 5D/TSU
Christiana Care Health System

D0218



**CHRISTIANA CARE**

June 24, 2003

To:    Kerry DelGado
       Employee Relations

From:  Christine Collins, ARNP
       Director, Employee Health Service

Subject:    Nicole Villaneuva

My initial contact with Nicole Villaneuva was on April 9, 2003 when Ms. Villaneuva presented to Employee Health Service with a note from her cardiologist placing her on restricted duty. She was limited to sedentary duty due to tachyarrhythmia associated with her pregnancy.

Ms. Villaneuva was informed that there was no sedentary duty available on her unit. She presented again to EHS on April 15, 2003 with a second notice from her cardiologist that she was able to return to work without restrictions.

I spoke with Ms. Villaneuva on April 16, 2003. She indicated to me that she does in fact get short of breath with her tachycardia, and that she limits her activity at home. She only goes upstairs once a day to avoid her symptoms. She told me that this was a problem in her first pregnancy and that she was working for her cardiologist at the time. They reassigned her to a receptionist position to accommodate her problems.

I spoke with her cardiologist that week. He stated that he felt she should be able to return to work and that her symptoms would pace her activity. I discussed her self-imposed limitations at home with him and my concerns regarding the work activities that would be expected as a Patient Care Technician.

I did speak with Nicole after my conversation with Dr. Goldberg. I told her that I was not comfortable clearing her to return to work as a PCT. Her position as a Patient Care Technician involves patient handling, transferring and repositioning patients, assisting patients who are unsteady on their feet, extensive walking and standing, frequent heavy lifting 50 pounds or more. The unit that Nicole works on is the Transitional Care Unit which is a surgical step down unit providing care for critically ill patients. Additionally, when Nicole was working on the floor she was visibly short of breath and a concern to her co-workers.

When Nicole presented her medical clearance for full duty without restrictions her statement was" I have been forced to go against medical advice to avoid losing my job".

# CHRISTIANA CARE
## JOB SPECIFICATION

| | | |
|---|---|---|
| **TITLE: Unit Clerk** | **CODE: 20950** | **GRADE: 00500** |
| **DEPT: Nursing  16155** | **LOCATION: Joint Center** | |

## PRIMARY FUNCTION:
A member of the health care team who coordinates and performs clerical duties to enhance the functioning of a patient care unit.

## PRINCIPAL DUTIES AND RESPONSIBILITIES:
Pleasantly and effectively communicates to visitors, patients, and the health care team.

Coordinates and performs clerical functions for the unit.

Maintains medical records according to CCHS guidelines.

Operates computer utilizing required computer skills.

Operates equipment in a safe and accurate manner

Coordinates maintenance of unit supplies in a cost-effective manner.

Answers patient call-lights promptly and pleasantly.

Appropriately identifies patient in all communication, including handling of components of the medical record.

Demonstrates effective written communication skills.

Practices professional telephone etiquette.

Completes mandatory education programs.

Performs assigned work safely, adhering to established departmental safety rules and practices;  reports to supervisor, in a timely manner, any unsafe activities, conditions, hazards, or safety violations that may cause injury to oneself, other employees, patients and visitors.

Performs other related duties as required.

## SCOPE, PURPOSE, AND FREQUENCY OF CONTACTS:
Daily contact with patients, visitors and members of the health care team..

## DIRECTION/SUPERVISION OF OTHERS:
None

## DIRECTION/SUPERVISION RECEIVED:
Direct supervision : Nurse Manager
Receives direction from other nursing staff.

D0361

## EDUCATION AND EXPERIENCE REQUIREMENTS:
High school diploma or equivalent
Two years clerical or related experience
An equivalent combination of education and experience may be substituted.
Experience using a computer.

## KNOWLEDGE, SKILL, AND ABILITY REQUIREMENTS:
Knowledge of CCHS policies and procedures.
Knowledge of clerical functions specific to unit.
Knowledge and application of CCHS telephone, paging and nurse call bell systems.
Knowledge of computerized information processing.
Basic knowledge of medical terminology.
Ability to operate hospital computer system and other equipment in an accurate and safe manner.
Ability to maintain a pleasant attitude and answer numerous questions in a professional and polite manner.
Ability to act independently within established guidelines.
Ability to exercise judgment, tact and diplomacy.
Ability to be flexible and empathetic.
Ability to speak carefully and communicate effectively utilizing verbal skills.
Ability to maintain patient confidentiality.

## SPECIAL REQUIREMENTS:
None

## PHYSICAL DEMANDS:
Ability to stand, walk, sit, bend, lift, push, pull, carry, teach, twist, handle, stoop, climb as per unit based Physical Demands Checklist.

## WORKING CONDITIONS:
Frequent exposure to biological elements with occasional exposure to chemical and environmental elements as per unit-based Physical Demands Checklist.

**E.E.O.C.:**                                      **EXEMPT OR NON EXEMPT**

## APPROVALS:

**DEPT. HEAD:**  Penelope Seiple, RN, MSN              **EFFECTIVE DATE:** 03/01/04
**HUMAN**
**RESOURCES:**                                           **REVISION DATE:**

Revised 10/25/03

## CHRISTIANA CARE
### Physical Demands Checklist

| TITLE: Unit Clerk | | CODE: 20950 | GRADE: 00500 |
|---|---|---|---|
| DEPT.: Nursing-5D (16155) | | LOCATION:  Christiana | |

| PHYSICAL TASK | FREQUENCY:<br>F=FREQUENT<br>O=OCCASIONAL<br>S=SELDOM | WEIGHT | HEIGHT |
|---|---|---|---|
| Lifting | O | MOD | Waist |
| Carrying | O | MOD | Waist |
| Pushing | F | MOD | Waist |
| Pulling | O | MOD | Waist |
| Handling | F | MOD | Shoulder |
| Reaching | F | MOD | Shoulder |
| Twisting | F | MOD | Shoulder |
| Other: | | | |

| MOBILITY | FREQUENCY | DISTANCE | DURATION |
|---|---|---|---|
| Walking | F | 900 feet | 6-8 HOUR PER DAY |
| Standing | F | N/A | 6-8 HOUR PER DAY |
| Stooping | O | N/A | 1-2 HOUR PER DAY |
| Bending | O | N/A | 1-2 HOUR PER DAY |
| Balancing | S | N/A | 15 MIN PER DAY |
| Climbing | S | 4feet | 1 HOUR PER DAY |
| Crawling | S | Less than 1 ft. | 15 MIN PER DAY |
| Crouching | S | N/A | 15 MIN PER DAY |
| Other: sitting | F | N/A | 4-6 HOUR PER DAY |

| DEXTERITY | FREQUENCY | DURATION | |
|---|---|---|---|
| Fingering | F | 2-4 HOUR PER DAY | |
| Manipulation | F | 2-4 HOUR PER DAY | |
| Bimanual | F | 2-4 HOUR PER DAY | |
| Unilateral | F | 2-4 HOUR PER DAY | |
| Feeling | F | 2-4 HOUR PER DAY | |
| Other: | | | |

