LEXSEE 2005 U.S. DIST. LEXIS 37461

DAWN MCQUEEN, Plaintiff, vs. AIRTRAN AIRWAYS, INC. Defendant.

Case no. 3:04-cv-00180-RS-EMT

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA, PENSACOLA DIVISION

2005 U.S. Dist. LEXIS 37461

December 29, 2005, Decided
December 30, 2005, Filed

**COUNSEL:** [*1] For DAWN MCQUEEN, Plaintiff: JOHN AULD UNZICKER, JR, VERNIS & BOWLING OF NW FL, PENSACOLA, FL.

For AIRTRAN AIRWAYS INC, Defendant: LISA L BALLENTINE, MATTHEW W CLARKE, TED M SCARTZ, SMITH GAMBRELL & RUSSELL - ATLANTA, GA, ATLANTA, GA; JANICE KELLY SKIEVASKI, BOZEMAN JENKINS & MATTHEWS PA - PENSACOLA FL, PENSACOLA, FL.

**JUDGES:** Richard Smoak, United States District Judge.

**OPINIONBY:** Smoak

**OPINION:**

**ORDER** Before the court are the Defendant's Motion for Summary Judgment (Doc. 32) and the Plaintiff's Response thereto (Doc. 42) in a gender/pregnancy discrimination action arising under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e to e-17* (Count I of the Complaint) and the Family and Medical Leave Act of 1993, *29 U.S.C. § 2601* (Count II of the Complaint). For the reasons set forth below, summary judgment is granted on both counts in favor of AirTran Airways, Inc., the defendant. **I. FACTS** Viewed in the light most favorable to McQueen, the nonmoving party, the facts are as follows: The plaintiff, Dawn McQueen, was hired in March, 2002, as a customer service agent for AirTran Airways, Inc. (AirTran), a Delaware [*2] corporation operating as a domestic and international commercial airline in Florida. On or about March, 2003, while still employed at AirTran, McQueen became pregnant. In June, 2003, while fourteen weeks pregnant, McQueen presented to AirTran a note from her physician recommending that she limit her lifting to no more than thirty pounds. The record contains no evidence that the pregnancy was abnormal; rather, the lifting restriction was apparently based upon medical guidelines recommending that pregnant women, even those who are healthy, limit their lifting to no more than thirty pounds. The job description for an AirTran customer service agent, however, requires customer service agents to be able to lift up to seventy pounds. AirTran placed McQueen on unpaid leave under the Family and Medical Leave Act (FMLA) until she was able to lift up to seventy pounds. McQueen's Complaint (Doc. 1) asserted two causes of action against AirTran: (1) gender/pregnancy discrimination under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e to e-17* (Title VII) and (2) violation of the Family and Medical Leave Act of 1993, *29 U.S.C. § 2601* [*3] (FMLA). McQueen abandoned the second cause of action involving the FMLA in her Response to Defendant's Motion for Summary Judgment and Memorandum of Law In Support Thereof (Doc. 42). Therefore, the FMLA issue will not be analyzed by the court. With respect to the first cause of action (the gender/pregnancy discrimination claim), McQueen alleges that AirTran violated Title VII when it placed her on unpaid leave (under the "ruse" of the FMLA) because of her gender/pregnancy. Specifically, McQueen asserts that AirTran discriminated against her (1) by placing her on unpaid leave when she was willing and able to perform her duties at the ticket counter or gate and (2) by refusing to modify her job assignment when AirTran had previously done so for other pregnant and non-pregnant employees, including McQueen herself. AirTran argues that its decision to place McQueen on unpaid leave was non-discriminatory. AirTran asserts that it would have burdened company operations to except McQueen from the seventy pound lifting requirement for the entire remaining duration of her pregnancy. AirTran employees are cross-trained to work at various locations – ticket counter, gate, and ramp – and tasks [*4] involving the ability to lift up to seventy pounds are required at each location. Even when more than one agent is assigned to a particular location, AirTran argues that it is not feasible for any agent to perpetually avoid lifting up to seventy pounds. Moreover, AirTran explains that job assignments were temporarily

