## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICOLE VILLANUEVA,                 :

                     :   CA No. 04-258-JJF

         Plaintiff,          :

                     :

        v.                 :

                     :

CHRISTIANA CARE HEALTH SERVICES, INC.   :

                     :

        Defendant.        :

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT CHRISTIANA CARE HEALTH SERVICES INC.'S MOTION FOR SUMMARY JUDGMENT

MORRIS, JAMES, HITCHENS & WILLIAMS LLP
David H. Williams (#616)
222 Delaware Ave., 10th Floor
Wilmington, DE 19806
(302)888-6900
*DWilliams@morrisjames.com*
Attorneys for Defendant Christiana Care
Health Services, Inc.

OF COUNSEL

MORGAN, LEWIS & BOCKIUS LLP
Michael J. Ossip (admitted pro hac vice)
Thomas S. Bloom (admitted pro hac vice)
1701 Market Street
Philadelphia, PA 19103
(215)963-5543

DATED:     July 20, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................ii

I.    INTRODUCTION ........................................................................1

II.   ARGUMENT ..............................................................................1

    A.    There Is No "Direct Evidence" Of Discrimination.....................................1

    B.    There Is No Evidence That Ms. McCloud's Decision to
          Terminate Plaintiff's Employment Was Based on
          Pregnancy Discrimination.............................................................4

          1.    Plaintiff Cannot Establish a *Prima Facie* Case Because,
                Unlike Her Purported Comparators, There Was No
                Available Unit Clerk Work Available In Her Department..............4

          2.    Plaintiff Cannot Establish a *Prima Facie* Case Because She
                Was Not Qualified to Work As A Unit Clerk During April
                2003...................................................................................8

          3.    There Is No Evidence That Ms. McCloud's Stated Reasons
                For Terminating Plaintiff's Employment Were Pretextual.............9

                (a)    There Is No Evidence That The Employee Health
                      Department's Stated Reasons For Continuing
                      Plaintiff's Sedentary Work Restriction Was A
                      Pretext for Discrimination........................................10

                (b)    Plaintiff's Hearsay Testimony Regarding Kealey
                      Barnes Is Inadmissible And Substantively
                      Insufficient to Create A Triable Issue Of Pretext ................15

III.  CONCLUSION...........................................................................17

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                  **<u>Page</u>**

<u>Connors v. Chrysler Financial Corp.</u>,
    160 F.3d 971 (3d Cir. 1998)............................................................................2

<u>Edwards v. Schlumberger-Well Services</u>,
    984 F. Supp. 264 (D.N.J. 1997) ..................................................................5

<u>Fuentes v. Perskie</u>,
    32 F.3d 759 (3d Cir. 1994).................................................................11, 15

<u>Holt Cargo Sys., Inc. v. Delaware River Port Auth'y</u>,
    20 F. Supp. 2d 803 (E.D. Pa. 1998) ...........................................................5

<u>Randle v. LaSalle Telecomm., Inc.</u>,
    876 F.2d 563 (7th Cir. 1989) .......................................................................5

<u>Riding v. Kaufmann's Dept. Store</u>,
    220 F. Supp. 2d 442 (W.D. Pa. 2002)........................................................2

<u>Spivey v. Beverly Enterprises, Inc.</u>,
    196 F.3d 1309 (11th Cir. 1999) ..................................................................7

<u>Taylor v. Procter & Gamble Dover Wipes</u>,
    184 F. Supp. 2d 402 (D. Del. 2002)...........................................................2

<u>Thomas v. Ethicon</u>,
    1994 WL 171345 (E.D. Pa.),
    64 Fair Empl. Prac. Case (BNA) 1562 ................................................5, 11

<u>Urbano v. Continental Airlines, Inc.</u>,
    138 F.3d 204 (5th Cir. 1998) .......................................................................7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NICOLE VILLANUEVA, | : | |
| | : | CA No. 04-258-JJF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTIANA CARE HEALTH SERVICES, INC. | : | |
| | : | |
| Defendant. | : | |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT CHRISTIANA CARE
HEALTH SERVICES INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendant Christiana Care Health Services, Inc. ("Christiana Care"), hereby submits this reply brief in further support of its Motion for Summary Judgment.

## I.    INTRODUCTION

Plaintiff's brief in opposition to summary judgment offers no competent, admissible evidence under Rule 56 standards that is capable of establishing a claim of pregnancy discrimination.    Instead, Plaintiff attempts to create the appearance of a triable issue of discrimination by offering speculation and hearsay, and by making assertions of "fact" that are unsupported by any record evidence and are, in many instances, flatly contradicted by the evidence and Plaintiff's own admissions.

## II.    ARGUMENT

### A.    There Is No "Direct Evidence" of Discrimination.

As Christiana Care showed in its initial Memorandum of Law, the record evidence is legally insufficient to make out a *prima facie* case of pregnancy discrimination or pretext. Plaintiff's counsel attempts to side-step this problem by conjuring so-called "direct evidence" of discriminatory animus.    However, Plaintiff's purported evidence does not remotely satisfy the

1

Third Circuit's direct evidence standard, and it is no doubt for this reason that Plaintiff's brief omits any citation to or discussion of the applicable Third Circuit standard.

A plaintiff seeking to prove her case by direct evidence in the Third Circuit "faces a high hurdle" and, "[t]o succeed, the direct evidence must be so revealing of discriminatory animus that it is not necessary to rely on any presumption." Connors v. Chrysler Financial Corp., 160 F.3d 971, 976 (3d Cir. 1998) (affirming grant of summary judgment).

> Direct evidence of discrimination would be evidence which, if believed, would prove the existence of the fact in issue without inference or presumption. However, evidence is not direct where the trier of fact must infer the discrimination from an employer's remarks. That is, direct evidence is overt or explicit evidence which directly reflects a discriminatory bias by a decision maker.

Riding v. Kaufmann's Dept. Store, 220 F. Supp. 442, 448 (W.D. Pa. 2002) (citations omitted) (granting summary judgment). See also Taylor v. Procter & Gamble Dover Wipes, 184 F. Supp. 2d 402, 423 (D. Del. 2002) ("only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence").

Here, Plaintiff's purported direct evidence consists of nothing more than her own uncorroborated allegation that Ms. Delgado (currently on maternity leave) told Plaintiff that "Delaware is an at-will state" and that Ms. Collins told Plaintiff she "picked a poor time to get pregnant." P. Opp. at 16-17.[1] With respect to Ms. Delgado, there is no evidence that she was a decision maker with respect to Plaintiff's employment. During the two years during which this case has been pending Plaintiff has never contended that Ms. Delgado was a decision maker and, tellingly, Plaintiff has never sought to take Ms. Delgado's deposition. In any event, the comment Plaintiff seeks to attribute to Ms. Delgado – that "Delaware is an at-will state" – is not "overt or

---

[1] References to Plaintiff's brief are designated " P. Opp. At ___".

explicit evidence which directly reflects a discriminatory bias" based on pregnancy. Indeed, the alleged comment is not suggestive of anti-pregnancy animus at all.

