IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICOLE VILLANUEVA,               :
                                 :
        Plaintiff,               :
                                 :
    v.                           :    Civil Action No. 04-258-JJF
                                 :
CHRISTIANA CARE HEALTH           :
SERVICES, INC.,                  :
                                 :
        Defendant.               :

Jeffrey K. Martin, Esquire, and Lori A. Brewington, Esquire,
MARGOLIS EDELSTEIN, Wilmington, Delaware.
Attorneys for Plaintiff.

David H. Williams, Esquire, and James H. McMackin, III, Esquire,
of MORRIS, JAMES, HITCHENS, & WILLIAMS LLP, Wilmington, Delaware.
Attorneys for Defendant.

**MEMORANDUM OPINION**

January 23, 2007
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendant Christiana Care Health Services, Inc.'s Motion For Summary Judgment. (D.I. 42.) For the reasons discussed, the Motion will be denied.

## BACKGROUND

Plaintiff began working for Defendant, Christiana Care Health Services, Inc. ("Christiana Care"), in December 2002, as a Patient Care Technician II ("PCT-II") in the Transitional Surgical Unit ("TSU"). The PCT-II position combines the functions of a Patient Care Technician, which involves feeding, dressing, and bathing patients, and a Unit Clerk, which involves clerical work. (Villanueva Dep. A-8 at 24:14-25:21, A-9 at 26:1-5; Dye Dep. A-54 at 6:1-14.)[1]

Within the first two weeks of her employment, Plaintiff discovered that she was pregnant. (Dye Dep. A-58 at 23:13-24:3; McCloud Dep. A-41 at 10:13-24.) On April 8, 2003, Plaintiff visited her former employer and cardiologist, Dr. Goldenberg. Dr. Goldenberg noted that Plaintiff had the onset of inappropriate sinus tachycardia, a type of cardiac arrhythmia that causes shortness of breath and tightness in the chest, and

---

[1] Depositions and exhibits referenced by an "A" are contained in the Appendix To Defendant Christiana Care Health Services Inc.'s Motion For Summary Judgment. (D.I. 45.) Those exhibits referenced by a "B" are contained in the Appendix To Plaintiff's Answering Brief In Opposition To Defendant's Motion For Summary Judgment. (D.I. 48.)

1

which Plaintiff had during a previous pregnancy. (Goldbenberg Dep. A-76 at 32:18-33:14, A-77 at 34:11-16.) Dr. Goldenberg wrote a note for Plaintiff to give to her supervisors at Christiana Care, which stated:

> Nicole Villanueva has pregnancy induced cardiac arrhythmia. Physical activities precipitate her arrhythmia. At this time I have suggested a sedentary position.

(A-89.)

The next day, Plaintiff gave the note to her supervisor, Carole Dye. Ms. Dye told Plaintiff that they could not accommodate her on their floor, but that they might be able to use her on other floors. (Villanueva Dep. A-9 at 28:22; Dye Dep. A-59 at 28:19.) Ms. Dye advised Plaintiff that she would have to discuss the matter with Ms. McCloud[2] and clear it with Employee Health Services ("EHS"). (Id.) EHS restricted Plaintiff to sedentary duty, and Ms. Dye reported to Plaintiff that she spoke to Ms. McCloud. Ms. Dye informed Plaintiff that Ms. McCloud indicated that Christiana Care's policy is that they "cannot accommodate light duty for a non-occupational injury." (McCloud Dep. A-41 at 13:15, 11:20.)

Irritated with their decision not to accommodate her, Plaintiff met with Ms. Dye and Kerry Delgado in the human resources department. According to Plaintiff, Ms. Delgado

---

[2] Ms. McCloud was Ms. Dye's supervisor and the supervisor of the TSU and 5D units.

2

informed her that Delaware is an at-will employment state and that she could be fired for any reason. (Villanueva Dep. A-3 at 4:21-5:3.) Ms. Delgado also told Plaintiff that since she wasn't eligible for FMLA leave, she would be terminated if she did not return to work in 12 days. (Id.) Plaintiff was also informed that because her limitation was not secondary to any work-related injury, it was her responsibility to find and apply for another position at Christiana Care. (Dye Dep. A-62 at 39:12-16.)

On April 9, 2003, Plaintiff contacted Dr. Goldenberg's office, requesting a note that would return her to full duty. Without further examination, Dr. Goldenberg wrote a new note which stated:

> Nicole has been under my care and from a cardiac standpoint may return to work with no restrictions. Please contact my office if you should have any questions.