---

**VISUAL:**    (If significant, please check (✓))

Binocular__X___        Monocular_

Near Vision____X___        Far Vision___X__        Peripheral Vision____X_

Color Perception__X___        Depth Perception__X__

**HEARING:**    (If significant, please check (✓))

Normal Conversation__X__        High Frequency__X__        Low Frequency__X_

Maximum Decibel_70____        Average Length of Time____8-12 HOURS_____

**CHEMICAL EXPOSURE:**    (If significant, please check (✓))

Vapors__X___        Fumes_____        Chemical Dust____

Acid_____'__Base____        Solvents__X_____        Solutions_____X_        D0363

Gases__x___        Mist____        Odors___X__

A-100

*Physical Demands Checklist*
*Page 2*

---

**ENVIRONMENTAL EXPOSURE:**          (If significant, please check (✓))

Dust__X__   Dirt_____   Cold_____   Hot_____   Wet__X__   Dry_X___

% of time inside_100 % of time outside__0__

Humidity (LOW) _X____   Heavy Metals_____   Aesbestos_____

**BIOLOGICAL EXPOSURE:**          (If significant, please check (✓))

Infectious Diseases__X__   Blood Born Pathogens__X__

Body Fluids__X___          Excrements__X__

**PHYSICAL DEMANDS:**          (If significant, please check (✓))

Mechanical___X_   Electrical__X__   Vibratory__X__

Torque Forces_____   High Elevations_____   Small Spaces__X__

Exposure to cuts and punctures__X___   Steam_____

Potential for assaults_____   Repetitive motion tasks__X___

**PERSONAL PROTECTIVE GEAR:**          (If significant, please check (✓))

Self-contained breathing apparatus_____   Gloves__X__   Masks____   Boots_____

Respiratory protection _____   Protective clothing/suits___   Goggles_____

**COMMENTS:**

---

| EMPLOYEE HEALTH OFFICER: | | DATE: | |
|---|---|---|---|
| HUMAN RESOURCES: | | DATE: | |
| DEPARTMENT SUPERVISOR: | | DATE: | |
| DEPARTMENT DIRECTOR: | | DATE: | |

A-101

D0364

# CHRISTIANA CARE
## JOB SPECIFICATION

| TITLE: Patient Care Technician II | CODE: 30325 | GRADE: T0098 |
|---|---|---|
| DEPT:   Nursing | LOCATION: | |

## PRIMARY FUNCTION:

To perform organized clerical duties, hygiene/comfort measures and selected nursing procedures for patients, under the supervision and direction of the professional nurse.

## PRINCIPAL DUTIES AND RESPONSIBILITIES:

Demonstrates sound knowledge base of the clerical functions specific to the unit.

Performs clerical functions that contribute to the efficient, safe operation of the unit.

Operates hospital computer system and other equipment in a safe and accurate manner.

Communicates effectively with patients, families, visitors, employees, physicians, and general public, utilizing courteous written and verbal communication skills.

Maintains an adequate amount of clerical/unit supplies in a cost-effective manner.

Demonstrates skills and knowledge necessary to provide care appropriate to patients, including knowledge of growth and development.

Obtains information to identify patient needs and to provide care as needed.

Performs assigned nursing procedures for the comfort and well being of patients (e.g., hygiene comfort measures, turn, pull up in bed, feeding, etc.)

Responds with promptness, empathy and interest to needs of patients.

Completes mandatory inservice education.

Performs essential unit specific tasks under the direction of the RN. (e.g. empty Foley bags, total I&0, restock rooms with supplies).

Performs assigned work safely, adhering to established departmental safety rules and practices; reports to supervisor, in a timely manner, any unsafe activities, conditions, hazards, or safety violations that may cause injury to oneself, other employees, patients and visitors.

Performs other related duties as required.

## SCOPE, PURPOSE, AND FREQUENCY OF CONTACTS:

Daily contact with patients, family, visitors, employees, medical staff, volunteers and students. Contact at various times with community agencies and companies as well as the general public.

**DIRECTION/SUPERVISION OF OTHERS:**

None

**DIRECTION/SUPERVISION RECEIVED:**

Nurse Manager, Direction from RN's

**EDUCATION AND EXPERIENCE REQUIREMENTS:**

High School diploma or equivalent.

**KNOWLEDGE, SKILL, AND ABILITY REQUIREMENTS:**

Knowledge of hospital policies, departmental policies, standards and select procedures.
Knowledge of clerical functions specific to the unit.
Basic knowledge of computerized information processing.
Basic knowledge of medical terminology.
Ability to act independently within established procedures and protocols.
Knowledge of basic comfort measures and ability to provide the same.
Ability to perform unit specific tasks as directed by the RN.
Ability to communicate effectively utilizing verbal and written communication skills.
Ability to perform elementary math skills.
Ability to perform specific tasks as outlined in procedures.
Ability to use appropriate safety measures for patients, employees and self.
Ability to perform Heart Saver skills.
Ability to follow standard precautions.
Ability to exercise judgment, tact and diplomacy.
Ability to respond to patient crisis under the direction of the RN.
Ability to operate hospital computer system and other equipment in an accurate and safe manner.
Ability to maintain patient confidentiality.
Ability to make decisions, utilizing sound judgment within the scope of responsibility.

**SPECIAL REQUIREMENTS:**

Heart Saver.