modified for two pregnant employees in the past only because (1) AirTran policy at that time did not require customer service representatives to be cross-trained and assigned to all functions of the job, (2) neither of the two employees had physician-imposed restrictions during their pregnancies, and (3) both employees lifted up to seventy pounds even while pregnant. AirTran also argues that on the occasion when it did modify McQueen's duties following an on-the-job wrist injury, the reassignment was only for a brief, two-week period of time and did not guarantee that Ms. McQueen would not have to lift up to seventy pounds in her reassigned role. McQueen's pregnancy, on the other hand, would have required an accommodation for the entire remaining duration of her pregnancy, or approximately six months. Such an accommodation, AirTran argues, would have unduly burdened its [*5] operations. AirTran did not terminate McQueen from employment. After placing McQueen on leave, AirTran held McQueen's position open for ten months. McQueen continued to accrue seniority during the first thirty days of her leave. She returned to AirTran in April, 2004, and was restored to the position, level of pay, and seniority status that she had held thirty days following the commencement of her leave. AirTran alleges that its decision to place Ms. McQueen on leave was not based on her pregnancy; rather, AirTran argues that McQueen was treated consistently with AirTran policy. AirTran filed a motion for summary judgment on May 13, 2005.

## II. DISCUSSION

### A. The Summary Judgment Standard

*Federal Rule of Civil Procedure 56(c)* mandates that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The "purpose of summary judgment is to pierce [*6] the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)* (quoting Advisory Committee Note to 1963 Amendment of *Fed. R. Civ. P. 56(e)*). "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit." *Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)* (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton, 965 F.2d at 998* (citing *Matsushita, 475 U.S. at 587*). The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson, 477 U.S. at 251*. The moving party has [*7] the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992)*. Thus, "if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992)* (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)*). However, "a mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)* (citing *Anderson, 477 U.S. at 251*). If the movant, here the defendant, [*8] satisfies its initial burden under *Rule 56(c)* by demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita, 475 U.S. at 587* (quoting *Fed. R. Civ. P. 56(e)*) (emphasis omitted). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)*. "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton, 965 F.2d at 998* (citing *United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)*). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson, 477 U.S. at 255* (citing *Adickes, 398 U.S. at 158-59*). In light of the summary judgment standard, the court will apply the relevant substantive law to the facts of the case.

### B. The Substantive Law: Discrimination Based [*9] on Sex/Pregnancy

Title VII prohibits discrimination against an employee on the basis of race, color, religion, sex or, national origin. *42 U.S.C. § 2000e to e-17*. In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act (PDA). The PDA provides that prohibitions of discrimination "because of sex" or "on the basis of sex" include discrimination on the basis of pregnancy, childbirth, or related medical conditions. *42 U.S.C. § 2000e(k)*. The PDA mandates that women affected by pregnancy "shall be treated the same for all employment-related purposes . . . as other persons not so affected but

similar in their ability or inability to work . . . ." Id. Two types of discrimination are actionable under Title VII, disparate treatment and disparate impact. *Garcia v. Woman's Hosp.*, 97 F.3d 810, 813 (5th Cir. 1996) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971)); see also *Spivey v. Beverly Enters.*, 196 F.3d 1309, 1312 (11th Cir. 1999). McQueen alleges only disparate treatment. **Disparate Treatment** In order to successfully establish a claim of discrimination [*10] based on disparate treatment, the plaintiff must prove, directly or circumstantially, that the defendant intended to discriminate against her. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994). McQueen has not offered direct evidence that AirTran intended to discriminate against her because of her pregnancy. McQueen must therefore present circumstantial evidence from which an inference of intentional discrimination can be drawn. See id. When a Plaintiff relies on circumstantial evidence to infer intentional discrimination, the court applies the three-tiered analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and refined in *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). See *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994). Under this analysis, a plaintiff is required to first establish, by a preponderance of the evidence, a prima facie case that creates a rebuttable presumption of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. "The plaintiff's burden of establishing a prima facie case serves, in [*11] part, to assure that the plaintiff has some competent proof that she was treated differently than similarly situated employees." *Lang v. Star Herald*, 107 F.3d 1308, 1312 (8th Cir. 1997). Second, if the plaintiff successfully establishes the prima facie case of discrimination, the burden of production "then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Finally, if the employer successfully articulates some legitimate, nondiscriminatory reason for the employee's rejection, the plaintiff must demonstrate by a preponderance of the evidence that the employer's stated reason for rejecting the employee was merely a pretext for discriminating against her. *Id. at 804*. Despite the shifting burdens of proof, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