Similarly, the remark Plaintiff seeks to attribute to Ms. Collins – that Plaintiff "picked a poor time to get pregnant" – is not suggestive of discriminatory bias given Plaintiff's description of the context in which the remark allegedly occurred. According to Plaintiff, Ms. Collins made the remark in the following context:  After Ms. Collins informed Plaintiff that she would not overrule Nurse Goldstein's decision to maintain Plaintiff's sedentary duty restriction, Plaintiff stated that this put her in a "terrible position" and asked Ms. Collins "What are you expecting me to do?," to which Ms. Collins allegedly responded by saying "I don't know what to tell you. You picked a poor time to get pregnant." P. Opp. at 16-17.  As reflected in footnote 8 on page 17 of Plaintiff's brief, Plaintiff's "terrible position" refers to the fact that she was not yet eligible for a medical leave of absence.  (See also Villanueva Dep. 5:1 at A-3).  When viewed in the context testified to by Plaintiff, the alleged comment does not suggest that Plaintiff's status as a pregnant person played any role in Ms. Collins' refusal to overrule Nurse Goldstein's decision. Rather, the alleged remark (assuming it was made) simply reflects the undeniable fact that Plaintiff, knowing she had a history of pregnancy-induced medical problems that limited her activity, made a conscious decision to become pregnant via in vitro fertilization six months before she would become eligible for a medical leave.  (Villanueva Dep. 55:6-21 at A-16).  Ms. Collins' alleged comment might be viewed as lacking in tact or even as insensitive, but it cannot support an inference that Ms. Collins' refusal to overrule Nurse Goldstein was motivated by discrimination, and it certainly does not constitute "overt or explicit evidence which directly reflects a discriminatory bias."

In short, Plaintiff's purported "direct evidence" could not reasonably support an inference of discrimination, let alone constitute the type of non-inferential, explicit evidence required under the Third Circuit's direct evidence standard. The fact that Plaintiff would even attempt to invoke the direct evidence standard, on this thin record, speaks volumes about her inability to establish a *prima facie* case of pregnancy discrimination.

### B.    There Is No Evidence That Ms. McCloud's Decision to Terminate Plaintiff's Employment Was Based on Pregnancy Discrimination.

As shown in Christiana Care's initial Memorandum of Law, Plaintiff cannot make out a *prima facie* case of pregnancy discrimination because: (1) there is no evidence that Christiana Care ever provided the benefit demanded by Plaintiff to any similarly situated non-pregnant employee; and (2) Plaintiff was not qualified to work as a unit clerk. Even if Plaintiff could establish a *prima facie* case, there is no evidence from which a jury could reasonably conclude that Ms. McCloud's stated reason for terminating Plaintiff's employment was a pretext for discrimination.

#### 1.    Plaintiff Cannot Establish a *Prima Facie* Case Because, Unlike Her Purported Comparators, There Was No Available Unit Clerk Work Available In Her Department.

Plaintiff's brief asserts, falsely, that there was one unit clerk position available in her department at the time she was restricted to sedentary duty. This assertion is essential to Plaintiff's claim because, unless there is evidence of available unit clerk work within her department, she cannot show that she was similarly situated with any valid comparator. Plaintiff's purported evidence of this phantom unit clerk position is: (1) Plaintiff's hearsay testimony that a recruiter told her that such a position existed; and (2) Plaintiff's testimony that she "sat as a unit clerk" for a few minutes while Ms. Dye went to ask Ms. McCloud what she

should do regarding Plaintiff's sedentary duty restriction. The cited testimony is insufficient to create a genuine dispute of fact.

First, Plaintiff relies on her own hearsay testimony that a recruiter named Kealey Barnes told her that there was a unit clerk position available on the 5D Unit. P. Opp. at 19 (citing Villanueva Dep. 10:7 at A-5). However, as Plaintiff testified in her deposition, Christiana Care lists all open positions on its intranet. (Villanueva Dep. 10:12-23 at A-5). The discovery record contains a printout showing every unit clerk position that was available during the relevant time period, regardless of location. (Unit Clerk Job Chart at A-147). Those records show that there were nine open unit clerk positions and that none of those positions were in Plaintiff's department or in 5D. Id.; (McCloud Dep. 38:20 – 39:13 at A-48). Moreover, Plaintiff testified that she checked the website at the time and she does not remember whether there were any unit clerk positions in her department. (Villanueva Dep. 10:22-23 at A-5). Plaintiff had every opportunity during discovery to attempt to adduce evidence of whether there were any positions not reflected in the computer records, including taking the deposition of Kealey Barnes. Having failed to do so, however, Plaintiff cannot create an issue of fact as to the existence of a job by citing her own hearsay testimony about something Kealey Barnes may have told her. Holt Cargo Sys., Inc. v. Delaware River Port Auth'y, 20 F. Supp. 2d 803, 839 (E.D. Pa. 1998) (refusing to consider hearsay testimony on summary judgment because "the adverse party is required to submit materials as would be admissible in evidence").[2]

_____

[2] See also Randle v. LaSalle Telecomm., Inc., 876 F.2d 563, 570 n.4 (7th Cir. 1989) (in ruling on a motion for summary judgment, federal courts "are unable to consider hearsay statements that are not otherwise admissible at trial"); Edwards v. Schlumberger-Well Services, 984 F. Supp. 264, 275 (D.N.J. 1997) ("[plaintiff]'s testimony about what [defendant's personnel manager] told her would be inadmissible double hearsay. This Court will not consider such inadmissible evidence on this motion for summary judgment."); Thomas v. Ethicon, Inc., 1994 WL 171345 at *6 (E.D. Pa. 1994) ("Plaintiff's testimony alone is inadmissible hearsay and cannot defeat a motion for summary judgment") (attached).

Second, Plaintiff cites her own testimony that she "sat as a unit clerk" for a few minutes one day. Plaintiff's brief characterizes her testimony as follows:

> Villanueva was permitted to work as a Unit Clerk in the afternoon on the day that she informed Christiana Care that she had a doctor's note for modified duty. Obviously, there was a need in the department or Christiana would not have allowed her to work as a Unit Clerk for that day.

P. Opp. at 20 (citing Villanueva Dep. 4:12 at A-3). The cited testimony does not support counsel's assertion. Plaintiff merely testified that, when she presented her sedentary duty note to Ms. Dye, she "sat as a unit clerk while [Ms. Dye] went up to speak to Karen McCloud [and then] she came back down and said that she spoke to Karen and that they didn't think they could do it." (Villanueva Dep. 4:12-17 at A-3). Plaintiff's testimony that she "sat as a unit clerk" for a few minutes while Ms. Dye went to speak with Ms. McCloud is not evidence that the department had an available unit clerk position or available unit clerk shifts. Indeed, Plaintiff's counsel questioned Ms. Dye about this issue at length and Ms. Dye, like Plaintiff, testified that she simply told Plaintiff to sit down while she went to ask Ms. McCloud what to do:

> Q: Going back to when you received the note . . . did you place Miss Villanueva on desk duty after receiving the note?
>
> A: Till I figured out what to do with her, til I asked questions.
>
> Q: So yes?
>
> A: And got some answers, *because I didn't want to let her work*, because I was afraid she would injure herself or harm the baby.
>
> Q: What desk duty did you have her doing?
>
> A: She pretty much sat and answered the phones a little bit.
>
> Q: Was that like a sedentary position?

> A:  *It was having her sit down.  I mean, I didn't have a position to put her in.  I just couldn't let her function* until I found out what to do with her.