(A-92.) According to Plaintiff, she brought the note to Ms. Dye, who informed her that she had to be cleared by EHS. (Villanueva Dep. A-3 at 5:23-6:13.) However, EHS was closed, and Ms. Dye told Plaintiff to return a week later. (Id.) Plaintiff complied with Ms. Dye's directions and returned to EHS a week later. However, EHS refused to clear Plaintiff to return to work. (Id.) Plaintiff contacted Christine Collins, the director of EHS, to inquire as to why she wasn't being cleared to return to work. According to Plaintiff, Ms. Collins responded that Plaintiff was "a heart attack waiting to happen." (Id. A-4 at 6:23-24.)

3

Plaintiff asked Ms. Collins to speak with her cardiologist. Ms. Collins indicated that she planned to contact Dr. Colmorgen, an obstetrician specializing in high-risk pregnancies at Christiana Hospital, to see if it was acceptable for Plaintiff to return to work. (Id. at 7:2-4.)

Dr. Colmorgen advised Ms. Collins to contact Dr. Goldenberg. While waiting for Dr. Goldenberg to return her call, Ms. Collins was contacted a second time by Plaintiff. (B-0011; Collins Dep. A-33 at 22:12.) Plaintiff stated that she had been put in a terrible position and asked Ms. Collins what she expected Plaintiff to do. Ms. Collins allegedly responded, "I don't know what to tell you. You picked a poor time to get pregnant." (Villanueva Dep. A-4 at 7:14-17.)

Ms. Collins subsequently spoke to Dr. Goldenberg who indicated that he understood her concerns. However, Dr. Goldenberg did not rescind his note or change his opinion that Plaintiff was capable of working regular duty. (Collins Dep. A-35 at 31:6-14.)

Plaintiff also contacted Keely Barnes as directed by Ms. Dye to inquire about available Unit Clerk positions. Plaintiff was informed that she would have to "re-apply" for those positions as if she had never been hired at Christiana Care. (Villanueva Dep. A-4 at 8:7-12.) Because it had taken Plaintiff three months to get her job initially, Plaintiff knew that she wouldn't be able

to reapply and find a new job in the 12 days she had been given to return to full duty. (Id.)

Christiana Care's policies provide that, if an employee is absent for fourteen days, the employee must be placed on leave of absence or removed from the payroll. To be placed on leave of absence, an employee must have been employed with Christiana Care for six months. Plaintiff had not been employed for six months, and therefore, was removed from Christiana Care's payroll on April 24, 2003. (B-00015.)

Shortly thereafter, Ms. McCloud contacted Plaintiff and told her that she was welcome to come back to work after she had her baby. (Villanueva Dep. A-15 at 52:15.) By that time, Plaintiff had already initiated this action alleging that Christiana Care violated Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978.

## STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there are triable issues of material fact, a court must

review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**DISCUSSION**

**I.   Applicable Legal Principles**

The Civil Rights Act of 1964 prohibits discrimination on the basis of sex. Through the Pregnancy Discrimination Act, "Congress explicitly provided that, for the purposes of Title VII, 'on the basis of sex' includes discrimination 'because of or

6

on the basis of pregnancy, childbirth, or related medical conditions.'" 42 U.S.C. §2000e(k); Int'l Union, United Auto., etc. v. Johnson Controls, 499 U.S. 187, 198-99 (1991).

Discrimination under Title VII can be established in one of two ways: (1) by direct evidence that the employer's decision was motivated by discrimination, or (2) by indirect evidence which creates an inference of discrimination. Direct evidence of discrimination is evidence which, if believed, would prove the existence of the fact in issue without any inference or presumption. Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994). Direct evidence is also described as overt or explicit evidence which directly reflects a discriminatory bias. Armbruster v. Unisys Corp., 32 F.3d 768, 778 (3d Cir. 1994). Stated another way, direct evidence of discrimination is evidence that demonstrates that "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Anderson v. Consol. Rail Corp., 297 F.3d 242, 248 (3d Cir. 2002) (citation omitted). Courts have made clear that only the most blatant remarks, whose intent could be nothing other than to discriminate, are considered sufficient to constitute direct evidence of discrimination. Taylor v. Procter & Gamble Dover Wipes, 184 F. Supp. 2d 402, 413 (D. Del. 2002) (citing Clark v. Coats & Clark, Inc., 990 F. 2d 1217, 1223 (11th Cir. 1993)). If a plaintiff puts forth direct evidence of

discrimination, the causation burden shifts to the defendant to prove that it would have taken the same employment action even if it had not considered an impermissible factor. <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 338-39 (3d Cir. 2002).