**PHYSICAL DEMANDS:**

Ability to stand, walk, sit, bend, lift, push, pull, carry, reach, twist, handle, stoop, climb as per Physical Demands Checklist.

**WORKING CONDITIONS:**

Frequent exposure to biological elements with occasional expose to chemical and environmental elements, as per unit physical demands checklist.

**E.E.O.C.:**                                    <u>3</u>                          **NON EXEMPT**

**APPROVALS:**

| | | | |
|---|---|---|---|
| **DEPT. HEAD:** | _____ | **EFFECTIVE DATE:** | 4/5/02 |
| **HUMAN RESOURCES:** | _____ | **REVISION DATE:** | _____ |

Cac:x:jobs/30325/Patient Care Tech II/04/05/02

D0260

# CHRISTIANA CARE
## Physical Demands Checklist

| TITLE: PCT II | | CODE: | GRADE: |
|---|---|---|---|
| DEPT.: Nursing | | LOCATION: Christiana | |

| PHYSICAL TASK | FREQUENCY: F=FREQUENT O=OCCASIONAL S=SELDOM | WEIGHT | HEIGHT |
|---|---|---|---|
| Lifting | F | MOD | Waist |
| Carrying | F | MOD | Waist |
| Pushing | F | MOD | Waist |
| Pulling | F | MOD | Waist |
| Handling | F | MOD | Shoulder |
| Reaching | F | MOD | Shoulder |
| Twisting | F | MOD | Shoulder |
| Other: | | | |

| MOBILITY | FREQUENCY | DISTANCE | DURATION |
|---|---|---|---|
| Walking | F | 900 feet | 6-8 HOUR PER DAY |
| Standing | F | N/A | 6-8 HOUR PER DAY |
| Stooping | O | N/A | 1-2 HOUR PER DAY |
| Bending | O | N/A | 1-2 HOUR PER DAY |
| Balancing | S | N/A | 15 MIN PER DAY |
| Climbing | S | 4feet | 1 HOUR PER DAY |
| Crawling | S | Less than 1 ft. | 15 MIN PER DAY |
| Crouching | S | N/A | 15 MIN PER DAY |
| Other: sitting | F | N/A | 4-6 HOUR PER DAY |

| DEXTERITY | FREQUENCY | DURATION |
|---|---|---|
| Fingering | F | 2-4 HOUR PER DAY |
| Manipulation | F | 2-4 HOUR PER DAY |
| Bimanual | F | 2-4 HOUR PER DAY |
| Unilateral | F | 2-4 HOUR PER DAY |
| Feeling | F | 2-4 HOUR PER DAY |
| Other: | | |

**VISUAL:**    (If significant, please check (✓))

Binocular___X___    Monocular_

Near Vision___X___    Far Vision___X__    Peripheral Vision____X_

Color Perception__X___    Depth Perception__X__

**HEARING:**    (If significant, please check (✓))

Normal Conversation___X___    High Frequency__X__    Low Frequency__X__

Maximum Decibel_70___    Average Length of Time____8-12 HOURS_

**CHEMICAL EXPOSURE:**    (If significant, please check (✓))

Vapors__X___    Fumes____    Chemical Dust____

Acid____    Base____    Solvents__X___    Solutions_X

Gases__x__    Mist____    Odors___X__    A-104

D0261

**Physical Demands Checklist**
**Page 2**

**ENVIRONMENTAL EXPOSURE:**        (If significant, please check (✓))

Dust__X__  Dirt_____  Cold_____  Hot_____  Wet__X__  Dry_X___

% of time inside_100 % of time outside__0__

Humidity (LOW) _X____  Heavy Metals_____  Aesbestos_____

**BIOLOGICAL EXPOSURE:**        (If significant, please check (✓))

Infectious Diseases__X__  Blood Born Pathogens__X__

Body Fluids_X___        Excrements_X___

**PHYSICAL DEMANDS:**        (If significant, please check (✓))

Mechanical___X__  Electrical_X___  Vibratory__X__

Torque Forces_____  High Elevations_____  Small Spaces__X___

Exposure to cuts and punctures__X___  Steam_____

Potential for assaults_____  Repetitive motion tasks_____

**PERSONAL PROTECTIVE GEAR:**        (If significant, please check (✓))

Self-contained breathing apparatus_____  Gloves__X__  Masks__X__  Boots_____

Respiratory protection _____  Protective clothing/suits___  Goggles_X___

**COMMENTS:**

| EMPLOYEE HEALTH OFFICER: | | DATE: | |
|---|---|---|---|
| HUMAN RESOURCES: | | DATE: | |
| DEPARTMENT SUPERVISOR: | | DATE: | |
| DEPARTMENT DIRECTOR: | | DATE: | |

<u>Print Handbook</u>

## Christiana Care
## Health Services, Heath Initiatives, Health Plans
## Employee Handbook

### Introduction

This guide highlights policies, practices, services and other benefits provided to employees in Christiana Care Health Services, Health Initiatives and Health Plans. The guide is intended to be informational and is not a contract between you and Christiana Care. Statements of policy and procedure in this guide are subject to change, and final interpretation of current policies and practices rests with Christiana Care.

### An equal opportunity affirmative action employer

Christiana Care is an equal opportunity employer, committed to carrying out all employment practices - including but not limited to recruitment, selection, education and promotion - without regard to race, color, religion, sex, sexual orientation, national origin, age, disability or veteran status.

Christiana Care is also committed to an affirmative action program to encourage and promote opportunities for women, minorities, veterans and the disabled. The senior vice president of Human Resources is responsible for coordinating Christiana Care's efforts to comply with all aspects of equal opportunity employment legislation.

### About Christiana Care

Welcome to the Christiana Care Health Services family. Christiana Care is the region's leading health care provider, serving Delaware and neighboring areas of Pennsylvania, Maryland and New Jersey.

Established as a single hospital in 1888, today Christiana Care includes hospitals, rehabilitation and wellness facilities, primary care physician offices, home health care services, health insurance plans, a long-term care facility and many more health-related resources to keep our community healthy and care for our neighbors when illness or injuries do occur.