**McDonnell Douglas Step One: The Prima Facie Case of Discrimination** The plaintiff must meet four requirements in order [*12] to establish a prima facie case of discrimination: (1) that she is a member of a group protected by Title VII; (2) that she was qualified for the position or benefit sought; (3) that she suffered an adverse effect on her employment; and (4) that she suffered from a differential application of work or disciplinary rules. *Armstrong*, 33 F.3d at 1314. The only two requirements in dispute are whether McQueen was qualified for the position while under a physician-imposed lifting restriction and whether McQueen suffered from a differential application of work rules.

**1. Qualified for the Position or Benefit Sought** Construing the evidence in the light most favorable to McQueen, McQueen has failed to demonstrate that she was qualified to work as a customer service agent while under her physician's lifting restrictions. The evidence conclusively establishes that AirTran customer service agents are required to be cross-trained, that is, they are required to be trained for and to work three sub-positions which include the ticket counter, gate, and ramp. In addition, a customer service agent is required to have the ability to lift up to seventy pounds repetitively. This [*13] lifting ability is required at all three sub-positions. McQueen was employed as a customer service agent during her pregnancy. The requirement that a customer service agent be able to lift up to seventy pounds is stated in the job description for a customer service agent. McQueen signed and initiated the job description document. During the initial weeks of her pregnancy, McQueen's physician drafted a letter recommending that McQueen "limit her lifting to no more than 25 to 30 lbs." The letter provided no time frame during which the lifting restriction was to remain in effect. Although phrased as a "recommendation," the physician's lifting limitation is appropriately viewed by both parties as a mandatory restriction on McQueen's lifting capabilities. AirTran was not required to ignore the physician's recommendation, nor would it have been reasonable for AirTran to have done so. To require AirTran to ignore such a restriction "would trap employers between the Scylla of liability for following medical advice and the Charybdis of different liability for ignoring the same." *Staszak v. Kimberly-Clark Corp.*, 2002 U.S. Dist. LEXIS 14882, *14 (N.D. Ill. 2002). See *Koopman v. Water Dist. No. 1*, 972 F.2d 1160, 1163 (10th Cir. 1992) [*14] (finding no retaliatory discharge where employer relied on doctor's analysis of plaintiff's physical abilities); *Phillips v. Swift & Co.*, 137 F. Supp. 2d 1126, 1140 (S.D. Iowa 2001) (finding genuine issue of fact whether employer acted wantonly in ignoring doctor's orders with regard to employee's physical abilities). "An employer has no place substituting its judgment of an employee's physical limits in the face of uncontroverted medical opinions." *Staszak* 2002 U.S. Dist. LEXIS 14882, at *14 (citing *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 325 (7th Cir. 2001)).