> Q:  Is it fair to say that you temporarily placed her in a sedentary position?  [objection]

> A:  I did not allow her to function as a PCT until I found out what to do with her.  *Once again, I don't have a sedentary position to place her in.  I just had her sit down.*

(Dye Dep. 36:14 – 37:14 at A-61) (emphasis added).

There is simply no admissible evidence from which a jury could conclude that Plaintiff's department had an available unit clerk position or available unit clerk shifts.  Plaintiff is therefore not similarly situated with Kathryn Ross or Laura Crosby, both of whom applied for and obtained unit clerk positions that were vacant at the time.  (McCloud Dep. 16:15-23 at A-42; 18:3 – 22:2 at A-43, A-44).[3]

With respect to Diana Stewart, Plaintiff's brief states that "Ms McCloud admitted that there was not an open Unit Clerk position in 5D when she allowed Stewart, one of Villanueva's comparators, to work as a Unit Clerk."  P. Opp. at 19.  Ms. McCloud did not so testify.  There is no record evidence that Ms. Stewart worked at all during the one week she was restricted to sedentary duty.  The only witness who testified on this issue is Ms. McCloud, who testified that she does not remember whether Ms. Stewart worked during that week.  (McCloud Dep. 42:23 – 43:2 at A-49).  Ms. McCloud further testified that "*if* she worked during that week at all, and I'm not sure she did," Ms. Stewart could have worked as a unit clerk because "I had a need at that

---

[3]  Laura Crosby is also not a valid comparator because her restrictions were the result of a workplace occupational injury.  (McCloud Dep. 16:15-23 at A-42).  Plaintiff alludes to this issue in her brief.  P. Opp. at 22.  Under the PDA, pregnant women are not similarly situated with employees who suffer occupational injuries.  Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309, 1313 (11th Cir. 1999) (under the PDA, "[t]he correct comparison is between Appellant and other employees who suffer non-occupational disabilities, not between Appellant and employees who are injured on the job"); Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206-07 (5th Cir. 1998) (same).

time because I had two full-time unit clerks out on surgical leave of absence . . . I had holes in my schedule." (McCloud Dep. 27:19-21 at A-45; 36:22 – 37:2 at A-47) (emphasis added). Thus, Ms. Stewart is not a valid comparator for at least two reasons: (1) there is no evidence that she actually worked during the week she had a medical restriction; and (2) even assuming arguendo that Ms. Stewart worked during that week, it would have been because her department had two full-time unit clerks out on medical leave which created available shifts in the department's schedule, which is a circumstance that did not exist during the time period relevant to Plaintiff's claim.

Finally, Plaintiff asserts that there is evidence that "Unit Clerks are 'borrowed' from other floors to assist in different areas of the hospital on occasion." P. Opp. at 19. That may be, but there is no evidence of any similarly situated employee who was "borrowed" because of a medical restriction. Nor is there any evidence that any area of the hospital needed to borrow a unit clerk during the time period at issue in this case. Indeed, other than Ms. McCloud's statement that such "borrowing" occasionally occurs, there is no evidence in the record of any employee who was borrowed to work as a unit clerk or the circumstances in which it occurred. Plaintiff chose not to pursue any discovery regarding the borrowing of unit clerks and, accordingly, the summary judgment record is devoid of any evidence to support a claim that Plaintiff would have or could have been "borrowed" but for her pregnancy.

In short, Plaintiff has failed to adduce sufficient evidence to establish a *prima facie* case because, unlike Plaintiff's purported comparators, there were no unit clerk shifts available in Plaintiff's department at the time of her sedentary duty restriction.

    2.    Plaintiff Cannot Establish a *Prima Facie* Case Because She Was Not Qualified to Work As A Unit Clerk During April 2003.

Christiana Care showed in its initial Memorandum of Law that Plaintiff was not qualified to work as a unit clerk because that position entails a substantial amount of walking, which was incompatible with Plaintiff's sedentary duty restriction. Def. Mem. at 19-21. In her opposition brief, Plaintiff contends that other employees were able to work as unit clerks despite "serious physical limitations (i.e., shoulder and arm pain, recent surgery, serious car accidents etc)." P. Opp. at 22. However, unlike these other unnamed employees, Plaintiff suffered from a heart condition which, according to her own doctor, was exacerbated by "walk[ing] up and down the hallway" and even when "lying down." (Goldenberg Dep. 16:17-20 at A-72; Apr. 8, 2003 Medical Records at A-87 – A-88). Accordingly, Plaintiff was not qualified to work as a unit clerk while restricted to sedentary duty.

      3.     There Is No Evidence That Ms. McCloud's
                 Stated Reasons For Terminating Plaintiff's
                 Employment Were Pretextual.

As Christiana Care showed in its initial Memorandum of Law, Ms. McCloud removed Plaintiff from payroll because, pursuant to Christiana Care's written policy, "an employee [who] is absent from work for 14 days (two weeks) [] must either return to work or be placed on a FMLA qualifying Leave of Absence. If the [employee] has not been employed for 6 months, they would be removed from payroll and coded as 'ineligible for LOA.'" (Employee Relations Practices Handbook at A-128). Ms. McCloud testified that she could not move Plaintiff to a unit clerk position because she did not have any available unit clerk work in her department and she had no ability to appoint Plaintiff to a position in a different department. (McCloud Dep. 38:12 – 39:13 at A-48).

Plaintiff seeks to create a triable issue of pretext in two ways. First, Plaintiff contends that EHS's decision to maintain her sedentary duty restriction was a pretext for discrimination (despite the undisputed fact that Plaintiff insisted at the time that the restriction was medically

necessary).  Second, Plaintiff contends that Ms. McCloud's stated reason for the termination decision was pretextual because Kealey Barnes allegedly told Plaintiff that there was an open unit clerk position within the department but that she would need to "apply" for the position as opposed to "bid" for the position.  P. Opp. at 20.  Neither of these arguments has any merit.

> (a)    There Is No Evidence That The Employee Health Department's Stated Reasons For Continuing Plaintiff's Sedentary Work Restriction Was A Pretext for Discrimination.

Christiana Care has articulated legitimate, non-discriminatory reasons for EHS's decision to maintain Plaintiff's sedentary duty restriction.  Indeed, it is undisputed that Plaintiff herself insisted at the time that her sedentary duty restriction was medically necessary and legally binding on Christiana Care.  Plaintiff consistently maintained that position throughout her employment at Christiana Care.  Now, in this lawsuit, Plaintiff takes the opposite position and claims that EHS should have cleared her to work full duty and that its failure to do so was discriminatory.  The record evidence is legally insufficient to support an inference that EHS restricted Plaintiff to sedentary duty for discriminatory reasons.

Nurse Goldstein made the initial decision to restrict Plaintiff to sedentary duty based on Dr. Goldenberg's April 8, 2003 note.  (Apr. 9, 2003 EHS Referral at A-90).  Plaintiff emphatically agreed with that decision.  Plaintiff admitted in her deposition that she told her supervisors that the sedentary duty restrictions were her "doctor's orders" and she insisted that Christiana Care was "legally obligated to follow [those] doctor's orders."  (Villanueva Dep. 29:11-15 at A-9).  After Plaintiff learned that her department had no available sedentary work for her to perform, Plaintiff procured an April 10 note from Dr. Goldenberg, which contradicted his April 8 note.  The April 10 note purported to clear Plaintiff to return to work full duty.  (Apr. 10, 2003 Goldenberg Note at A-92).  However, neither Plaintiff nor the April 10 note offered any

explanation about the discrepancy or about what, if anything, had changed between April 8 and April 10. Moreover, as noted in Nurse Goldstein's contemporaneous medical records, Plaintiff explicitly stated that she was attempting to return to work full duty "against medical advice." (Apr. 15, 2003 EHS Referral at A-93). In light of the unexplained contradictions between the April 8 and April 10 notes and Plaintiff's own statements that the second note was a farce and contrary to her doctor's medical advice, Nurse Goldstein properly declined to lift Plaintiff's sedentary duty restriction.