Indirect or circumstantial evidence of discrimination is evidence which creates an inference of discrimination. When circumstantial evidence of discrimination is offered by a plaintiff, the plaintiff must first establish a <u>prima facie</u> case of discrimination before any burden shifts to the defendant. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). To establish a <u>prima facie</u> case of discrimination, the plaintiff must demonstrate that: (1) she is a member of a protected class, (2) she is qualified for the sought-after position, (3) she suffered an adverse employment action, and (4) similarly-situated non-members of the protected class were treated more favorably. <u>Pivirotto v. Innovative Sys., Inc.</u>, 191 F.3d 344, 356 (3d Cir. 1999). Once the plaintiff has established a <u>prima facie</u> case of discrimination, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse action. <u>Green</u>, 411 U.S. at 802. If the defendant produces sufficient reasons for its actions, the burden shifts back to the plaintiff to demonstrate that the defendant's reasons are merely a pretext for discrimination. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). To defeat a motion for summary

judgment using this framework, plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." Id. at 764.

## II. Whether Plaintiff Has Offered Direct Evidence Of Discrimination

Plaintiff contends that statements made by Ms. Delgado and Ms. Collins constitute direct evidence of discrimination. The Court disagrees. According to Plaintiff, Ms. Delgado informed her that Delaware is an at-will employment state, that Plaintiff could be terminated for any reason, and that Plaintiff would be terminated if she did not return to work in twelve days. The Court concludes that there is nothing discriminatory about Ms. Delgado's remarks. Ms. Delgado was explaining to Plaintiff her understanding of the law and the policies of Christiana Care. Her remarks are not overt or blatant remarks that can only be construed to evidence an intent to discriminate. Accordingly, the Court concludes that Ms. Delgado's remarks are insufficient to constitute direct evidence of discrimination.

As for the statement of Ms. Collins that Plaintiff "picked a poor time to get pregnant," the Court likewise concludes that Ms. Collins' remarks, while pointed at Plaintiff's gender and condition as a pregnant female, are not so blatant as to

9

constitute direct evidence of discriminatory intent.  As Plaintiff acknowledges in her Answering Brief, Ms. Collin's remarks were in the context of Plaintiff's statement that she was in a "terrible position" because she was not yet eligible for a Leave of Absence under Christiana Care's policies.  (D.I. 47 & n8.)  While Ms. Collins' remarks may have been insensitive and rude, the Court cannot conclude that they are direct evidence of discrimination.  Furthermore, a single stray comment does not constitute direct evidence of discrimination.[3]  Edwards v. Pa. Tpk. Comm'n, 80 Fed. Appx. 261, 264 (3d Cir. 2003); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992).  Accordingly, the Court concludes that Plaintiff has not offered direct evidence of discrimination.

### III. Whether Plaintiff Has Offered Sufficient Circumstantial Evidence Of Discrimination To Create Genuine Issues Of Material Fact Precluding The Entry Of Summary Judgment In Favor Of Christiana Care

Although Plaintiff has not proffered direct evidence of discrimination, the Court concludes that Plaintiff has offered sufficient circumstantial evidence to create genuine issues of material fact regarding the elements of a prima facie case and whether Christiana Care's proffered reasons for her termination were a pretext for discrimination.  With respect to the prima

---

[3] As discussed in Part III infra, however, these remarks are relevant circumstantial evidence.  See e.g. Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3d Cir. 1995).

facie case, it is undisputed that Plaintiff, as a pregnant woman, belonged to a protected class and that she suffered an adverse employment action when she was removed from Christiana Care's payroll. Plaintiff has put forth sufficient evidence to demonstrate that there are genuine issues of material fact regarding the remaining prongs of the prima facie case, specifically (1) whether Plaintiff was qualified for the position of Unit Clerk, and (2) whether similarly-situated non-members of the protected class were treated more favorably.

Christiana Care contends that Plaintiff cannot demonstrate, as a matter of law, that Ms. McCloud treated her differently than similarly situated non-pregnant employees. However, Plaintiff has offered evidence that there were internal Unit Clerk positions available at Christiana Care, and that PCT and Unit Clerks can be pulled from other floors to assist in different areas of the hospital. Plaintiff has also presented evidence that at least one other individual, Diana Stewart, was able to work as a Unit Clerk, rather than perform her regular duties, even though Ms. McCloud did not have an open Unit Clerk position for her.[4] (McCloud Dep. A-49 at 42:23, 43:1-2.)