At a Christiana Care facility, you'll find the caring, compassionate, interpersonal approach you expect, and deserve, from your health care providers. More than 1,000 community physicians and surgeons, representing every medical practice and specialty, are affiliated with Christiana Care. Hundreds of the country's brightest medical and surgical residents from Jefferson Medical College of the Thomas Jefferson University in Philadelphia gain extensive knowledge on the latest diagnostic and treatment techniques by training under our experienced physicians, surgeons and dentists.

## You and Your Job

### Employee relations philosophy

Christiana Care is committed to maintaining a positive employee relations climate through voluntary adoption of policies and practices which assure our employees a competitive level of

pay and benefits, including a variety of programs that support worklife balance, safe working conditions, consistent administration of policies, open two-way communication and the opportunity to resolve problems through Christiana Care's problem solving procedure.

In light of our employee relations philosophy, Christiana Care views outside representation of our employees through a union as unnecessary and undesirable as it is inconsistent with Christiana Care's mission.

You are encouraged to meet with your supervisor to discuss any matter of concern. In addition to your supervisor, an employee relations support system is available to answer your questions, and provide guidance for job-related concerns, problems or complaints. Remember, the only way we can help solve your problem is for you to tell us about it.

## Employee classifications

Christiana Care employees are classified as full time, part-time, or relief employees. Your eligibility for Christiana Care benefits depends on your classification.

**Full-time:** You qualify for full benefits if you are employed in an authorized, budgeted position that requires 80 hours of work during each biweekly pay period, and conforms to the regular and established work schedule of the position.

**Part-time:** You qualify for pro-rated benefits if you are employed in an authorized, budgeted position that requires you to work at least sixteen, but less than 80 hours, during each biweekly pay period, and conforms to the regular and established work schedule of that position. Part-time employees may also qualify for a higher pay, limited benefits option.

**Relief:** Employees hired in a casual, temporary or per diem classification are hired to serve as supplemental staff for a temporary period of time or to be utilized on an "as needed" basis. Employees in such classifications do not qualify for benefits.

**Weekend Incentive Program (WIP):** Many departments within Christiana Care also offer a weekend incentive program which provides a higher level of pay for an increased commitment to work on weekends.

## Orientation

During your first day as a Christiana Care employee, or as soon as possible thereafter, you will have the opportunity to attend a general orientation program. The program will acquaint you with our policies and benefits.

Your supervisor will conduct the majority of your orientation on a day-to-day basis, reviewing in greater detail our policies and benefits, and guiding you in learning your job. Your supervisor will explain your duties, keep you informed of your progress and, when appropriate, make recommendations for improvement. If you have difficulty with your job or you don't understand certain job requirements, your supervisor will be happy to talk with you.

An employee relations representative is assigned to each of our hospitals and is available to employees at off campus facilities to assist you with job-related concerns.

## Work assignment and location                                          D0002

Although you are initially assigned to a specific position, it may be necessary to reassign you

to another shift, department, hospital, or facility, where your particular abilities can best be used to assure proper care of our patients.

### Breaks
Work breaks are determined on a departmental basis based on workload demands. Since such breaks are paid time, breaks are not guaranteed.

### Workday
Christiana Care operates around-the-clock 365 days a year to provide vital services to our patients. To do this, we plan our work schedules to ensure personnel are available and patient care remains at a consistently high level. Your supervisor arranges your work schedule and will explain any necessary changes to you. We must all remember that our patient care obligations ultimately determine our work schedules.

All Christiana Care employees are considered essential personnel. During emergencies and periods of critical needs, it is expected that employees report for work as required by their department.

### Trial period
Your first three months of work at Christiana Care are considered a trial period - a time for you to demonstrate that you are the right person for the job and Christiana Care is right for you. Your supervisor has the opportunity to review and discuss your work performance with you during your trial period. During this period, you may decide the position does not meet your needs. Also, Christiana Care may feel you are not meeting work performance standards for the position, and either party may decide to terminate employment for any reason at any time during your trial period. When you are transferred or promoted to a new position, you are subject to a similar three-month trial period.

### Employment of Relatives
Immediate family members may be permitted to work in the same department as long as there is not a close working relationship (same physical location, shift, etc.). Immediate family is defined as parent, child, spouse, and/or sibling. However, employment, promotion or transfer will not be considered where ANY relative would be placed in a position of supervising another, or is in a position to influence employment decisions of another, or if a conflict of interest may result.

### Promotions and transfers                                                        D0003
Christiana Care is committed to promoting from within whenever vacancies occur. Vacancies are posted on bulletin boards in each facilities' Employee Information Center and on the INet. Full or part-time employees who have been in their present job for six months without corrective disciplinary action, who are meeting standards for performance and attendance, and who meet the qualification requirements for the posted position, are encouraged to apply for posted positions. Positions are filled based on performance and qualifications. Seniority will only be used as a determining factor when there are two equally qualified candidates.

Employees interested in applying for posted positions should obtain a job transfer/promotion from an employee relations representative or via the INet. Job transfer/promotion forms must be approved by your supervisor and forwarded to the Human Resources department.

If an employee is unsuccessful in a new position, and there is not an opportunity to return to their former position, Christiana Care will permit the employee to apply for available positions

A-108

for which they are qualified. If the employee is unable to successfully apply for another position, Christiana Care may have no alternative but to terminate their employment.

**If you have a problem**
Christiana Care is committed to open communication and participative problem solving. In keeping with that commitment, Christiana Care has established a four-step problem solving procedure, which may include a peer review option at the final step. An Employee Relations Representative program is available to provide guidance for job related concerns, problems or complaints.

Christiana Care's problem solving procedure is designed to enhance effective communication between an employee and his or her supervisor. For this reason, the employee is encouraged to informally discuss the problem with his or her supervisor. If the informal discussion fails to produce an acceptable resolution, the employee should contact an Employee Relations Representative within fifteen (15) calendar days of the informal discussion. The Employee Relations Representative will provide the employee with detailed information concerning the problem solving procedure including identification of the appropriate individuals at each level of the problem solving procedure. Failure to maintain contact with an Employee Relations representative during the appeals process may result in forfeiture of an employees right of appeal.

Employees are permitted to use this procedure to resolve any work related problem, including complaints related to discriminatory treatment based on race, color, religion, sex, sexual orientation, national origin, age, disability or veteran's status without fear of reprisal.