Moreover, McQueen did not request a second letter from her physician clarifying that her physician's letter was merely a suggestion and that she was, in fact, able to lift up to seventy pounds. Therefore, because McQueen was required to lift up to seventy pounds as part of her stated job requirements and because her physician drafted a letter which essentially restricted her lifting capabilities to thirty pounds or less, McQueen was no longer qualified to work as an AirTran customer service agent during her pregnancy. McQueen argues that even if she did not meet the stated qualifications for her job, she would [*15] have been qualified if AirTran had offered her modified duty assignments during her pregnancy. McQueen alleges that she was capable of performing the duties required of a customer service agent working only at the ticket counter or at the gate, even with a thirty-pound lifting restriction. The ticket counter and gate sub-positions allegedly require less lifting than the ramp sub-position. AirTran, however, was not obligated to accommodate McQueen by reassigning her to the gate or ticket counter positions during her pregnancy even if such accommodations were feasible. "The PDA does not require that employers give preferential treatment to pregnant employees." *Spivey, 196 F.3d at 1312* (citing *Lang, 107 F.3d at 1312*); *Garcia, 97 F.3d at 813*; *Troupe v. May Dep't Stores Co., 20 F.3d 734, 738 (7th Cir. 1994)*. Indeed, "employers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees." *Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996)* (quoting *Troupe, 20 F.3d at 738*). In *Dormeyer v. Comerica Bank-Ill., 223 F.3d 579, 584 (7th Cir. 2000)* [*16] (citing *Troupe, 20 F.3d at 738*; *Urbano v. Cont'l Airlines, 138 F.3d 204 at 204-08 (1998)*; *Armstrong, 33 F.3d at 1317*), the court stated that the PDA does not require an employer

> to excuse pregnant employees from having to satisfy the *legitimate* requirements of their job. [To hold otherwise would be to] subsidize a class of workers, and the concept of disparate impact does not stretch that far . . . . Nor would pregnant women, or women in general, benefit from such a stretch. Firms would be deterred from employing women of childbearing age if required to overlook the inability of a particular woman, because of . . . pregnancy, to do the work for which she had been hired.

Thus, McQueen was not entitled to a modified duty assignment solely because she was pregnant.