Shortly thereafter, Plaintiff called the Director of EHS, Ms. Collins, and insisted that she overrule Nurse Goldstein's decision. (See Villanueva Dep. 6:12-22 at A-4). Ms. Collins declined to overrule Nurse Goldstein's decision at that time because Plaintiff admitted that she "limited her activity at home, she would only go up and down the stairs once a day to avoid exertion that would trigger these heart rates, and that she had had a similar problem with her previous pregnancy and had worked in a light duty or in a sedentary capacity during that pregnancy." (Collins Dep. 19:16 – 20:3 at A-32.). Ms. Collins also contacted Dr. Goldenberg to confirm that the decision was sound. Although Dr. Goldenberg hypothesized that Plaintiff "might be able to pace herself at work," he did not suggest that Plaintiff could work full duty. (Collins Dep. 31:7-19 at A-35; June 24, 2003 Collins Memo at A-97). Indeed, Dr. Goldenberg testified in his deposition that Plaintiff "was not capable of doing what she was doing before" and that her symptoms were actually more severe than they had been during her previous pregnancy. (Goldenberg Dep. 44:12, 37:11 – 38:15, at A-77 – A-88).

To create a triable issue of pretext, Plaintiff must adduce admissible evidence that Christiana Care's stated reasons for its decision are sufficiently weak or implausible such that a jury could reasonably conclude that they were not the true reasons and that the decision was

likely motivated by discrimination. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765. (3d Cir. 1994). Plaintiff's belief that Nurse Goldstein and Ms. Collins made the wrong decision is immaterial, because the only issue is whether their decision was motivated by anti-pregnancy animus, not whether they made the best decision or even a good decision. <u>Id.</u> ("the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent").

Here, there is no allegation, let alone any evidence, that Nurse Goldstein was motivated by discriminatory animus. Nor is there any evidence that the explanation of Nurse Goldstein's decision is weak or implausible. Nevertheless, Plaintiff apparently contends that a jury could infer that Ms. Collins' refusal to overrule Nurse Goldstein's decision was pretextual based on the following "facts": (1) Dr. Goldenberg's April 8 sedentary duty note was merely a "suggestion"; (2) Ms. Collins did not have a complete understanding of Plaintiff's medical condition and history; and (3) Ms. Collins declined to overrule Nurse Goldstein's decision prior to speaking with Dr. Goldenberg. None of these arguments has any merit.

First, Plaintiff asserts that Dr. Goldenberg's April 8 sedentary duty note was merely a "suggestion" and that Christiana Care should have cleared her to return to work full duty based on Dr. Goldenberg's April 10 note. Thus, according to Plaintiff, Christiana Care should have relied on the April 10 note as being more accurate than the April 8 note. However, that is the <u>opposite</u> of what Plaintiff told Christiana Care at the time the events occurred. The undisputed evidence is that Plaintiff told several Christiana Care representatives that the April 8 sedentary duty note constituted her "doctor's orders" and that the April 10 note was a sham designed to permit her to return to work "against medical advice." (Villanueva Dep. 29:12-15 at A-9; Apr.

15, 2003 EHS Referral Note at A-93). Indeed, Plaintiff freely admitted in her deposition that she insisted to her supervisor, Ms. Dye, that her initial sedentary duty restriction was her "doctor's orders" and that Christiana Care was "legally obligated" to follow those orders:

> I kind of got a little irritated. I said, "Wait a minute. This is a note from my doctor. Aren't you legally obligated to follow doctor's orders?"

(Villanueva Dep. 29:12-15 at A-9). After Plaintiff learned that there was no clerical work available in her department, Plaintiff told Ms. Dye and Ms. Delgado, "Well, I'll go back to the doctor, have him write me my note to come back full-duty." (Villanueva Dep. 5:4-6 at A-3). When Ms. Delgado asked, "wouldn't that be lying," Plaintiff essentially admitted that it would be lying but that she was in a "Catch-22." (Villanueva Dep. 5:4-11 at A-3). When Plaintiff returned with the April 10 note from Dr. Goldenberg contradicting his April 8 note, Plaintiff explicitly told Nurse Goldstein that she was attempting to return to work full duty "against medical advice." (Apr. 15, 2003 EHS Referral at A-93).[4] Plaintiff made precisely the same comment to Ms. Collins. (Collins Dep. 31:10-11 at A-35). Thus, by Plaintiff's own admissions, she agreed with the initial sedentary duty restriction and she insisted that Christiana Care was "legally obligated" to honor the restriction by giving her a sedentary position. When Plaintiff later presented Nurse Goldstein with the second note, Plaintiff could not have been more clear that she was acting "against medical advice" and that the second note was a sham. In light of the foregoing undisputed evidence, a jury could not rationally conclude that the stated bases of Nurse Goldstein's and Ms. Collins' decisions were weak, implausible or otherwise pretextual.

---

[4]    Plaintiff's statements as reflected in Nurse Goldstein's medical records are admissible as admissions of a party opponent under F.R.E. 801(d)(2), and as statements made for purpose of medical diagnosis under F.R.E. 803(4), and as business records under F.R.E. 803(6).

Second, Plaintiff asserts that Ms. Collins "did not have an accurate understanding" of Plaintiff's medical history and condition. P. Opp. at 11, 25. This argument misses the mark in several respects. As an initial matter, even if it were true that Ms. Collins had an inaccurate understanding of Plaintiff's condition and made an incorrect decision, that is irrelevant under Fuentes and its progeny. Moreover, Christiana Care's understanding of Plaintiff's condition was largely based on *Plaintiff's* repeated and emphatic statements that she was trying to return to work "against medical advice" and contrary to her "doctor's orders." Ms. Collins also considered Dr. Goldenberg's hypothesis that Plaintiff "might be able to pace herself at work." (Collins Dep. 31:6-16 at A-35; June 24, 2003 Collins Memo at A-97). However, Dr. Goldenberg did not express any disagreement with Ms. Collins' conclusion that, given the physical demands of Plaintiff's job, "pacing yourself" is unrealistic and incompatible with working full duty. (Collins Dep. 31:6-19 at A-35).[5] In any event, there was nothing unreasonable or implausible about EHS's decision to err on the side of caution and maintain Plaintiff's sedentary restriction, particularly in light of Plaintiff's vocal protests that she was acting contrary to her doctor's medical advice.