---

[4] With respect to the Plaintiff's comparators, Christiana Care also contends that they are not similarly situated to Plaintiff "in all respects" because they were not restricted to sedentary duty. However, Plaintiff has presented evidence that she was not restricted to sedentary duty and that she could have returned to her regular duties with her doctor's approval. As Plaintiff points out the PDA only requires the employee to be

Christiana Care also contends that several of Plaintiff's comparators are not similarly situated to her, because they bid for open positions, and Plaintiff made no attempt to bid for these positions. However, Plaintiff has presented evidence that the internal bidding procedure was not explained to her and that she was told she would have to re-apply for a position at the hospital as if she had never been hired. In the Court's view, Plaintiff's evidence is sufficient to create a genuine issue of material fact on the question of whether similarly situated individuals were treated more favorably than her.

Christiana Care also contends that Plaintiff cannot establish that she was qualified to work as a Unit Clerk. In this regard, Christiana Care contends that the Unit Clerk position is not a sedentary position and that Plaintiff was restricted to sedentary work. However, Plaintiff has presented evidence that although Dr. Goldenberg initially suggested she perform sedentary work, he later advised that Plaintiff was not precluded from assuming her regular duties. Plaintiff has also presented evidence that her comparators suffered from serious

---

similarly situated in his or her "ability to work." Ensley Gaines v. Runyon, 100 F.3d 1220, 1226 (6th Cir. 1996). Thus, Plaintiff need only demonstrate that other employees similarly situated in their ability to work received more favorable benefits. Plaintiff has come forward with evidence relevant to this prong, and therefore, the Court cannot conclude that Christiana Care is entitled to summary judgment on this basis.

12

physical limitations, yet these injured employees were assigned to Unit Clerk positions because these positions were not physically demanding. Further, Plaintiff has presented evidence that the job duties of a Unit Clerk involve answering telephone calls, scheduling appointments, registering patients, ordering tests, maintaining patient charts, coordinating paperwork, taking messages, filing, faxing, inputting data and answering questions from patients and staff. In the Court's view, Plaintiff's evidence is sufficient to create a genuine issue of material fact regarding whether the Unit Clerk position was a sedentary position and whether Plaintiff was qualified to perform the functions of the position. Because genuine issues of material fact exist regarding Plaintiff's ability to establish a <u>prima facie</u> case of discrimination, the Court concludes that Christiana Care is not entitled to summary judgment.

In addition, the Court concludes that Christiana Care is not entitled to summary judgment, because there are genuine issues of material fact concerning whether Christiana Care's explanation for Plaintiff's termination was a pretext for discrimination. Although Ms. Collins and Ms. Delgado's remarks are not direct evidence of discrimination, they can be considered as circumstantial evidence of the alleged discrimination, and therefore, probative on the questions of pretext and intent. <u>Walden v. Georgia Pacific Corp.</u>, 126 F.3d 506, 521 (3d Cir.

13

1997). Plaintiff has presented evidence that Ms. Collins advised her that she was not going to clear her to return to work, before Ms. Collins spoke with Plaintiff's doctor. Plaintiff contends that her doctor cleared her to perform her regular duties; however, Christiana Care refused to accept her doctor's opinion and refused to examine Plaintiff to determine for itself whether Plaintiff should be restricted from performing the regular duties of her job. In addition, Plaintiff has adduced evidence that the timing of her termination may have been linked to Christiana Care's concern about leaving her position open until she returned from maternity leave. Had Plaintiff not been terminated, she would have been employed by Christiana Care for at least six months by the time she was ready to deliver the baby. At that time, Christiana Care would have been obligated to hold her position open until she returned from maternity leave. By terminating Plaintiff, Christiana Care relieved itself of this obligation.

    In sum, the Court concludes that Plaintiff has adduced sufficient evidence to establish that genuine issues of material fact exist regarding essential elements of her case. Accordingly, the Court concludes that summary judgment is not appropriate.

## CONCLUSION

For the reasons discussed, the Court will deny Christiana Care Christiana Care Health Services, Inc.'s Motion For Summary Judgment (D.I. 42).

An appropriate Order will be entered.