For further information on this process, employees should contact an <u>Employee Relations Representative.</u>

**Sexual harassment**
Christiana Care is committed to a work environment which is free of sexual harassment. Sexual harassment is defined as unwelcome advances, requests for favors or other verbal, written (including electronic messages or graphics) or physical conduct of a sexual nature. Any complaints related to sexual harassment should be brought to the attention of an Employee Relations Representative who will conduct an investigation. Employees who engage in sexual harassment will be subject to disciplinary action, up to and including termination of employment.

**Retaliation**
Christiana Care's mission, vision, strategic goals and objectives can only be accomplished in an environment that promotes Core Value behavior and open communication which is free from any form of discrimination, harrassment or retaliation. All policies shall be implemented without regard to race, color, sex, religion, national origin, sexual orientation, age, veteran status, physical or mental disability or any other factor that may form the basis for discrimination. Retaliation on part of management and/or employees against any employee for good faith reporting of any real or perceived incident involving alleged discrimination or harassment or the unethical, illegal or unsafe conduct, or for participating in the investigation of any such allegations will not be tolerated.

## Standards of Conduct and Performance

A-109

D0004

http://robostaff/robo/projects/employeehandbook/Handbook...2PDL...

Christiana Care has established an organizational code of ethics and is committed to carrying out all of its business operations in an ethical manner. These standards have been developed to promote and protect the integrity of the organization. These practices include but are not limited to conflicts of interest, the environment of care, and all aspects of patient care as well as business operations. You should consult your supervisor with questions or concerns. Christiana Care also provides a 24 hour corporate compliance hot line 1-800-863-8567.

As a Christiana Care employee, you are expected to demonstrate Christiana Care's values of Caring, Excellence, Integrity, Leadership, Service and Teamwork in the performance of your duties and conduct yourself with the best interest of our patients and Christiana Care in mind. It is also expected that all employees conduct their personal affairs in a manner that does not adversely reflect upon Christiana Care. Individual sets of circumstances will be reviewed on a case by case basis. Employees who are charged with misconduct outside of Christiana Care may be granted a leave of absence to resolve the charge. Termination of employment may result in instances where the charge is not satisfactorily resolved.

## Performance review
During your trial period, and periodically thereafter, your supervisor will review your performance to determine how well you meet the job standards for the major responsibilities of your position. Your supervisor will discuss this review with you, pointing out your strengths, as well as areas that need improvement, and perhaps suggest how such improvement might be accomplished.

## Attendance and lateness
As a normal condition of employment, you are expected to be on the job when scheduled. If you are unable to report as scheduled, please notify your supervisor as early as possible prior to your scheduled reporting time, or as required by the policies in your department. **Be sure to check with your supervisor concerning departmental requirements.**

Failure to notify your supervisor as required, may result in disciplinary action. If you are absent for three consecutive days without notifying your supervisor, you are considered to have voluntarily terminated your employment.

Christiana Care guidelines for unplanned absences and lateness are based on a system of occurrences. An occurrence is an unplanned absence of one day away from scheduled work without prior approval, or a number of consecutive, unplanned absences. Each lateness is considered an occurrence. The number of occurrences which may result in disciplinary action is based on the shifts of duty for which you are regularly scheduled to work and your length of service (if less than one year) as outlined below.

If you are regularly scheduled to work 10 shifts of duty biweekly and you exceed six occurrences and/or are late for work more than five times in a rolling 12 month period, you may be subject to disciplinary action.

If you are regularly scheduled to work less than 10 shifts of duty bi-weekly, your guidelines for unplanned absences and lateness are based on the number of shifts of duty for which you are regularly scheduled during a bi-weekly pay period.

If you have **less than one year of service**, guidelines for unplanned absences and lateness

are pro-rated based on your months of service and shifts of duty for which you are regularly scheduled during a bi-weekly pay period.

Please check with your supervisor for additional policy information.

**Confidentiality of patient and employee information**
It is essential that we keep information about patients and employees absolutely confidential. Such information may only be shared with others at Christiana Care on a "need to know" basis to enable them to effectively carry out their responsibilities. Unauthorized access or release of patient, employee or corporate information may result in disciplinary action including termination of employment.

**Electronic communication**
Christiana Care owns and maintains office/computer technologies and electronic systems to assist employees in meeting the business needs of the organization and are not the private property of any employee. Electronic communications include but are not limited to e-mail messages, graphics, screen savers, wallpaper, auto reply and signature responses as well as Internet access and usage. Personal business is unauthorized, as is inappropriate Internet usage or access. Christiana Care reserves and will exercise the right to review, audit and disclose messages as well as graphics received, created or sent over e-mail, or by other electronic means. All communications should meet professional standards and should not contain offensive, obscene, or harassing messages or graphics. Offensive messages include content which is inconsistent with Christiana Care Core Value behaviors and includes, but is not limited to comments that may be offensive based on age, race, sex, sexual orientation, religion, national origin disability, or veteran's status. Use of e-mail/electronic technology to copy and/or transmit any documents, software or other information protected by copyright laws is prohibited. Based on current technology, "deleted" files may also be restored and their contents disclosed.

Christiana Care may also monitor or intercept telephone conversations as necessary for customer service, quality assurance and performance improvement purposes.

Violations of Christiana Care communications standards may result in disciplinary action up to and including termination of employment.

**Corrective action**
If you break hospital or other reasonable common sense rules of conduct, corrective action, which may range from coaching to termination will be administered promptly.

**Substance abuse**                                                                                D0006
Christiana Care is dedicated to providing quality care for our patients, as well as a safe working environment for our employees.

To achieve this, we must ensure that all employees are able to function at their optimum level at all times. Therefore, we are committed to maintaining a drug and alcohol free work place.

Use of drugs and/or alcohol, or misuse or abuse of prescribed, controlled or other substances which alter or impair the behavior or ability of employees to function while working is prohibited. Employees appearing unfit for duty may be requested to submit to a medical evaluation, which may include drug and alcohol testing. Employees with the presence of drugs and/or alcohol in their system or who refuse testing will be subject to disciplinary action, up to

and including termination of employment.

Christiana Care also prohibits the unlawful manufacture, sale, distribution, dispensing and/or unauthorized possession of drugs and/or alcohol or other controlled substances on Christiana Care premises. Violations of this nature will result in termination of employment and may have legal consequences. Possession and use of alcohol on Christiana Care premises for limited social events can only be authorized by the office of the President.