**2. Differential Application of Work or Disciplinary Rules**

Construing the facts in the light most favorable to McQueen, McQueen has also failed to satisfy this requirement of the prima facie case of discrimination, namely, that she suffered from a differential application of work rules. In *Byrd v. Lakeshore Hospital, 30 F.3d 1380 (11th Cir. 1994)*, the Eleventh [*17] Circuit held that an employer violates the PDA when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions. *Id. at 1383-84.* "Under the PDA, the employer must ignore an employee's pregnancy and treat her 'as well as it would have if she were not pregnant.'" *Spivey, 196 F.3d at 1313* (quoting *Piraino v. Int'l Orientation Res., Inc., 84 F.3d 270, 274 (7th Cir. 1996))*. Ignoring McQueen's pregnancy, McQueen was an AirTran employee with a physician-imposed lifting restriction. Therefore, the court must compare AirTran's treatment of McQueen with AirTran's treatment of other employees who were under physician-imposed lifting restrictions. McQueen offers a small sample size for comparison. The record identifies three AirTran employees with physician-imposed restrictions. The first employee was McQueen herself. In November, 2002, McQueen suffered from an on-the-job wrist injury. On that occasion, a physician drafted a note restricting McQueen's lifting abilities to fifteen pounds for the first seven days. McQueen's physician then drafted a second note restricting her lifting [*18] abilities to twenty or twenty-five pounds for the next seven days. During this fourteen-day period, AirTran did not force McQueen to take leave, notwithstanding the physician-imposed lifting restrictions. Instead, AirTran provided accommodations to McQueen. McQueen was permitted to "swap shifts" with another customer service agent in order to limit her exposure to lifting situations. The second employee identified who was under a physician-imposed restriction was Bethany Purvis. Around the same time that McQueen's wrist had been injured, Purvis suffered from an on-the job injury to her foot which required the use of crutches. Purvis provided a physician's note to AirTran. Whether the note restricted Purvis's lifting ability is uncertain. However, it is undisputed that the physician's note restricted Purvis from standing for long periods of time. AirTran did not force Purvis to take leave; rather, it permitted her to sit down for fifteen minutes every two hours and to work at the gate or ticket counter for approximately one month. Although AirTran alleges that the physician's note did not restrict Purvis's lifting ability and that Purvis lifted over thirty pounds during her injury, [*19] a rational trier of fact could conclude that a person on crutches is unlikely to lift much, at least on a regular basis, while on crutches. "In entertaining a motion for summary judgment, as a matter of law, . . . the court must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2529, p. 299 (2d ed. 1995)). Accordingly, at least for purposes of summary judgment, the physician's instructions limiting Purvis's ability to stand for long periods will also be treated as an implied restriction on Purvis's lifting capabilities. The third employee who was under physician orders was Naveed Malik. Malik suffered from an on-the-job back injury. Rather than impose a lifting restriction, however, Malik's physician specifically ordered Malik to take leave from work until his back had healed. Malik took leave for approximately one month and then returned to work without lifting restrictions. Summarizing the above factual situations, two nonpregnant employees (McQueen and Purvis) [*20] were granted modified duties without being forced to take leave while under physician-imposed lifting restrictions. One nonpregnant employee (Malik) took leave after his physician specifically ordered it. The facts in the present lawsuit are most factually similar to the two former factual situations (McQueen and Purvis) because in all three cases, a physician imposed restrictions without specifically ordering the employee to take leave from work. Malik's situation is distinguishable in that Malik was *specifically ordered* by his physician to take leave. Although the McQueen-Purvis injuries are most similar to the facts involving McQueen's pregnancy, the facts are nonetheless inappropriate for comparison because the individuals at issue were not similarly situated. "Plaintiff has the burden of proving that a similarly situated person, not in her protected class, received dissimilar treatment than did Plaintiff." *Anderson v. Twitchell-A Tyco Int'l Ltd. Co.*, 76 F. Supp. 2d 1279, 1286 (M.D. Ala. 1999) (citing *Jones v. Gerwens*, 874 F.2d 1534, 1539 (11th Cir. 1989)). In order to meet this burden, the Plaintiff "must show that she and the nonprotected [*21] person 'are similarly situated in *all relevant aspects*'" *Anderson*, 76 F. Supp. 2d at 1286 (quoting *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (emphasis added)). In *Malladi v. Brown*, 987 F. Supp. 893 (M.D. Ala. 1997), the court further explained that

> To be deemed 'similarly-situated,' the individual with whom the plaintiff seeks to compare his/her treatment must have . . . engaged in the same conduct without such differentiating or mitigating circumstances that would diminish their conduct or the employer's treatment of them for it . . . The simple allegation that there was someone else, without an adequate showing that she is similarly-situated in all relevant aspects, fails to make out a prima-facie case.

*Id.* at 909-10 (citations omitted). See also *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186-87 (11th Cir. 1984) (defining "similarly situated" individuals as individuals in "similar circumstances"); *Cabiness v. YKK (USA), Inc.*, 859 F. Supp. 582, 587-88 (M.D. Ga. 1994) (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir. [*22] 1984) ("Plaintiff must show that employees are treated differently for 'nearly identical' conduct"). Here, McQueen erroneously draws an analogy between her pregnancy and the wrist and foot injuries incurred by Purvis and her. McQueen essentially argues that she was similarly situated during her pregnancy to Purvis and to herself when injured. The court does not agree. Although all were employed in the same position as customer service agents and all had physician notes which placed restrictions on their activities, the similarities end there. McQueen's injury required accommodations for two weeks; Purvis's injury required accommodations for approximately one month. The lifting restriction imposed on McQueen during her pregnancy, on the other hand, would have required accommodations for the *entire* remaining duration of her pregnancy, a span of approximately *six months*. Such an accommodation period represents a six-fold increase from the one-month accommodation period required by Purvis. McQueen has supplied no evidence that AirTran accommodated any employee under a physician-imposed lifting restriction for longer than one month. Thus, because the six-month interval during which [*23] McQueen required accommodations represents a numerical "outlier" of sorts, McQueen has failed to compile an appropriate comparison sample of employees who were similarly situated to herself. See *Sermons v. Fleetwood Homes of Georgia*, 227 F. Supp. 2d 1368, 1387 (S.D. Ga. 2002) ("Even assuming that Defendant had some flexibility to ask other employees to help each other on occasion, there is no discrimination where Plaintiff cannot present any evidence that Defendant ever did so for *extended periods of time*") (emphasis added). McQueen's argument that AirTran assigned modified duties to pregnant and nonpregnant employees notwithstanding its cross-training requirement misses the mark. What AirTran permits and does not permit in individual cases is irrelevant. The only question germane to the analysis is whether AirTran treated McQueen *differently* than it treated similarly situated, nonpregnant employees. Here, McQueen has not identified any employees who were truly "similarly situated" to herself. Although two employees were similarly situated to McQueen in terms of job classification, they were not similarly situated to McQueen in terms of the duration for which [*24] accommodations were required. Devoid of an appropriate comparison sample, McQueen is unable to establish that she was, in fact, treated dif-