Finally, Plaintiff contends that a jury could infer pretext based on the fact that Ms. Collins did not speak to Dr. Goldenberg until after she told Plaintiff that she would not overrule Nurse Goldstein's decision. That makes no sense. If anything, the fact that Ms. Collins

---

[5]    Plaintiff's brief asserts that "Collins testified that after speaking with Dr. Goldenberg, he did *not* change his opinion that Villanueva was capable of working regular duty." P. Opp. at 11 (emphasis in original) (citing Collins 31:6 at A-35). It is clear from just a cursory reading of the cited page of the transcript that Ms. Collins did not so testify. In addition, Plaintiff's suggestion that Christiana Care should have conducted an independent medical examination of her is belied by Dr. Goldenberg's testimony that "90%" of his diagnosis was based on his conversations with Plaintiff and her self-reported symptoms and medical history. (Goldenberg Dep. 23:7-13 at A-74). That is precisely the same basis on which EHS made its decisions. Notably, Dr. Goldenberg also testified that he did not examine or even speak to Plaintiff when he wrote his April 10 note contradicting his April 8 note. (Goldenberg Dep. 13:19-22 at A-80).

continued to investigate Plaintiff's claimed ability to work, even after she had informed Plaintiff that she would not overrule Nurse Goldstein's decision, contradicts Plaintiff's claim that Ms. Collins' decision was based on a pretext for discrimination.

> (b)    Plaintiff's Hearsay Testimony Regarding Kealey Barnes Is Inadmissible And Substantively Insufficient to Create A Triable Issue Of Pretext.

Plaintiff contends that a jury could reasonably conclude that the termination of her employment was pretextual based on her hearsay testimony that: (1) Kealey Barnes allegedly told Plaintiff that there was an open unit clerk in the 5D Unit; and (2) Kealey Barnes allegedly told Plaintiff that she would need to "apply" for the position rather than "bid" for the position. P. Opp. at 20. Plaintiff is wrong.

As noted above, Plaintiff's testimony regarding hearsay statements by Kealey Barnes is not admissible evidence regarding the existence of a position. The record contains a computer printout of every open unit clerk position during the relevant time period and none of those positions were in Plaintiff's department (or in 5D). (Unit Clerk Job Chart at A-147). Having failed to conduct any discovery regarding the authenticity or completeness of Christiana Care's computer records, Plaintiff cannot create an issue of fact by seeking to contradict those records with hearsay testimony about a phantom position that Kealey Barnes allegedly mentioned to her. See footnote 1, supra, and accompanying text. Moreover, even if there were competent evidence that such a position existed (there is not), that would not be probative of whether Ms. McCloud's termination decision was pretextual. To create a triable issue of pretext under Fuentes and its progeny, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Absent

evidence that Ms. McCloud knew or had reason to know that there was a unit clerk position other than those reflected in the computer system (there is no such evidence), Plaintiff's testimony regarding her conversation with Kealey Barnes would, even if admissible, merely raise a question as to whether Ms. McCloud made a mistake, not whether she was motivated by discriminatory animus.

Similarly unavailing is Plaintiff's assertion that Kealey Barnes told her that she would need to "apply" for a position rather than "bid" internally for a position. Assuming arguendo that such hearsay testimony is admissible at summary judgment (it is not), there is no record evidence that there is any difference between "bidding" and "applying" for a job at Christiana Care. Even if there were a difference, Plaintiff's assertion is belied by her own testimony that she was specifically directed to an *internal* recruiter in order to identify an available position. (Villanueva Dep. 8:7-9 at A-4; Dye Dep. 39:16-17 at A-62). Plaintiff admitted that she did not even attempt to apply for a new position a Christiana Care. (Villanueva Dep. 8:7-12; 12:3-15 at A-4, A-5). Moreover, apart from Plaintiff's speculation that the process would take too long, there is no record evidence of any impediment that would have prevented Plaintiff from quickly obtaining a new position if she had applied for one. Indeed, Plaintiff has not conducted any discovery on this issue at all. Nor has Plaintiff ever accused Kealey Barnes of discrimination or sought to take her deposition. Accordingly, there is no record evidence that could justify Plaintiff's complete failure to apply for an open position.

## III.    CONCLUSION

For the reasons set forth above and in Christiana Care's initial Memorandum of Law, there are no genuine disputes of material fact and the Court should grant summary judgment.

Respectfully submitted,

*David H. Williams by James H. McMackin III (#4284)*
David H. Williams (#616)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Ave., 10th Floor
Wilmington, DE  19899
302.888.6900

DWilliams¶morrisjames.com
Michael J. Ossip (admitted pro hac vice)
Thomas S. Bloom (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5543

Attorneys for Defendant Christiana Care
Dated:  July 20, 2006                      Health Services, Inc.

17

Westlaw.

Not Reported in F.Supp.                                                                                          Page 1
Not Reported in F.Supp., 1994 WL 171345 (E.D.Pa.), 64 Fair Empl.Prac.Cas. (BNA) 1562
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents

United States District Court,E.D. Pennsylvania.
Herman **THOMAS** and Andrea **Thomas**
v.
**ETHICON**, INC. and Johnson & Johnson.
**No. CIV. A. 93-3836.**

May 5, 1994.

MEMORANDUM

NEWCOMER.
**\*1** Presently before the Court is defendants' Motion for Summary Judgment and plaintiffs' response thereto. For the reasons that follow, the motion will be granted and judgment will be entered in favor of defendants and against plaintiffs.

I. Background

Plaintiffs filed an Amended Complaint in this action in January, 1994 alleging that defendants discriminated against plaintiff Herman Thomas ("Thomas") with respect to his employment on account of his race in violation of Title VII of the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000e, *et seq.* (Count I), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (Count II), and on account of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b) (Count III). Plaintiffs further allege that defendants violated the Employee Retirement Income Security Act, 29 U.S.C. § 1140, *et seq.*, by discharging Thomas in retaliation for his utilization of employment benefits (Count IV). Additionally, plaintiffs set forth common law claims for intentional infliction of emotional distress (Count V), breach of contract (Count VI) and breach of duty of good faith and fair dealing (Count VII). Finally, Andrea Thomas set forth a loss of consortium claim (Count VIII) FN1

Defendants now move for summary judgment on all counts of the Amended Complaint. Plaintiffs concede that the pendant state law claims should be dismissed; therefore judgment will be entered for defendant and against plaintiff on Counts V, VI, VII and VIII. Counts I, II, III and IV will be discussed

below.

II. Summary Judgment Standard

A reviewing court may enter summary judgment where there are no genuine issues as to any material fact and one party is entitled to judgment as a matter of law. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

III. Applicable Law Under Title VII and § 1981

A plaintiff in an action brought under Title VII or 42 U.S.C. § 1981 bears the burden of proving intentional discrimination by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *Roebuck v. Drexel Univ.,* 852 F.2d 715 (3d Cir.1988); *Lewis v. Univ. of Pittsburgh,* 725 F.2d 910 (3d Cir.), *cert. denied,* 469 U.S. 892 (1983). Intentional discrimination may be established by direct evidence or circumstantial evidence. *Billet v. CIGNA Corp.,* 940 F.2d 812, 828 (3d Cir.1991). A plaintiff must prove that discrimination was the determinative factor in the adverse employment decision. *Griffiths v. CIGNA Corp.,* 988 F.2d 457, 472 (3d Cir.), *cert. denied,* 114 S.Ct. 186 (1993).

Plaintiff's case relies on circumstantial evidence and is thus governed by the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this framework as applied to the instant case, plaintiff has the burden of establishing a *prima facie* case of discrimination by demonstrating that he is a member of a protected class, that he was terminated from a job that he was qualified for, and that non-members of the protected class were treated more favorably. *Burdine,* 450 U.S. at 252; *Roebuck,* 852 F.2d at 726.