In accordance with the Drug Free Work Place Act, any employee charged with an alcohol-related or drug-related offense which involves the sale, use, distribution or possession with the intent to distribute or manufacture drugs must inform Christiana Care of the charge within five days of the charge. After notification to Christiana Care and depending on the circumstances involved, such a charge may subject the employee to disciplinary action up to and including termination of employment. Failure to report such a charge is grounds for disciplinary action up to and including termination of employment.

Christiana Care's Employee Assistance Program (1-800-298-9076) is available to employees experiencing substance abuse problems.

## Staff rights
Christiana Care recognizes that there may be situations where conflict may arise related to an employee's religious beliefs, cultural or moral values, or ethics and their participation in certain aspects of patient care. When such conflicts arise, employees may request to be excluded from certain aspects of patient care. Request for exclusion does not guarantee that the employee will be excluded. Christiana Care must ensure that patient care is continued and not compromised by a request for exclusion from an aspect of the patient care process. Specific procedures have been established to address such requests.

Whenever possible, employees should notify their supervisor or department head in advance and in writing about their concerns and request to be excused from participating in a particular aspect of treatment or care process.

## Leaving Christiana Care
You are required to give your supervisor at least two working weeks notice when you leave Christiana Care voluntarily. If you leave without proper notice or are terminated for cause, your final paycheck will not include any accrued paid leave hours.

You must return all uniforms, photo identification/access card, locker keys and any other Christiana Care property to your supervisor.

## Employee identification/access card
Your photo identification/access card must be worn when reporting to work and at all times while you are on duty, on the upper half of your body, generally over the left side of the chest, with the photo clearly visible. Your photo identification/access card is required to access employee gate controlled parking lots and doors within the building. If your photo identification/access card is lost or stolen, you must report it to your supervisor. Your photo identification/access card can be replaced, at a cost to you, by contacting the Security department.

## Gifts and gratuities                                                                D0007
You may not accept gifts, tips or gratuities from patients or from firms doing business with

Christiana Care. You may advise patients or families wishing to express their appreciation of certain appropriate methods, such as making a contribution to Christiana Care through the Development office.

## Telephone Messages, Personal Cell Phones and Pagers
Because Christiana Care receives thousands of telephone calls daily through our telephone system, employees may not use departmental telephones for personal business. While at work, you may only receive calls for hospital business or personal emergencies. Pay telephones or personal cell phones may be used when it is necessary to make personal calls on non-working time.

Use of personal cell phones and pagers while on duty is prohibited. Employees who are required to use cell phones or beepers for Christiana Care business reasons are to respond to calls in an appropriate area with consideration given to confidentiality, safety, and maintaining a quiet environment for those whom we serve.

Employees who are required to drive while carrying a business cell phone should pull safely off the road and stop before responding to the call.

## Solicitation and distribution
In no way may solicitation or distribution by Christiana Care personnel interfere with Christiana Care's patient care or the work of an employee. To assure that does not occur, the following rules apply to solicitation and distribution of literature or other materials on Christiana Care property:

**Non-employees:** People not employed by Christiana Care may not, at any time, solicit or distribute literature or other materials for any purpose on Christiana Care property.

**Christiana Care employees:** No employee may solicit for any reason or distribute literature or other materials during work time or in working areas or patient care areas, such as patient rooms or treatment rooms. Work time excludes authorized break and meal time. This rule applies to employees soliciting or distributing and employees being solicited or receiving distributions.

Solicitation for and/or distribution of items such as cosmetics, jewelry, wearing apparel, housewares, religious information or similar items is not permitted by anyone at any time on Christiana Care property.

## Personal mail
You are not permitted to use Christiana Care as your personal mailing address.

## Examination of packages
You will need to obtain a package pass from your supervisor or department head when you plan to carry a bundle or package from Christiana Care property. Any packages, including handbags and personal luggage, must be made available for inspection at the request of a security officer.

D0008

## Visiting
We ask you to leave Christiana Care buildings and parking areas immediately after your duty ends, unless your presence is still required, and that you not return until the start of your next scheduled work time. This is important to our security and helps prevent unnecessary

congestion.

## Your Wages and Your Paycheck

Christiana Care policy provides employees a competitive wage and benefits package. We periodically compare our wages and benefits with those of similar employers in the area to ensure competitive wages and benefits.

**Record keeping**
It is essential that the times at which you report on and off duty are accurate. Employees using Kronos, Christiana Care's electronic timekeeping system, may not swipe in sooner than seven (7) minutes prior to the start of, or seven (7) minutes past the end of their scheduled shift without supervisory permission. Improper recording of time worked may result in disciplinary action, up to the termination of employment.

**Payday**
Christiana Care employees are paid bi-weekly or 26 times a year. Pay periods begin on Sunday and end Saturday night, two weeks later. Pay day is the following Friday. Paychecks contain wages earned during the two weeks prior to pay day and are mailed directly to employees' homes.

**Overtime pay**
We can not always predict the demand for patient services or the need for extra work time. When the need does arise, your supervisor will schedule you for overtime. Any overtime worked will be paid at the rate of time-and-one-half of your regular rate of pay, **unless** you are exempt, in accordance with current wage and hour laws.

Christiana Care has designated certain exempt positions, for competitive reasons, to be paid at straight time or time-and-one half of the regular rate of pay for overtime worked. Your supervisor will inform you about your eligibility for overtime pay and the basis of payment.

Christiana Care uses both a 7-day and 14-day work period to calculate overtime. If you are non-exempt, you will be paid at the rate of time-and-one-half of your regular rate per hour for authorized time worked in excess of either:

1. 40 hours in a weekly 7-day period; or
2. 8 hours in a workday, and 80 hours in a bi-weekly 14-day period.

Computation of overtime for special shifts must be approved by the Christiana Care's Wage and Compensation Manager from the Human Resources department. An Employee Relations Representative will be happy to answer your questions about computing overtime pay.

**Shift and weekend differentials**
If you are required to work mornings, evenings and/or weekends, you may be paid an established shift differential.