ferently by AirTran because she was pregnant. Assuming arguendo that the McQueen-Purvis scenarios involved employees who were similarly situated in all respects to McQueen while pregnant, the comparison sample size is quite small. While not necessarily defeating McQueen's allegation of disparate treatment, the small comparison sample size consisting of only two employees – one arguably requiring a minor accommodation of needing only to sit down for fifteen minutes every two hours – does significantly dilute the robustness of McQueen's claims. See *id. at 1380* ("Hence, the allegation that on, at most, three occasions over the course of several years someone without a workplace injury received a light-duty assignment is not enough for a reasonable jury to decide that the light-duty policy did not exist or that Plaintiff was subjected to differential application of it"). Finally, McQueen's argument that AirTran granted modified duties to other pregnant employees but refused to do so for her adds nothing to her case. McQueen's complaint [*25] alleges that she was discriminated against by AirTran because she was pregnant. Yet, by discussing AirTran's favorable treatment of other pregnant employees, McQueen appears to essentially be making the following argument: "It was unfair that AirTran did not make the same accommodations for me as it did for other pregnant employees." Without passing judgment on the fairness or unfairness of AirTran's treatment of McQueen, the argument is irrelevant for purposes of proving discrimination under the PDA. Such an assertion, assuming arguendo that it is true, would prove only that McQueen was treated differently from other *pregnant* employees. It would not support an inference that McQueen was discriminated against *because* she was pregnant. Indeed, discrimination based on pregnancy cannot be appropriately inferred from comparing McQueen to other pregnant employees because such a comparison confounds the inquiry, rendering it impossible to determine whether it was indeed the pregnancy, or some other variable, which actually influenced AirTran's decision to grant or deny modified duty. In fact, AirTran may have had a myriad of reasons, other than pregnancy, for refusing to accommodate [*26] McQueen during her pregnancy. That AirTran chose to grant modified duty to other employees who were pregnant but refused to accommodate McQueen in a similar fashion during her own pregnancy does not support an inference of discrimination based on pregnancy. The only conclusion that can properly be drawn from AirTran's conduct is that AirTran was either unwilling or unable to accommodate McQueen for whatever reasons, not that AirTran discriminated against McQueen. Indeed, the fact that AirTran accommodated other employees who were pregnant suggests that AirTran was willing, at least in certain circumstances, to accommodate women who were pregnant. That AirTran chose not to accommodate McQueen during her pregnancy may be displeasing to McQueen, but it hardly supports a claim of pregnancy discrimination. The evidence also indisputably establishes that AirTran permitted employees, including McQueen herself during a prior pregnancy, to continue working in their positions during their pregnancies. Although not dispositive in itself, AirTran's history of accommodating pregnant women undermines any inference that AirTran discriminates against pregnant women. In summation, McQueen has failed [*27] to establish a prima facie case of pregnancy discrimination under the PDA. First, when McQueen presented to AirTran a letter from her physician recommending that she limit her lifting to less than thirty pounds, McQueen was no longer qualified for her position. Second, the evidence offered by McQueen does not support her claim that AirTran treated her differently from other nonpregnant employees. Therefore, McQueen has failed to establish, by a preponderance of the evidence, a prima facie case that creates a rebuttable presumption of unlawful discrimination. *McDonnell Douglas, 411 U.S. at 802*.