**\*2** If a plaintiff establishes a prima facie case, the burden of production shifts to the defendants to produce evidence of a legitimate, nondiscriminatory reason for the decision regarding the plaintiff.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1994 WL 171345 (E.D.Pa.), 64 Fair Empl.Prac.Cas. (BNA) 1562
(Cite as: Not Reported in F.Supp.)

Burdine, 450 U.S. at 252. If the defendants do so, the presumption of discrimination is removed from the case. Id. at 254-55. The ultimate burden rests on the plaintiff to prove that the defendants' articulated reasons are a pretext for discrimination. Id. at 252-53; St. Mary's Honor Center v. Hicks, 509 U.S. 502, 125 L.Ed.2d 407, 418 (1993).

A defendant is entitled to summary judgment if the plaintiff cannot produce sufficient evidence of pretext to rebut the asserted nondiscriminatory reasons for the employment decision. Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir.1989), cert. denied, 493 U.S. 1023 (1990). A plaintiff may defeat a motion for summary judgment by pointing to evidence which establishes a reasonable inference that the defendant's proffered explanation for its decision is not worthy of credence. Weldon v. Kraft, Inc., 896 F.2d 793, 797 (3d Cir.1990); Sorba v. Pa. Drilling Co., 821 F.2d 200, 205 (3d Cir.1987). At all times, however, a plaintiff bears the ultimate burden of establishing intentional discrimination; merely proving that the defendant's stated reasons are false without proof of intentional discrimination is insufficient for a plaintiff to prevail at trial. Hicks, 509 U.S. at ----, 125 L.Ed.2d at 424.

IV. Discussion-Title VII and § 1981

Defendants argue that plaintiff has failed to establish a prima facie case of race discrimination. Plaintiff, a black male, has established that he is a member of a protected class. He has also established, for the purposes of his prima facie case, that he was qualified for the position he held and that he was terminated from this position. Because plaintiff admits that he was replaced by another black employee, however, defendants assert that plaintiff has not established that non-members of the protected class were treated more favorably.

Federal courts have held that a race discrimination plaintiff in a termination case fails to establish a prima facie case where he cannot prove that he was replaced by a non-minority worker and there is no other evidence to support an inference of discrimination. Hawkins v. Ceco Corp., 883 F.2d 977, 984 (11th Cir.1989), cert. denied, 495 U.S. 935 (1990); Scott v. Federal Reserve Bank of New York, 704 F.Supp. 441, 449 (S.D.N.Y.1989). These holdings rest on the premise that if a minority worker who is terminated is replaced by another minority worker no inference of discrimination is raised absent any other evidence of discrimination. See Furnco

Construction Corp. v. Waters, 438 U.S. 567, 577 (1978) (explaining function of prima facie case under McDonnell Douglas framework). The issue for determination here, then, is whether plaintiff has produced any evidence sufficient to raise an inference of discrimination and create an issue of material fact for a jury to consider. This determination requires an inquiry into the facts surrounding plaintiff's termination.

*3 On May 18, 1993 plaintiff's wife telephoned his supervisor, James H. Packer, to advise Packer that Thomas was ill, under the care of a doctor, and would be absent from work until further notice. Packer wrote to Thomas that same day to advise him of Ethicon's procedures relating to short term disability leave. The procedures require that any employee unable to work due to illness for more than five consecutive days must submit evidence of disability from the employee's treating physician. Disability leave of up to six months could then be granted, subject to final approval of Ethicon's Medical Department. The procedures further provide that short term disability leaves shall require periodic review and renewal by the Medical Department, and that in some cases employees may be requested to furnish specific medical information or undergo a special medical evaluation prior to renewal of the medical leave. Moreover, Ethicon's protocol for medical leaves for sales staff requires that the employee on leave communicate periodically with the Medical Department.

On May 19, 1993 a member of Ethicon's Medical Department telephoned plaintiff to explain the procedures regarding short term disability leave and to advise plaintiff that he must periodically communicate with the Medical Department. On May 20, 1993 the Medical Department sent a disability form to Thomas which was to be completed by him and his physician and returned to the Medical Department.

On May 21, 1993 Packer received a letter from plaintiff's treating psychiatrist, Dr. B. Kenneth Nelson, stating that Thomas was "disabled from working due to job related stress." On June 4, 1993 the Medical Department received the completed disability form, signed by Dr. Nelson, which stated that Thomas could not work due to "Atypical Depression (exacerbated by job-related stress)" and "Generalized Anxiety." On June 7, 1993 the Health Department approved short term disability for Thomas from May 18, 1993 to December 15, 1993.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 3
Not Reported in F.Supp., 1994 WL 171345 (E.D.Pa.), 64 Fair Empl.Prac.Cas. (BNA) 1562
**(Cite as: Not Reported in F.Supp.)**

During plaintiff's absence, Packer attempted to contact him by telephone at home, through plaintiff's voice mail at work, and by letter addressed to plaintiff's home to ask how plaintiff wished to have his messages handled during his absence. Plaintiff never responded. By letter dated June 8, 1993 Victor Hrudowsky, Ethicon's Manager of Employee Relations, requested that plaintiff contact his supervisor concerning coverage of his sales territory during his absence. Additionally, Hrudowsky informed plaintiff that the nature of his disability claim required a personal interview with Ethicon's Medical Director, Dr. Fikry Isaac.

On May 21, 1993 Packer received a copy of a Notice of Charge of Discrimination from the EEOC notifying Ethicon that plaintiff had filed a charge of employment discrimination against Ethicon under Title VII of the Civil Rights Act of 1964. The notice was accompanied by a copy of plaintiff's charge of discrimination which indicated that the first alleged Title VII violation occurred on March 23, 1993 and the latest alleged violation occurred on May 11, 1993. Subsequent to receipt of this notice many of the communications between Ethicon and plaintiff were handled by Donna M. Malin, Esq., an in-house attorney at Ethicon's parent, Johnson & Johnson, and Marshall L. Williams, Esq., plaintiff's counsel before the EEOC.

*4 In a June 14, 1993 letter from Malin to Williams, Malin repeated Ethicon's requests that plaintiff contact his supervisor and Dr. Isaac. In a June 16, 1993 letter Malin again stated Ethicon's requests and enclosed a copy of Ethicon's policies and procedures regarding medical leaves.

On June 20, 1993 Dr. Nelson telephoned Ethicon's Medical Department and left a voice mail message for Dr. Isaac stating that he wished to provide information regarding Thomas and asking Dr. Isaac to return his call. The voice mail message continued to record a conversation between Dr. Nelson and Thomas, who was present when the call was placed, which seemed to indicate that Dr. Nelson was considering plaintiff's attempts to obtain disability benefits from Ethicon as a factor in determining the course of Thomas' treatment. Specifically, Dr. Nelson stated that Thomas could be released from the hospital once Thomas' attorney determined that benefits would be forthcoming. Neither Dr. Nelson nor Thomas was aware that the conversation was recorded on Dr. Isaac's voice mail.

Prior to hearing the voice mail of June 20, 1993, Dr.

Isaac spoke by telephone with Dr. Nelson on June 21, 1993. Dr. Nelson informed Dr. Isaac that Thomas had been hospitalized as of June 9, 1993. Dr. Nelson provided Dr. Isaac with a description of plaintiff's symptoms, which included depression, suicidal thoughts and paranoia regarding Ethicon. Dr. Isaac advised Dr. Nelson that Thomas' leave of absence had been approved for two months from the date of first absence, or until July 18, 1993, pending further evaluation. This two month period was inconsistent with the original seven month leave granted on June 7, 1993.