**Holiday premium**
You are paid a holiday premium of fifty percent (50%) of your average rate of pay for all hours

worked during the 24-hour holiday period if you are required to work a holiday. The 24-hour period begins with the shift that starts between 11:00 p.m. and 12:00 midnight, the night before the holiday. Your supervisor will advise you about your eligibility for this premium.

Employees who are scheduled to work on the following holidays are paid a holiday premium:

- New Year's Day (January 1)
- Memorial Day (last Monday in May)
- Independence Day (July 4)
- Labor Day (first Monday in September)
- Thanksgiving Day (fourth Thursday in November)
- Christmas Day (December 25)

If you are not required to work on a holiday because your department is closed, the hours will be deducted from your paid leave account. In this situation, employees who have not completed the three month eligibility period are to be advanced payment for planned time off from their paid leave account.

## Paycheck deductions

Christiana Care makes the following deductions from your paycheck that are required by law: Social Security, Federal and State income taxes, and City of Wilmington wage taxes, where appropriate. All paychecks are mailed directly to employee's homes. You may also authorize deductions for the following:

**U.S. Savings Bonds:** You may purchase U.S. Savings Bonds through regular payroll deductions. You may start, change or stop bond deductions by notifying the payroll office prior to any pay period. An authorization form for bond deduction is available from your employee relations representative.

**United Way:** The United Way of Delaware is the only community- based fund raising campaign authorized by Christiana Care. Employees are encouraged to participate in the United Way's fall campaign by pledging an annual contribution through payroll deductions.

**Flexible Benefits:** Full time employees who select a level of benefits that requires a contribution, or part-time employees electing contributory coverage, are required to authorize Christiana Care to deduct a fixed, per pay amount when enrolling in the Flex-Plus benefits program.

**Tax Deferred Annuity Program:** Employees are permitted to allocate a portion of their present income for the purchase of an annuity. This program affords employees the opportunity to accumulate tax-free savings to supplement their retirement incomes. Representatives are available, by appointment, to discuss the program and enroll employees. The Benefits office of the Human Resources department can provide you with more detailed information.

## Automatic paycheck deposit

Employees may have their paycheck deposited automatically in an area bank. Employees opting for automatic paycheck deposit receive a check stub mailed directly to their home indicating earnings and deductions. A form authorizing automatic deposit is available from your

D0010

supervisor or employee relations representative.

## Wage attachments

Employees are expected to conduct their financial affairs responsibly. While Christiana Care does not want to be involved with creditors, we are required by law to honor wage attachments.

## Employee records

Up-to-date information on the number of your dependents, your home address and any name changes is required so we can properly prepare your paycheck and maintain other important records. Please notify your supervisor if there are any change in the following:

- legal name;
- marital status, dependents or beneficiaries;
- home address, telephone number, or person to be notified in case of emergency;
- additional educational qualifications you may acquire after beginning employment.

Your supervisor will forward all changes to the Human Resources department where your record will be updated. The Human Resources department maintains your records in a strictly confidential manner. No information from active employee records is provided to outside agencies without your written authorization, unless required by law.

## Your Time off

## Paid time off

Christiana Care recognizes the need and importance of paid time away from work for vacation, sickness or other personal reasons. Christiana Care's paid time off program is offered to full and part-time employees who have completed three months of service. The paid time off program is composed of two accounts, paid leave and disability leave. These accounts are described below:

**Paid Leave Account** - The hours accrued in the paid leave account can be used for vacation, personal reasons, holidays or absences due to illness (that are not covered by the disability account). Generally, paid leave should be requested in advance and approved by your supervisor.

The paid leave accrual rate is determined by the employee's position, authorized hours and years of credited service. Part time employees accrue paid leave through a pro-rated system based on their authorized hours.

The maximum benefit balance allowed to accumulate in the paid leave account is two times the maximum annual accrual and appears on your pay stub. Employees should contact their supervisor for more details concerning their specific accrual rates.

Employees who reach their maximum paid leave account balance will automatically have excess hours transferred into their disability account.

Employees do not accumulate paid leave credits during a leave of absence without pay,

unless the absence is a short-term military training leave.

Christiana Care also provides employees in Health Services, Health Plans and Health Initiatives the opportunity to cash out forty (40) paid leave hours twice a year (spring and fall) if they have a minimum balance of 200 hours. Eligible employees will receive notice at home if they qualify for this option.

**Disability Leave Account** - The hours in the disability leave account can be used for absences due to illness after the twenty-fourth consecutive hour of absence. The first twenty-four consecutive hours of absence due to illness will be deducted from the paid leave account and, thereafter the absence can be deducted from the disability leave account. The twenty-four hour deductible is waived for scheduled work lost due to worker's compensation injuries, medical leaves of absence and inpatient treatment or outpatient surgery which does not require being placed on a leave of absence.

Full time employees will accrue at a rate of 1.54 hours of disability leave per pay. Part-time employees accrue disability leave hours through a pro-rated system based on authorized hours each pay period. Disability leave hours do not accrue during an unpaid leave of absence, except during an annual two week military training leave. The maximum benefit balance allowed to accumulate in the disability leave account is unlimited.

Employees with ten or more years of service are eligible to be paid for any unused disability leave, up to 400 hours, upon early or normal retirement under the provisions of Christiana Care's Retirement Plan. Terminated employees who are vested and eligible for future pensions are not eligible for payment of unused disability leave.

## Other Time Off

**Bereavement leave**
In the event of a death in your immediate family (defined as mother, father, sister, brother, wife, husband or child) full-time employees will be eligible for twenty-four (24) hours of bereavement leave. In the event of the death of any other relative, full-time employees will be eligible for eight (8) hours of bereavement leave. Part-time employees will be eligible for bereavement leave on a pro-rated basis. If you require additional time, you need to obtain permission in advance from your supervisor to use paid leave time. It is your responsibility to keep your supervisor informed.

If you are on paid leave when a relative dies, you should notify your supervisor immediately. You may substitute funeral leave for the day or hours approved to attend the funeral.

**Jury duty**                                                                    D0012
Christiana Care will pay you your scheduled work hours if you are required to serve on jury duty. You are expected to report for work on scheduled workdays when court is not in session, or if excused from jury duty in time to work at least one-half day. Documentation from the court verifying jury duty attendance is required for payment.