**McDonnell Douglas Step Two: Employer's Legitimate, Nondiscriminatory Reason** Because the court has determined that McQueen has not established a prima facie case, the court need not decide whether AirTran has offered a legitimate, nondiscriminatory reason for its treatment of McQueen or whether McQueen can prove that the reason offered was pretextual. However, in an abundance of caution and consideration for the case at hand, the court will address those issues. In doing so, the court will assume arguendo and for purposes of this discussion only, that McQueen can [*28] show that she was qualified for her position and that she was treated differently from nonpregnant employees. In showing that it had a legitimate, nondiscriminatory reason for its treatment of a plaintiff, the defendant's burden is "exceedingly light." *Perryman v. Johnson Prods. Co. Inc., 698 F.2d 1138, 1142 (11th Cir. 1983)* (citing *Burdine, 450 U.S. at 254-55*). "The defendant only needs to produce evidence of a reason for its decision; it does not need to prove that it was actually motivated by that explanation." *Sermons, 227 F. Supp. 2d at 1380* (citing *Burdine, 450 U.S. at 254*). "[The proffered reason] is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine at 254-55*. The defendant's burden at this stage of the analysis is "merely one of *production,* not of proof." *Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir. 1982)* (emphasis added). "As long as the defendant articulates its reason with some specificity so that the plaintiff has a 'full and fair opportunity to demonstrate pretext,' the defendant's [*29] burden has been met." *Sermons, 227 F. Supp. 2d at 1380* (quoting *Burdine, 450*

*U.S. at 255-56).*Here, AirTran has satisfied its burden of articulating a legitimate, nondiscriminatory reason for placing McQueen on leave. AirTran argues that it placed McQueen on leave because the physician's instructions limiting McQueen's lifting capabilities during her pregnancy were indefinite in duration and "placed AirTran in the impossible position of indefinitely insuring that there was always another employee present with Plaintiff whenever the situation arose requiring her to lift more than 30 pounds." (Doc. 33 at 19.) Such a burden, according to AirTran, could "jeopardize the Company's ability to effectively and safely maintain its operations." (Doc. 33 at 19.)The court finds that AirTran's explanation satisfies its "exceedingly light" burden of producing a legitimate, nondiscriminatory reason for its actions. AirTran's explanation is legitimate and nondiscriminatory because AirTran, as a commercial airline, is in the business of safely transporting customers and their luggage. In order to meet its business obligations, AirTran must be able to lift the luggage [*30] of its passengers so that it may effectively screen and transport the luggage. AirTran hires customer service agents to perform these lifting duties. The customer service agents are required to have the ability to lift up to seventy pounds on a repetitive basis. This requirement is stated in the job description of a customer service agent. When a customer service agent, like McQueen, presents a physician's note to AirTran recommending that she not lift more than thirty pounds, AirTran is placed in a difficult situation. If AirTran accommodates McQueen, AirTran's business operations are jeopardized. If AirTran places McQueen on leave, it subjects itself to lawsuits such as this one. A finding in favor of McQueen might deter AirTran from hiring women of childbearing age in order to avoid this "catch-22." Such a ruling would not bode well for public policy. By placing McQueen on leave, AirTran not only assured McQueen's safety, but it also assured the safe and efficient functioning of its own operations. As previously discussed, McQueen has supplied no evidence that AirTran's treatment of her was discriminatory. Thus, the court finds that AirTran has met its light burden of producing [*31] a legitimate, nondiscriminatory reason for its actions. As a result, the court will now consider whether McQueen has produced sufficient evidence of pretext.