After his conversation with Dr. Nelson, Dr. Isaac heard the voice mail message of June 20, including the conversation between Dr. Nelson and Thomas. The message caused Dr. Isaac to conclude that non-medical factors were significant in Dr. Nelson's decisions regarding Thomas' course of medical care. Dr. Isaac therefore decided to require plaintiff to submit to a psychiatric examination in order to have his medical leave extended beyond July 18. By letter dated June 22, 1993 Ethicon informed plaintiff that his medical leave had been approved through July 18, 1993. Further, Ethicon told plaintiff that he would have to be examined by its psychiatrist prior to the granting of any extension of the leave.

A copy of this letter was sent to plaintiff's attorney by Malin on June 23, 1993. Malin again wrote to Williams on July 6, 13 and 16, 1993 to advise him that Ethicon required a psychiatric evaluation of plaintiff as a condition of extending the leave, that the leave would terminate on July 19, 1993 unless extended by the Medical Department, and that plaintiff's failure to return to work after July 18, 1993 would result in his termination.

Dr. Nelson believed that permitting Ethicon's psychiatrist to examine plaintiff would be harmful to the plaintiff's mental condition, especially considering plaintiff's paranoia and hostility towards Ethicon. Consequently, plaintiff did not arrange for the required examination and was terminated by Ethicon on July 19, 1993.

*5 Defendants claim that the plaintiff's failure to submit to the required examination was a legitimate, non-discriminatory reason for his termination. Plaintiff claims that this stated reason was merely a pretext for discrimination.

Plaintiff cites to the case of *Ingram v. Missouri Pacific R.R. Co.,* 897 F.2d 1450 (8th Cir.1990), as support for the proposition that the circumstances of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 4
Not Reported in F.Supp., 1994 WL 171345 (E.D.Pa.), 64 Fair Empl.Prac.Cas. (BNA) 1562
(Cite as: Not Reported in F.Supp.)

plaintiff's termination are sufficient to support an inference of discrimination. In *Ingram* the plaintiff had filed an EEOC complaint alleging discrimination by his employer. Subsequently, he sustained an injury at work and filed a claim with his employer. The employer vigorously investigated the injury report, concluded that it was false, and terminated the plaintiff. *Id.* at 1452-53. The plaintiff sued the railroad for discrimination in promotion and retaliatory termination for his filing of the EEOC complaint. *Id.* at 1453. The trial court found for the plaintiff and the Eighth Circuit affirmed. The Eighth Circuit's decision rested on several findings of discrimination by the trial court. The district court found that the evaluations of plaintiff's application for promotion directly contradicted his written application. *Id.* at 1455. The district court also made findings that the defendant's promotions mechanism functioned in a discriminatory fashion by historically excluding blacks, and by refusing to inform applicants for promotion, and the plaintiff in particular, why some employees were promoted while others were passed over or how promotions could be obtained. *Id.* The trial court further found that the dismissal of the plaintiff for the filing of his injury report was a pretext for retaliation. This conclusion was supported by the finding that plaintiff's report was genuine, the fact that a white employee in a similar situation was treated much more leniently, the intensity with which the employer investigated the report and the employer's selection of the harshest reprisal for the plaintiff despite his otherwise positive employment record. *Id.* at 1456.

Plaintiff claims that *Ingram* is factually analogous to his case, and supports the inference of pretext here. Plaintiff claims that Ethicon's handling of plaintiff's disability leave is similar to the employer's handling of Ingram's injury report. The Court cannot agree. In *Ingram* the employer terminated the plaintiff after it concluded that he made a false injury report. The employer did not appear to have any basis for this challenge, and the trial court found the report to be genuine. *Ingram,* 897 F.2d at 1453. Here, Ethicon did not terminate Thomas because it believed his sickness to be nonexistent. Rather, Ethicon sought to have plaintiff examined by its own psychiatrist, a practice which is provided for in the company's written policies. Moreover, in light of the conversation between Dr. Nelson and Thomas that was recorded on Dr. Isaac's voice mail, Ethicon's actions were certainly justified. Only when Thomas refused to submit to an examination was he terminated.

**\*6** Moreover, the plaintiff in *Ingram* adduced evidence to establish that white employees were not subjected to the same treatment as he was. The plaintiff here has no evidence to show that his treatment was not consistent with Ethicon's policies or that white employees were treated more favorably.

Further, the plaintiff in *Ingram* offered substantial additional evidence of discrimination, including the employer's promotion methods and the employer's evaluation of his application for promotion. An evaluation of plaintiff's evidence in this case reveals no admissible evidence supporting an inference of discrimination. Plaintiff claims that he was told by his superiors that his base pay was excessive and that no white employee he spoke with was ever told the same. Plaintiff's testimony alone is inadmissible hearsay and cannot defeat a motion for summary judgment. Plaintiff also complains of being assigned extra tasks, but has no evidence other than his own unsupported allegation. Plaintiff further complains of perceived slights by his superiors, but has no evidence to attribute these slights to his race nor to establish that white employees were treated any differently.

Plaintiff argues that defendant's election to take "such a hard nose attitude" by terminating him instead of suspending his benefits until he submitted to an examination is evidence of pretext. This, standing alone, is not evidence of discrimination, and the Court cannot properly interfere with Ethicon's exercise of its business judgment by demanding that Ethicon accommodate plaintiff in the absence of discrimination. *Billet v. CIGNA Corp.,* 940 F.2d 812, 825 (3d Cir.1991).

After careful analysis of the evidence presented by the plaintiff, and drawing all inferences in favor of the plaintiff, the Court concludes that plaintiff has failed to establish a *prima facie* case of race discrimination. Plaintiff does not meet the framework established in *McDonnell Douglas;* because plaintiff's replacement was another black, he has no evidence tending to show that non-members of a protected class were treated more favorably than he was. Moreover, Thomas has failed to adduce evidence to show that Ethicon's leave policy was applied differently to him than it has been to white employees. *See, e.g., Hawkins,* 883 F.2d at 984 (plaintiff can establish *prima facie* case by demonstrating that disciplinary rules were applied discriminatorily). Plaintiff can only cite to certain instances where he felt mistreated and chose to attribute such treatment to racial discrimination.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 5
Not Reported in F.Supp., 1994 WL 171345 (E.D.Pa.), 64 Fair Empl.Prac.Cas. (BNA) 1562
**(Cite as: Not Reported in F.Supp.)**

Conclusory allegations of this sort will not survive a motion for summary judgment. _Billet, 940 F.2d at 816._

### V. Plaintiff's Age Discrimination Claim

While the substantive law under the ADEA is different from that under Title VII, the burdens of proof and presentation under both laws are similar. _Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir.1991)._ Thomas has met his burden of presenting a _prima facie_ case under the ADEA by producing evidence that he belongs to a protected class (he was fifty-one years old at the time of termination), that he was qualified for the position he held, and that he was terminated and replaced by a younger man (his replacement was in his mid-thirties). Ethicon met its burden of production by asserting a legitimate, non-discriminatory reason for plaintiff's termination, namely his failure to submit to a psychiatric examination. Plaintiff, in response, offers nothing more than his conclusion that age discrimination was the true reason for his termination. Plaintiff, in his deposition, stated that this conclusion is supported by "common sense." Such a conclusory allegation is insufficient to defeat a motion for summary judgment. _Billet, 940 F.2d at 816_ (conclusory allegations of discrimination are insufficient as a matter of law to meet the requirements of Fed. R. Civ. p. 56(e)). Therefore, defendants are entitled to summary judgment on this claim.