**Military leave**
Christiana Care grants a leave of absence without pay to employees required to serve on active duty status in the armed forces of the United States. This applies to both full and

part-time employees. You are entitled to employment privileges provided by the Uniformed Services Employment and Re-employment Rights Act of 1994.

### Leaves of absence/Family Medical Leave Act (FMLA)

Christiana Care recognizes that employees may occasionally need to request a leave of absence for family and/or medical reasons. The following is provided to guide employees when requesting a leave by clarifying eligibility, time lines and responsibilities.

An approved leave of absence protects your continuity of service, and benefits accrued before the effective date of the leave.

- Employees who have been granted a leave of absence will be guaranteed their position or an equivalent position provided their total leave time does not exceed twelve (12) weeks during the last 12 month rolling period, measured backward from the current leave.
- If your leave exceeds twelve (12) weeks as indicated above or you are physically unable to perform your former job, you will be eligible to apply for other open positions for which you are qualified. However, there is no guarantee of placement.
- Medical leaves can be granted up to a maximum of twenty four (24) weeks in a 12 month rolling period, measured backward from the current leave, but there is no job guarantee in the last twelve (12) weeks of such leave. Employees unable to return after twenty four (24) weeks leave in a rolling 12 month period will be terminated from payroll.

### A. Eligibility

Christiana Care employees must meet the following eligibility requirements to apply for a leave of absence:

- Continuous leaves of absence Full time and part time employees must have a minimum of six (6) months of service. All other employment categories must meet the FMLA requirements of twelve (12) months of service with a minimum of 1,250 hours worked in the past 12 months.
- Intermittent leaves of absences Full time and part time employees must have a minimum of six (6) months of service. All other employment categories must meet the FMLA requirements of twelve (12) months of service with a minimum of 1,250 hours worked in the past 12 months.

### B. Request/Notification of Need For Leave

Employees must submit the following (2) two forms to request and be approved for a leave of absence. These forms are available from the Employee Relations Section of the Human Resources department or your supervisor.

- Request for Leave of Absence
- Certification of Health Care Provider

### C. Time Frames

1.) Employees requesting FMLA time are required to provide 30-day advance notice when the need is foreseeable (e.g., pregnancy). Otherwise, they should provide as much notice as is practicable given the circumstances. Generally this notice should be provided

within two (2) days after learning of the need for a leave. Whenever possible, requests for leave should be in writing and should specify an effective date as well as the length of leave requested. Application forms are available from the Employee Relations Section of Human Resources or your supervisor. Completed application forms are to be returned to your supervisor.

2.) Medical Certification forms are also available from the Employee Relations Section of Human Resources or your supervisor. Medical certification forms should be completed by the healthcare provider and submitted to Employee Health Services within 15 days. Failure to provide the required documentation within the required time frames may result in your leave being denied and subject you to action consistent with Christiana Care Policy.

**D. FMLA Entitlement**
If you meet the eligibility requirements, proper documentation is received, and your leave is determined to be FMLA qualifying, your absence/leave will be counted against your annual 12 week FMLA entitlement measured backwards from the first day you were absent.

**E. Employee Responsibilities**
Employees are responsible for the following:

- Notifying their supervisor of their need for leave
- Submitting the appropriate documentation to request the leave within the above specified time frames
- Maintaining contact with their supervisor during their job guarantee period (12 weeks)
- Maintain contact with the Employee Relations section of the Human Resources department once the job guarantee period has expired
- Providing appropriate documentation as requested to support their ongoing need to leave including evaluation in Employee Health Services as requested
- Obtaining medical clearance from their healthcare provider and Employee Health before returning to work

Personal leaves of absence of up to thirty (30) days may also be requested by eligible employees to care for other family members not covered under the FMLA.

Employees granted a personal leave will be provided a 30 day job guarantee as long as they have not exceeded 30 days of personal leave in a rolling 12 month period.

Failure to maintain contact or submit medical documentation during the leave period may result in termination of employment.

## Insurance Policies

**Flex-plus benefit program**
Christiana Care employees may enroll in a flexible benefits program which can be customized to meet their personal needs. Benefits become effective on the first of the month following 90 days of employment.

A-119

**Full-time:** Full-time employees can enroll in a basic benefits program at no cost, enroll in lower levels of coverage and receive extra cash each pay period, or enroll in enhanced benefits by contributing toward the cost of benefits each pay period through payroll deduction.

**Part-time:** Part-time employees can elect to participate in benefit options by contributing to the cost of benefits through payroll deduction each payperiod. Christiana Care shares the cost of certain benefits for part-time employees on the basis of an employee's authorized scheduled hours.

Employees must complete Flex-Plus Benefit enrollment forms within established deadlines. Failure to meet the deadlines will limit coverage. The Flex-Plus workbook provides detailed information about this program.

### General and professional liability insurance

You are covered by general and professional liability insurance while carrying out your responsibilities while on duty as a Christiana Care employee. Any claims arising from work performed outside your normal occupation, or on patients you are caring for outside the Christiana Care, are not covered under Christiana Care insurance policies.

## Other Employee Benefits

### Group Blood Bank

Christiana Care pays for the enrollment of full and part-time employees in the group program of the Blood Bank of Delaware. If you, a family member or friend donate a pint of blood, or if you pay a fee, you and your family are assured an unlimited supply of blood should you need it, without charge, anywhere in the United States.

### Employee Health Services

Employee Health Services provides care for all occupational injuries and illnesses. Limited care is also available for simple, common non-occupational problems. Employees will be referred to their physicians for on-going follow-up care for chronic or more serious problems.

Employees with occupational exposures to work place hazards are evaluated periodically in accordance with OSHA, JCAHO and other regulatory requirements. Employees with direct or indirect patient contact are required to have annual TB skin testing. Employee Health Services will contact you to schedule these evaluations.

Employee Health Services offers immunizations for tetanus, influenza, measles, mumps, rubella and hepatitis B. These are offered to employees at no cost.

Your supervisor may require you to be seen by Employee Health Services if there is any question regarding your fitness to safely perform your job or upon return to work following an absence. All employees are required to be cleared by Employee Health Services after an absence for an occupational injury or illness, hospitalization or absences exceeding five days.

A physician's excuse is required for absences exceeding five days if the employee was not