**McDonnell Douglas Step Three: Pretext**"Once a defendant offers a legitimate, nondiscriminatory reason for its actions, the plaintiff must attack that reason 'head on and rebut if so as to show that the reason is really pretext for discrimination." *Sermons, 227 F. Supp. 2d at 1381* (quoting *Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)*). Pretext can be established by evidence which "cast[s] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Cooper-Houston v. Southern Ry., 37 F.3d 603, 605 (11th Cir. 1994)*. Stated differently, "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves, 530 U.S. at 143* (quoting *Burdine, 450 U.S. at 256*). [*32] The proffered explanation is unworthy of credence if the plaintiff demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder" could disbelieve it. *Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir. 1997)* (quoting *Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996))* (citation and internal quotation marks omitted). In order to prove pretext, the plaintiff may offer "direct evidence of discrimination in the form of statements and admissions or by circumstantial evidence in the form of comparative or statistical evidence." *Woody v. St. Clair County Comm'n, 885 F.2d 1557, 1560 (11th Cir. 1989)* (citing *Miles v. M.N.C. Corp., 750 F.2d 867, 870 (11th Cir. 1985))*. The plaintiff may also establish pretext by showing that AirTran did not rely on the proffered explanations for its actions. See *Israel v. Sonic-Montgomery FLM, Inc., 231 F. Supp. 2d 1156, 1162 (M.D. Ala. 2002)* (citing *Chapman, 229 F.3d at 1024*). [*33] Here, McQueen has failed to prove, by a preponderance of the evidence, that AirTran's explanation for placing McQueen on leave was merely a pretext for discriminating against her. McQueen's response to AirTran's motion for summary judgment contains only four sentences which specifically address the issue of pretext, all of them conclusory. The four sentences essentially argue only one point: that Bethany Purvis's affidavit and testimony prove that AirTran's reasons for its actions were pretextual. However, the response fails to explain to the court *how* Purvis's affidavit and testimony prove pretext. In fact, nothing from Purvis's affidavit or deposition proves pretext on AirTran's part.Indeed, other evidence suggests that AirTran's reasons for its actions were not pretextual. AirTran never terminated McQueen; rather, it held her position open for over ten months after placing her on leave. Upon McQueen's request to return and after receiving clearance from McQueen's physician, AirTran immediately restored McQueen to the position, level of pay, and seniority status that she had held thirty days following the commencement of her leave. The evidence clearly indicates that AirTran [*34] accommodated pregnant employees in the past. In addition, AirTran permitted pregnant employees, including McQueen herself during a previous pregnancy, to continue working as cus-

tomer service agents during their pregnancies. Only when McQueen presented a doctor's note which effectively rendered McQueen unqualified for her job did AirTran require McQueen to take leave. AirTran's concerns for its operations and for the health and safety of McQueen were reasonable. "[A] plaintiff may not establish that an employer's proffered reason is pretextual [when] the reason is one that might motivate a reasonable employer." *Combs, 106 F.3d at 1543.* Because McQueen has not offered any direct or circumstantial evidence of pretext and because no such evidence can be reasonably inferred from the record, McQueen has failed to establish that AirTran's actions toward her were anything but legitimate and nondiscriminatory.**III. CONCLUSION**The plaintiff has not established a prima facie case of disparate treatment under the PDA. The plaintiff has not shown that the legitimate and nondiscriminatory reasons articulated by AirTran were pretextual. Accordingly, Defendants' Motion [*35] for Summary Judgment (Doc. 32) is granted. The clerk shall enter judgment dismissing the plaintiff's claims with prejudice. The clerk shall close the file.

Ordered on December 29, 2005./s/ Richard SmoakRichard SmoakUnited States District Judge**JUDGMENT**This action came before the Court with the Honorable Richard Smoak presiding. The issues have been tried or heard and a decision has been rendered. Case is dismissed with prejudice.

December 30, 2005
DATE