**\*7** Moreover, plaintiff has failed to satisfy the procedural prerequisites to filing an ADEA claim. The ADEA requires a plaintiff to file a charge with the EEOC prior to filing an action for age discrimination. 29 U.S.C. § 626(d). A plaintiff may not assert matters in a suit in federal court outside the scope of an EEOC charge. _Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 399-400 (3d Cir.1976), cert. denied, 429 U.S. 1041 (1977)._

Plaintiff's counsel, Marshall Williams, Esq., wrote to the EEOC in August of 1993 attempting to amend the EEOC charge to add claims for age discrimination. Plaintiff failed, however, to provide the EEOC with sworn statements to support the proposed amendment. The EEOC file provided to defendants upon their request does not reflect that the EEOC ever amended the charge. The EEOC never informed defendants of any amendment.

In order for plaintiff to assert a claim not before the EEOC he must show that a reasonable investigation of his race discrimination charge would have included an investigation of his ADEA claim. _Ostapowicz, 541 F.2d at 398-99._ Race discrimination claims and age discrimination claims arise from entirely distinct statutory schemes. _Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 673 (9th Cir.1988)._ The substantive law of each claim is entirely different. _Billet, 940 F.2d at 816._ The facts relating to a claim for age discrimination cannot be reasonably said to have arisen out of an investigation of plaintiff's race discrimination claim.

The purpose of vesting primary jurisdiction over discrimination claims in the EEOC is to give the employer some warning of the conduct about which the employee complains and to provide the opportunity for conciliation without resort to the courts. _Rush v. McDonald's Corp, 966 F.2d 1104, 1110 (7th Cir.1992); Ostapowicz, 541 F.2d at 399-400._ Plaintiff's failure to bring an age discrimination claim before the EEOC and attempt to assert the claim now violates this fundamental policy.

### VI. Plaintiff's ERISA Claim

Section 510 of ERISA states that it unlawful for an employer to, _inter alia,_ "discharge a ... beneficiary for exercising any right to which he is entitled under an employee benefit plan." 29 U.S.C. § 1140. The burdens of proof and presentation under this statute are analogous to those in a Title VII or ADEA case. _Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.), cert. denied, 484 U.S. 979 (1987)._ To establish a _prima facie_ case under § 510 "an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may be entitled." _Gavalik, 812 F.2d at 852._ Section 510 requires a showing of "specific intent on the part of the employer to interfere" with the employee's right. _Hendricks v. Edgewater Steel Co., 898 F.2d 385, 389 (3d Cir.1990)._ If the plaintiff meets his initial burden, the employer must articulate a legitimate reason for it action, which the employee must then demonstrate to be pretextual. _Id._ Plaintiff has presented no evidence of a specific intent by Ethicon to interfere with plaintiff's rights to disability benefits. To the contrary, the evidence reflects that Ethicon took many steps to inform plaintiff of his obligation to submit to an examination in accordance with Ethicon's established, written policies. Assuming, _arguendo,_ that plaintiff has established a _prima facie_ case, he has presented no evidence to establish that Ethicon's stated reason for his

Not Reported in F.Supp.                                                                                    Page 6
Not Reported in F.Supp., 1994 WL 171345 (E.D.Pa.), 64 Fair Empl.Prac.Cas. (BNA) 1562
**(Cite as: Not Reported in F.Supp.)**

termination was pretextual. Plaintiff's only evidence on this point is that Ethicon aggressively attempted to have plaintiff submit to a psychiatric evaluation. As noted above, this conduct was consistent with the established, written policies of Ethicon regarding disability leave. Absent any other evidence, this is insufficient to create a genuine issue of fact as to whether the defendants' stated reason for plaintiff's termination was pretextual. Therefore, defendants are entitled to summary judgment on this claim.

### VII. Conclusion

**\*8** By agreement of the parties, summary judgment will be granted for the defendants on Counts V, VI, VII and VIII of plaintiffs' Amended Complaint. For the reasons stated above, summary judgment will be granted for defendants on Counts I, II, III and IV of plaintiff's Amended Complaint. Plaintiffs' claims of discrimination based on national origin and retaliatory discharge, not having been pled but asserted in plaintiffs' opposition papers, will not be considered nor permitted to proceed to trial.

An appropriate Order follows.

### ORDER

AND NOW, this _____ day of May, 1994, upon consideration of defendants' Motion for Summary Judgment, and the response of plaintiffs thereto, and consistent with the foregoing Memorandum, it is hereby ORDERED that said motion is GRANTED. Judgment is entered in favor of defendants and against plaintiffs on all counts of plaintiffs' Amended Complaint.

AND IT IS SO ORDERED.

FN1. Plaintiffs' response to defendants' motion makes reference to claims under Title VII for "ethnic discrimination", which the Court takes to mean discrimination on the basis of national origin, and retaliatory discharge for the filing of Thomas' EEOC Complaint. Neither of these claims were raised in plaintiffs' Amended Complaint in this action, and they will therefore not be considered in this motion nor shall plaintiffs be permitted to proceed to trial on these claims.

E.D.Pa. 1994

Thomas v. Ethicon, Inc.
Not Reported in F.Supp., 1994 WL 171345 (E.D.Pa.), 64 Fair Empl.Prac.Cas. (BNA) 1562

Briefs and Other Related Documents (Back to top)

• 2:93cv03836 (Docket) (Jul. 19, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| NICOLE VILLANUEVA, | : | |
| | : | CA No. 04-258-JJF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTIANA CARE HEALTH SERVICES, INC. | : | |
| | : | |
| Defendant. | : | |

**ORDER**

Now, this _____ day of _____, 2006, having considered Defendant

Christiana Care Health Services, Inc.'s Motion for Summary Judgment and any opposition

thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.  It is further **ORDERED** that

Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

SO ORDERED BY THE COURT:

_____
Farnan, U.S.D.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NICOLE VILLANUEVA,                          :
                                            :
                    Plaintiff,              :
                                            :
        v.                                  :        C.A. No. 04-258-JJF
                                            :
CHRISTIANA CARE HEALTH SERVICES, INC. :
                                            :
                    Defendant.              :

### CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on July 20, 2006, I electronically filed the attached

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT CHRISTIANA CARE**

**HEALTH SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT** with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the

following:

        Jeffrey K. Martin, Esquire
        Lori A. Brewington, Esquire
        Margolis Edelstein
        1509 Gilpin Avenue
        Wilmington, DE 19806


        _James H. McMackin III (#4284)_
        David H. Williams (#616)
        dwilliams@morrisjames.com
        James H. McMackin, III (#4284)
        jmcmackin@morrisjames.com
        MORRIS, JAMES, HITCHENS & WILLIAMS, LLP
        222 Delaware Avenue
        P.O. Box 2306
        Wilmington, DE 19899
        (302) 888-6900/5849

Michael J. Ossip (admitted *pro hac vice*)
Thomas S. Bloom (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
(215) 963-5543

Dated:  July 20, 2006

Attorneys for Defendant
Christiana Care Health Services, Inc.